## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSUR-ANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:23-cv-02047-LMM |
| RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, FMW RRI NC, LLC, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., T.H., H.B., and K.M. | ) ) ) ) ) | |
| Nominal Defendants. | ) | |

---

### DEFENDANTS RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, AND FMW RRI NC, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Shattuck Ely
Jonathan Spratling
FELLOWS LABRIOLA LLP
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303

*Attorneys for Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC, and FMW RRI, LLC*

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................1

II.  BACKGROUND .............................................................................2

III. ARGUMENT ..................................................................................3

    A.      Standard of Review. ...............................................................3

    B.      Georgia law, not Ohio law, governs this insurance dispute....................4

    C.      Liberty has failed to carry its burden by failing to identify any Georgia authority entitling it to judgment on the pleadings. ................6

    D.      Georgia public policy does not prevent insurance for the claims asserted against the Defendants in the Underlying Lawsuits. ...............7

    E.      The Underlying Lawsuits allege fortuitous losses.................................12

    F.      Georgia law requires an insurer to defend a lawsuit that alleges both covered and uncovered claims.............................................................13

IV.  CONCLUSION ..............................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Am. Fam. Mut. Ins. Co. v. Scott*,
  2008 WL 1759093 (Ohio Ct. App. Apr. 18, 2008)..............................................7

*Anderson v. Southern Guar. Ins. Co. of Georgia*,
  235 Ga. App. 306, 508 S.E.2d 726 (1998).........................................................9

*BBL-McCarthy, LLC v. Baldwin Paving Co.*,
  646 S.E.2d 682 (Ga. App. 2007).......................................................................15

*Boardman Petroleum v. Federated Mut. Ins.*,
  135 F.3d 750 (11th Cir. 1998) ...........................................................................4

*Chemence Med. Prod., Inc. v. Medline Indus., Inc.*,
  119 F. Supp. 3d 1376 (N.D. Ga. 2015) .............................................................6

*Cincinnati City School Dist. Bd. of Edn. v. Conners*,
  974 N.E.2d 78 (Ohio 2012) ...............................................................................6

*Cincinnati Ins. Co. v. Magnolia Ests., Inc.*,
  286 Ga. App. 183, 648 S.E.2d 498 (2007).......................................................11

*Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*,
  631 F. Supp. 3d 1256 (N.D. Ga. 2022),
  *aff'd*, 2023 WL 6319224 (11th Cir. Sept. 28, 2023) .........................................5

*Continental Cas. Co. v. Synalloy Corp.*,
  667 F. Supp. 1523 (S.D. Ga. 1983)..................................................................14

*Coon v. Medical Ctr., Inc.*,
  300 Ga. 722 (2017) ........................................................................................4, 5

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) ...........................................................................9

*Doe v. Schaffer*,
  738 N.E.2d 1243 (Ohio 2000) ...........................................................................7

*Driskell v. Empire Fire & Marine Ins.*,
  547 S.E.2d 360 (Ga. App. 2001).......................................................................14

*Gearing v. Nationwide Ins. Co.*,
  76 Ohio St. 3d 34 (Ohio 1996) ....................................................................7, 11

*George L. Smith II Ga. World Cong. Ctr. Auth. v. Miller Brewing Co.*,
  566 S.E.2d 361 (Ga. App. 2002)......................................................................14

*Greenwood Cemetery, Inc. v. Travelers Indem. Co.*,
    238 Ga. 313, 232 S.E.2d 910 (1977) ................................................................. 8

*HDI-Gerling America Ins. Co. v. Morrison Homes, Inc.*,
    701 F.3d 662 (11th Cir. 2012) .......................................................... 15

*Key v. Georgia Dep't of Admin. Servs.*,
    340 Ga. App. 534, 798 S.E.2d 37 (2017) ............................................... 8

*Landmark Am. Ins. Co. v. Khan*,
    307 Ga. App. 609 (2011) ................................................................ 16, 17

*Lehrner v. Safeco Ins./Am. States Ins. Co.*,
    872 N.E.2d 295 (Ohio Ct. App. 2007) ................................................... 7

*Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC*,
    2022 WL 1135013 (N.D. Ga. Apr. 18, 2022) ......................................... 10, 11

*Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*,
    766 F. App'x 768 (11th Cir. 2019) ....................................................... 14

*Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments*,
    861 F. App'x 270 (11th Cir. 2021) ........................................................ 4

*Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*,
    823 F. App'x 815 (11th Cir. 2020) ...................................................... 4, 5

*Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*,
    781 F. App'x 57 (3d Cir. 2019) ........................................................... 11

*Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*,
    481 S.E.2d 850 (Ga. App. 1997) ....................................................... 14, 15

*Ricchio v. Bijal, Inc.*,
    424 F. Supp. 3d 182 (D. Mass. 2019) ................................................ 10, 11

*Safeco Ins. Co. of Am. v. White*,
    913 N.E.2d 426 (Ohio 2009) ............................................................... 7

*Safeco Ins. Co. v. Fed. Ins.*,
    2007 WL 4553690 (Ohio Ct. App. Dec. 28, 2007) ................................... 7

*Thompson v. Regions Sec. Servs., Inc.*,
    67 F.4th 1301 (11th Cir. 2023) ........................................................ 3, 6

*Travelers Indem. Co. v. Hood*,
    110 Ga. App. 855, 140 S.E.2d 68 (1964) ............................................ 8, 9

**Statutes**

18 U.S.C. § 1591 ...............................................................................9

18 U.S.C. § 1595 ...............................................................................9

18 U.S.C. § 1595(a)..............................................................2, 9, 10, 12

Georgia Racketeer Influenced and Corrupt Organizations Act................................3

Ohio Rev. Code Ann. § 2907.05 ...............................................................7

Ohio's Human Trafficking Statute ............................................................5

**Rules**

Fed. R. Civ. P. 8 (d)(2) .....................................................................15

Fed. R. Civ. P. 8 (d)(3) .....................................................................16

Federal Rule of Civil Procedure 12(c) .......................................................1

**Treatises**

Restatement of the Law of Liability Insurance § 13 (2019)....................................15

Windt, INSURANCE CLAIMS AND DISPUTES, 5th ed., § 4:12.......................................15

Defendants, Red Roof Inns, Inc.; Red Roof Franchising, LLC; RRI West Management, LLC; and FMW RRI NC, LLC (collectively, "Defendants"), by their attorneys, respond to Liberty Mutual Fire Insurance Company's ("Liberty") Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), showing the court as follows.

## I.    INTRODUCTION

This insurance coverage action involves a common scenario: an insured is sued in an underlying tort lawsuit for allegations of both intentional and negligent conduct. Under Georgia (and Ohio) law, a liability insurer must defend such a lawsuit. Unless and until the insured has been found to have intentionally caused harm to the plaintiff, the duty to defend continues. Because none of the Underlying Lawsuits here have been resolved, Liberty owes a duty to defend and its motion should be denied.

Notwithstanding Georgia law, Liberty requests judgment on the pleadings on two grounds: (1) it is against Ohio public policy to insure Defendants for the claims asserted in the Underlying Lawsuits; and (2) the claims asserted are not fortuitous. To begin, Liberty misapplies the applicable choice-of-law rules by overlooking Georgia's "presumption of identity" rule. This results in Liberty failing to recognize that Georgia law, not Ohio law, controls. And because Liberty offers no Georgia authority to support its requested relief, it has failed to carry its burden as the movant.

In any event, Liberty's requested relief finds no support under Georgia law. An insurer may fix its policy to the terms for which it wishes to provide coverage, including coverage for willful and wanton acts. Georgia courts have never endorsed the expansive public policy that Liberty argues for, and this Court should not entertain it now. Rather than bar claims as against public policy, Georgia law mandates that an insurer provide a duty to defend even if intentional, criminal conduct is alleged alongside accidental conduct.

## II. BACKGROUND

This is a declaratory judgment action brought by an insurer (Liberty) against its insureds (Defendants) and the underlying tort plaintiffs. Liberty seeks an adjudication of its obligations under eight consecutive commercial general liability policies for claims asserted in seven underlying tort lawsuits filed against Defendants in this Court ("Underlying Lawsuits").[1]

The Underlying Lawsuits allege that the state court plaintiffs were trafficked for commercial sex in various hotels, including several Red Roof Inns. *See* Docs. 1-1 through 1-7. All seven of the Underlying Lawsuits contend that Defendants violated the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA"), by either benefiting from participation in a venture that they knew or

---

[1] *See* Docs. 1-1 through 1-7 for copies of the operative complaints in the Underlying Lawsuits attached to Liberty's Complaint for Declaratory Judgment.

should have known was sex trafficking, or because they were vicariously liable for entities that did. Docs. 1-1 and 1-2 at ¶ 313, Doc. 1-3 at ¶ 332, Doc. 1-4 at ¶ 218, Doc. 1-5 at ¶ 447, Doc. 1-6 at ¶ 60, Doc. 1-7 at ¶¶ 38, 52. In five of the Underlying Lawsuits, the Underlying Plaintiffs also contend that Defendants were negligent by failing to take appropriate steps to ensure the safety and protection of plaintiffs while at the Red Roof Inn. Docs. 1-1 and 1-2 at ¶ 280, Doc. 1-3 at ¶ 300, Doc. 1-4 at ¶ 250, Doc. 1-5 at ¶ 490. And six of the Underlying Lawsuits include claims of violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"). Docs. 1-1 and 1-2 at ¶ 240, Doc. 1-3 at ¶ 250, Doc. 1-4 at ¶ 198, Doc. 1-5 at ¶ 428, Doc. 1-6 at ¶ 96.

## III.  ARGUMENT

### A.    Standard of Review.

A party moving for judgment on the pleadings must show that "there are no material facts in dispute and [it] is entitled to judgment as a matter of law." *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023). In considering a motion for judgment on the pleadings, this Court will "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." *Id..* (quotation omitted).

**B.      Georgia law, not Ohio law, governs this insurance dispute.**

As Liberty correctly acknowledges, "[f]ederal courts sitting in diversity apply the forum state's choice-of-law rules." *Boardman Petroleum v. Federated Mut. Ins.,* 135 F.3d 750, 753 (11th Cir. 1998). And, in Georgia, the choice of law analysis begins with the doctrine of *lex loci contractus*, under which a contract is governed by the law of the state in which the contract was made. But under the "presumption of identity" rule, the foreign state's law will be applied only when it "comes from a statute or judicial decisions interpreting that statute." *Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments*, 861 F. App'x 270, 277 (11th Cir. 2021) (citing *Coon v. Medical Ctr., Inc.*, 300 Ga. 722, 729 (2017)); *see also Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*, 823 F. App'x 815, 823 (11th Cir. 2020) (noting that Georgia's conflict-of-laws rules "decline to apply the common law of other jurisdictions").

As explained by the Eleventh Circuit, the presumption of identity rule holds that if "the law to be applied to a contract dispute by a Georgia court or a federal court in Georgia is judicially-created, then 'the common law as expounded by the courts of Georgia' must govern." *Id.*, at 276. Because the Court is asked in this insurance dispute to apply the common law, Georgia law therefore controls. *Id.*, at 276. While the rule originated more than 170 years ago, it was reaffirmed by the

Supreme Court of Georgia as recently as 2017. *Coon*, 797 S.E.2d at 837 ("The principles governing this case trace back to the first years of this Court's existence. From the beginning, this Court has distinguished between statutory law and common law when the law of another state provides the rule of decision in a lawsuit filed in a Georgia court."). As a result, in the absence of an applicable foreign statute, federal courts sitting in Georgia will apply Georgia common law in an insurance dispute. *See, e.g., Mt. Hawley*, 861 F. App'x at 277; *Renaissance Bliss*, 823 F. App'x at 823; *Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*, 631 F. Supp. 3d 1256, 1278 (N.D. Ga. 2022), *aff'd*, 2023 WL 6319224 (11th Cir. Sept. 28, 2023).[2]

Because the Court is asked in this insurance dispute to apply the common law, Georgia law controls. None of the Underlying Plaintiffs bring claims under Ohio statutes and no Ohio statute governs the interpretation of Liberty's insurance policies. The only Ohio statute that Liberty cites in its motion is Ohio's Human Trafficking Statute, which is inapplicable to any of the Underlying Lawsuits or this coverage action.

As Liberty itself admits, whether to apply the public-policy exception to the prevailing rule of freedom of contract is firmly within the realm of the courts. MJP

---

[2] The decisions cited by Liberty for the application of Ohio law either did not involve the presumption of identity rule (because the initial choice of law analysis pointed to Georgia law without the need to invoke the rule) or did not acknowledge the rule in the first instance. All the decisions relied upon by Liberty pre-date the Supreme Court of Georgia's reaffirmation of the rule in *Coon*.

at 17; *see also Cincinnati City School Dist. Bd. of Edn. v. Conners*, 974 N.E.2d 78, 83 (Ohio 2012)) (recognizing that, while the legislative branch is the "ultimate arbiter of public policy," the courts must determine whether and when to apply public policy to contractual disputes). And as Liberty also acknowledges, whether Ohio courts would recognize a public-policy exception under these circumstances would be a question of first impression in Ohio courts. MJP at 17. Because the insurance issues presented here are governed by common law, the Court should thus apply Georgia law.

**C.    Liberty has failed to carry its burden by failing to identify any Georgia authority entitling it to judgment on the pleadings.**

To prevail on its motion, Liberty must show that there are no material facts in dispute and that it is entitled to judgment as a matter of law. *Thompson*, 67 F.4th at 1305. By failing to cite any Georgia authority to support its requested relief, Liberty failed to meet its burden and its motion should be denied.[3]

---

[3] To the extent Liberty seeks to pivot in its reply brief to arguments under Georgia law that are not already addressed below, Defendants request that the Court allow a surreply so Defendants may respond to any such new arguments. *See Chemence Med. Prod., Inc. v. Medline Indus., Inc.*, 119 F. Supp. 3d 1376, 1383 (N.D. Ga. 2015) ("Generally, surreplies are not authorized and may only be filed under unusual circumstances, such as when a party raises new arguments in a reply brief.").

**D.    Georgia public policy does not prevent insurance for the claims asserted against the Defendants in the Underlying Lawsuits.**

There is no Georgia legal authority to support Liberty's argument that public policy bars coverage for the allegations asserted against the Defendants in the Underlying Lawsuits.[4] Georgia law strongly supports parties' freedom of contract and courts should be hesitant to invalidate any contract based on public policy:

> contracts will not be avoided by the courts as against public policy, except where the case is free from doubt and where an injury to the public interest clearly appears. The courts must exercise extreme caution in

---

[4] Although not relevant to the Court's analysis, Liberty's assertions on Ohio public policy are also incorrect. In *Doe v. Schaffer*, which postdates *Gearing v. Nationwide Ins. Co.*, 76 Ohio St. 3d 34, 38 (Ohio 1996), the Supreme Court of Ohio declared that "Ohio public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation." 738 N.E.2d 1243, 1248-49 (Ohio 2000); *see also* Ohio Rev. Code Ann. § 2907.05 (criminalizing sexual molestation). The progeny of *Doe* confirms that Ohio public policy allows insurance for negligence committed in connection with intentional or criminal acts. *See Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426, 431-32 (Ohio 2009) (re-affirming policy of *Doe* and reiterating that the negligent acts of an insured alongside intentional acts of another do not bar coverage); *Am. Fam. Mut. Ins. Co. v. Scott*, 2008 WL 1759093, *3-4 (Ohio Ct. App. Apr. 18, 2008) ("While it is true that public policy disfavors insuring for certain injuries stemming from certain criminal acts, it surely does not prohibit coverage for all injuries resulting from any criminal act."); *Safeco Ins. Co. v. Fed. Ins.,* 2007 WL 4553690, *4 (Ohio Ct. App. Dec. 28, 2007) (public policy does not bar coverage to homeowners for sexual molestation committed by homeowners' child because Ohio public policy allows coverage for negligence related to intentional acts); *see also Lehrner v. Safeco Ins./Am. States Ins. Co.,* 872 N.E.2d 295, 306 (Ohio Ct. App.  2007) ("public policy allows the purchase of insurance for negligence related to sexual molestation….").

declaring a contract void as against public policy and should do so only
in cases free from doubt.

*Key v. Georgia Dep't of Admin. Servs.*, 340 Ga. App. 534, 538–39, 798 S.E.2d 37,

41–42 (2017).

Consistent with this restraint, Georgia courts have hesitated to use public pol-

icy as a basis to prohibit coverage under an insurance policy. The Supreme Court of

Georgia has thus held that "it is not against public policy to insure against damages

for willful and wanton misconduct." *Greenwood Cemetery, Inc. v. Travelers Indem.*

*Co.*, 238 Ga. 313, 316, 232 S.E.2d 910, 913 (1977). And in *Travelers Indem. Co. v.*

*Hood*, the Georgia Court of Appeals similarly found that "it is not against public

policy for a contract for automobile liability insurance to cover liability of the in-

sured arising out of willful and wanton misconduct in unlawfully racing automobiles

on a public highway." 110 Ga. App. 855, 140 S.E.2d 68 (1964). While racing on a

public highway is both a crime and an intentional act in reckless disregard of the

safety of others, the *Hood* Court nevertheless found that claims arising from the in-

sured's racing were covered by his liability insurance. Rejecting the same argument

Liberty asserts here, the Court of Appeals noted that "[t]he fallacy of the [insurer's]

argument lies in the distinction between intentional act and intentional injury." *Id.,*

at 70. While insurance may not cover injuries intentionally inflicted, it ***does*** cover

injuries caused without the actor's intent or design to injure. "And the fact that an

injury for the purposes of criminal or tort law may be held constructively intentional

does not remove it from the category of injury 'caused by accident' in the terms of an insurance contract." *Id.; see also Anderson v. Southern Guar. Ins. Co. of Georgia,* 235 Ga. App. 306, 508 S.E.2d 726 (1998) (insurer required to defend the insured who dragged a bus driver off a bus, hit her with a cane, kicked her in the head, and was convicted of aggravated battery).

Applying this standard to the allegations asserted against the Defendants in the Underlying Lawsuits, it is apparent that there is no public policy that would bar coverage. None of the claims asserted in the Underlying Lawsuits allege—much less require—that the Defendants intended to cause harm.

The TVPRA claims common to all seven Underlying Lawsuits are brought under the civil and not criminal statute. *Compare* 18 U.S.C. § 1591; *with* 18 U.S.C. § 1595. There is no scienter element for civil claims of sex trafficking. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021) (holding that knowledge of acts of force, fraud, coercion is not required in civil statute). Instead, the Underlying Plaintiffs need only allege, as they have done, that Defendants "should have known" or had constructive knowledge of force, fraud, coercion, or any combination thereof being used to cause underlying plaintiffs' involvement in commercial sex acts. *See* Docs. 1-1and 1-2 at ¶ 253, 1-3 at ¶ 275, 1-4 at ¶ 223, 1-5 at ¶ 467, 1-6 at ¶ 64, 1-7 at ¶ 39. Put another way, the Underlying Plaintiffs have alleged a set of facts against Defendants under the TVPRA that Defendants knowingly rented rooms to

persons that they should have known (but did not actually know) were sex traffickers and financially benefitted from the sale of the room. *See Ricchio v. Bijal, Inc.,* 424 F. Supp. 3d 182, 194 (D. Mass. 2019) (insurer required to defend TVPRA claims against insured hotel operator because the statute invokes a negligence standard). Contrary to Liberty's contentions, the claims asserted in the Underlying Lawsuits do not allege that the Defendants "intentionally participated" in sex trafficking. Likewise, most of the RICO claims rely on violations of the TVPRA as one of the alleged racketeering activities. Docs. 1-1 and 1-2 at ¶ 203, 1-3 at ¶ 225, 1-4 at ¶ 173.

While decisions in Georgia analyzing sex trafficking claims are rare, *Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC* is instructive. *See* No. 1:21-CV-2474-TWT, 2022 WL 1135013, at *3 (N.D. Ga. Apr. 18, 2022). The claims asserted against the insured hotel operator in *Mesa Underwriters* are nearly identical to the Underlying Plaintiffs' claims here, including accusations of intentionally participating in a sex trafficking scheme and negligently failing to protect the underlying plaintiffs from that danger. 2022 WL 1135013, at *1-3. Judge Thrash was tasked in *Mesa Underwriters* with determining whether the claims triggered an assault and battery exclusion that barred coverage for certain intentional acts, including sexual abuse and sexual molestation. *Id.* at *3-4. In examining the applicability of the exclusion, Judge Thrash denied the insurer's motion for judgment on the pleadings

because the allegations did not involve "an intentional act to inflict injury or an intentional or reckless use of force." *Id.* at \*4. The Liberty policies contain no assault and battery exclusion and thus Liberty's arguments stand on weaker ground than those of the insurer in *Mesa Underwriters.*[5] For the same reason that the insurer in *Mesa Underwriters* was not entitled to judgment on the pleadings, Liberty's Motion here should be denied. *See also Ricchio,* 424 F. Supp. 3d at 194 (denying insurer's motion for summary judgment because TVPRA "permits recovery under a civil standard even in the absence of proof of intentional conduct.").

Ignoring Georgia law, Liberty cites to two Pennsylvania federal district decisions involving state sex trafficking claims. Neither decision's public policy holding has been affirmed by the Third Circuit, *see Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 781 F. App'x 57, n.5 (3d Cir. 2019), and neither is binding on this Court. Moreover, the decisions are based explicitly on Pennsylvania public policy and involve underlying claims under Pennsylvania's Human Trafficking statute that contains a

---

[5] Judge Thrash also properly distinguished authority cited by the insurer for the same proposition that Liberty cites the Ohio Supreme Court's decision in *Gearing*— that an intent to injure can be inferred as a matter of law for the sexual abuse of a child. *Mesa Underwriters*, at \*4. Such authority is inapplicable here because the Defendants are not accused of sexually abusing the Underlying Plaintiffs, but rather are alleged to have benefited from a venture in which the Underlying Plaintiffs were trafficked and to be negligent for failing to prevent their trafficking at the Red Roof hotels. *See also Cincinnati Ins. Co. v. Magnolia Ests., Inc.*, 286 Ga. App. 183, 185, 648 S.E.2d 498, 500 (2007) (insurer owed coverage to personal care home for claims that insured failed to prevent repeated attacks on plaintiff by a fellow resident).

scienter requirement not found in the TVPRA.[6] The decisions are not on point, and

no similar public policy applies in Georgia.

Simply put, there is no Georgia public policy that prevents insurance coverage

for the types of allegations asserted in the Underlying Lawsuits and there is no basis

for the Court to create new public policy here.

## E. The Underlying Lawsuits allege fortuitous losses.

Liberty next argues that no coverage exists because the Underlying Lawsuits

do not allege fortuitous losses. This argument fails for the same reason as its public

policy argument: the Underlying Lawsuits do not allege that Defendants intended to

cause harm and are based, at least in part, on alleged unintentional or negligent acts

and omissions. These claims allege fortuitous losses.

While Liberty fails to any Georgia authority on fortuity—and has thus failed

to meet in its burden—Liberty's argument fails under Georgia law.[7]

---

[6] *See* 18 Pa. Const. Stat. § 3011(a) (defining sex trafficking as conduct committed knowingly or with reckless disregard).

[7] Once again, Liberty is also incorrect regarding Ohio law. *See Doe*, 738 N.E.2d at 1248 (holding coverage existed for claim of negligent hiring involving sexual molestation of child because "the critical issue is the nature of the intent—inferred or otherwise—of the party seeking coverage"); *Safeco Ins.*, 913 N.E.2d at 432 ("when a liability insurance policy defines an 'occurrence' as an 'accident,' a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person…qualifies as an 'occurrence.'"). Even where coverage is precluded due to *one insured's* intentional or illegal acts, that does "not preclude cov-

"[I]njuries 'caused by accident' as used in an insurance contract [] include injuries caused without the actor's intent or design to injure and would not include injuries intentionally inflicted. *'Accident' is a more comprehensive term than negligence*, although negligence is included in it. And the fact that an injury for the purposes of criminal or tort law may be held constructively intentional does not remove it from the category of injury 'caused by accident' in the terms of an insurance contract.

*Hood*, 110 Ga. App. at 857 (emphasis added). Liberty misapplies the word "accident," as it is used in the insurance context, when it states that "sex trafficking is not an accident." Defendants are not alleged to have intentionally committed sex trafficking. Instead, as explained above, at least one set of facts exists in each complaint where Defendants are merely alleged to have been negligent. Such facts exist independent of any alleged intentional conduct, and a duty to defend thus exists. Because there is at least one set of facts where Defendants are liable but would not be considered to have intended or "design[ed] to injure" the underlying Plaintiffs, Liberty's argument fails.

**F.    Georgia law requires an insurer to defend a lawsuit that alleges both covered and uncovered claims.**

Even if some claims asserted against Defendants were not covered under Liberty's policies, Liberty would still have to defend the Underlying Lawsuits. Georgia law requires Liberty to defend if there is even a ***possibility*** that a judgment against

---

erage for the negligent actions of *other insureds under the same policy* that are predicated on the commission of those intentional or illegal acts[.]" *Safeco Ins.*, 913 N.E.2d at 436 (emphasis added).

the policyholder could be covered. When both covered and uncovered claims are alleged, an insurer must defend.

Because the Defendants' liability in the Underlying Lawsuits has not been established, the only issue properly before the Court is Liberty's duty to defend. *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770–71 (11th Cir. 2019) ("an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established."). An insurer's duty to defend is a separate and independent obligation that is broader than the duty to indemnify. *See George L. Smith II Ga. World Cong. Ctr. Auth. v. Miller Brewing Co.,* 566 S.E.2d 361, 363 (Ga. App. 2002). The duty to defend arises whenever an underlying complaint "potentially" comes within coverage. *Driskell v. Empire Fire & Marine Ins.,* 547 S.E.2d 360 (Ga. App. 2001) (quotation omitted). Stated another way, an insurer must defend its policyholder if the claims state facts which even arguably fall within coverage of the policy. *Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*, 481 S.E.2d 850, 852 (Ga. App. 1997); *see also Continental Cas. Co. v. Synalloy Corp.*, 667 F. Supp. 1523, 1541 (S.D. Ga. 1983) (insurer must provide a defense if there is the possibility of coverage, liberally construing the allegations of the complaint).

It is common for lawsuits to involve both potentially covered and potentially uncovered claims and when presented with such a suit, the insurer must defend the

entire lawsuit. *HDI-Gerling America Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012)) (under Georgia law, "where an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted"). The Restatement of the Law of Liability Insurance includes an example of this very scenario, explaining that the insurer must defend regardless of the factual support for the covered claim:

> Insured is sued for bodily injury sustained during a fight in a bar. The complaint contains two counts. In the first count, the plaintiff alleges that Insured intentionally assaulted the plaintiff. In the second count, the plaintiff alleges that Insured negligently struck the plaintiff on the head. Insured's homeowner's insurer investigates the claim and determines, based on reliable witnesses, that Insured attacked the plaintiff with a wooden club. Nevertheless, the insurer has a duty to defend because count two in the complaint sets forth a covered legal theory.

Restatement of the Law of Liability Insurance § 13 (2019); *see also* Windt, INSURANCE CLAIMS AND DISPUTES, 5th ed., § 4:12, at p. 4-128.

Thus, Liberty can prevail on its motion only if the underlying plaintiffs' complaint unambiguously excludes coverage under the policy. *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 646 S.E.2d 682, 685 (Ga. App. 2007) ("Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured"), *quoting Penn-America*; s*ee also* Fed. R. Civ. P. 8 (d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party

makes alternative statements, the pleading is sufficient if any one of them is sufficient.").[8]

The Georgia Court of Appeals decision in *Landmark Am. Ins. Co. v. Khan* provides a thorough analysis of Georgia's rules on the duty to defend when the allegations against the insured include both intentional, criminal conduct and negligence. 705 S.E.2d 707, 711–12 (2011). The underlying plaintiff in *Khan* sued the insured nightclub for assault and battery, alleging that the insured ordered and directed its employees to assault the underlying plaintiff by shooting him six times. *Id.* at 708–09. The underlying plaintiff also asserted a separate claim that the insured was negligent for failing to provide adequate security from physical attacks at its business location. *Id.* Even with allegations of intentional, criminal conduct—including attempted murder, aggravated assault, and aggravated battery—the Court held the insurer owed a duty to defend. *Id.* at 712. Finding an assault and battery exclusion inapplicable, the Court found there was, arguably, a set of facts where the injury to plaintiff was not excluded. *Id.* at 711–12. Because the underlying plaintiff had a *potential* to recover damages without falling under the exclusion, a duty to defend existed. *Id.*

---

[8]*See also* Fed. R. Civ. P. 8 (d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Like the insurer in *Khan*, Liberty asks the Court to shut its eyes to the negligence allegations alleged against the Defendants. Liberty's contention that the "gravamen of the Underlying Lawsuits is that the Red Roof Entities actively and intentionally participated—culpable assistance and sharing in the risk and reward—in the Underlying Plaintiffs' sex trafficking" is incorrect. *See* MJP, at 24. But more importantly, Liberty's point is irrelevant. The duty to defend is not based on the "gravamen" of an underlying lawsuit, but on whether ***any*** set of facts alleged could be covered. *Khan*, 705 S.E.2d at 709 ("The controlling issue is whether the insurance policy covers either of the claims asserted by Khan in his underlying complaint….").

Liberty ignores the many allegations that could give rise to a covered claim independent of any alleged intentional or criminal acts. *See* Docs 1-1 and 1-2 at ¶¶ 276-91 (alleging negligence); Doc. 1-3 at ¶¶ 296-310 (same); Doc. 1-4 at ¶¶ 246-61 (same); Doc. 1-5 at ¶¶ 484-508 (same); Doc. 1-6, ¶¶ 60-69 (including civil TVPRA claims not based on intentional conduct); Doc. 1-7, ¶ 78 ("Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants, and one or more or all of the above stated acts were the proximate cause of the injuries and damages sustained by the Plaintiff."). Because the Underlying Lawsuits each allege a set of facts which could fall within the coverage of the Liberty policies, Liberty's motion should be denied.

## IV.    CONCLUSION

Liberty's motion fails or refuses to acknowledge the possibility that Defendants could be held liable without any finding of an intent to commit harm. Because the Underlying Lawsuits include allegations which, if proven, would be covered, Liberty owes a duty to defend and its Motion for Judgment on the Pleadings should be denied.

Respectfully submitted, this 10th day of October, 2023.

FELLOWS LABRIOLA LLP

/s/ Shattuck Ely
Shattuck Ely
Georgia Bar No. 246944
tely@fellab.com
Jonathan Spratling
Georgia Bar No. 358001
jspratling@fellab.com

Peachtree Center
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200

*Attorneys for Defendants Red Roof Inns,*
*Inc., Red Roof Franchising, LLC, RRI West*
*Management, LLC, and FMW RRI, LLC*

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

Undersigned counsel hereby certifies, under LR 7.1(D), NDGa, that the foregoing was prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved in LR 5.1, NDGa.

*/s/ Shattuck Ely*
Shattuck Ely

## CERTIFICATE OF SERVICE

I certify that this day, I electronically filed the foregoing using the Court's CM/ECF system, which will send email notification to all counsel of record.

Respectfully submitted, this 10th day of October, 2023.

/s/ Shattuck Ely
Shattuck Ely