IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>  v.<br><br>RED ROOF INNS, INC.; RED ROOF FRANCHISING, LLC; RRI WEST MANAGEMENT, LLC; FMW RRI NC, LLC,<br><br>      Defendants,<br><br>JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., T.H., H.B., and K.M.,<br><br>      Nominal Defendants. | Civil Action No.: 1:23-cv-02047-LMM |

**LIBERTY MUTUAL FIRE INSURANCE
COMPANY'S REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

NELSON MULLINS RILEY &
SCARBOROUGH LLP
Erika C. Birg
Georgia Bar No. 058140
Erika.Birg@nelsonmullins.com
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
Tel: (404) 332-6110

*Of Counsel*:
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Nancy D. Adams *(pro hac vice)*
NDAdams@mintz.com
Alec J. Zadek *(pro hac vice)*
AZadek@mintz.com
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000

Ellen M. Farrell *(pro hac vice)*
EMFarrell@mintz.com
555 12th Street NW, Suite 1100
Washington, D.C. 20004
Tel: (202) 434-7300

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

PRELIMINARY STATEMENT ..............................................................1

    A.    The Underlying Plaintiffs Allege the Red Roof Entities Knowingly Participated in a Sex Trafficking Venture.........................3

    B.    Georgia's Conflicts of Laws Requires Application of Ohio Law. .................................................................................................6

    C.    Ohio Public Policy Bars Coverage for the Underlying Plaintiffs' Claims.....................................................................8

    D.    Georgia Public Policy Bars Coverage for the Underlying Plaintiffs' Claims...................................................................10

    E.    The Underlying Plaintiffs Do Not Allege An Accident......................12

    F.    Absent a Duty to Defend, There is No Duty to Indemnify.................14

CONCLUSION .....................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AFLAC Inc. v. Chubb & Sons, Inc.*,
    260 Ga. App. 306 (2003) .......................................................................13

*Albany Lime & Cement Co. v. Scottsdale Ins. Co.*,
    2008 U.S. Dist. LEXIS 128218 (M.D. Ga. Mar. 31, 2008)................14

*Allstate Vehicle & Prop. Ins. Co. v. Inabnitt*,
    2022-Ohio-2098 (Ohio Ct. App. 2022) .............................................13

*Chemence Med. Prods. v. Medline Indus.*,
    119 F. Supp. 3d 1376 (N.D. Ga. 2015)...............................................10

*Chiquita Brands Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg,*
    *P.A.*,
    2013-Ohio-759 (Ohio Ct. App. 2013) ..........................................4, 8, 9

*Cincinnati Ins. Co. v. Oblates of St. Francis de Sales, Inc.*,
    2010-Ohio-4382 (Ohio Ct. App. 2010) .............................................12

*Citizens Ins. Co. v. Am. v. Banyan Tree Mgmt., LLC*,
    631 F. Supp. 3d 1256 (N.D. Ga. 2022)................................................7

*Coon v. Medical Center, Inc.*,
    300 Ga. 722 (2017) .....................................................................6, 7, 8

*Doe v. Shaffer*,
    90 Ohio St. 3d 388 (Ohio 2000) ....................................................9, 10

*Dynamic Cleaning Serv. v. First Fin. Ins. Co.*,
    208 Ga. App. 37 (1993) ......................................................................4

*Ellis v. Skinner*,
    2023-Ohio-2032 (Ohio Ct. App. 2023) .............................................13

*Gearing v. Nationwide Ins. Co.*,
    76 Ohio St. 3d 34 (Ohio 1996) .......................................................8, 9

*Grange Mut. Cas. Co. v. Gore*,
    1997 Ohio App. LEXIS 1985 (Ohio Ct. App. May 12, 1997) .............8

*Greenwood Cemetery, Inc. v. Travelers Indem. Co.*,
   238 Ga. 313 (1977) .........................................................................................11

*Jane Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ........................................................................3, 5

*Landmark Am. Ins. Co. v. Khan*,
   307 Ga. App. 609 (2011) .................................................................................14

*Lehrner v. Safeco Ins. Co.*,
   171 Ohio App. 3d 570 (Ohio 2007)................................................................10

*Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC*,
   2022 U.S. Dist. LEXIS 70936 (N.D. Ga. Apr. 18, 2022)...........................11, 12

*Mt. Hawley Ins. Co. v. East Perimeter Pointe Apts., LP*,
   409 F. Supp. 3d 1319 (N.D. Ga. 2019)..............................................................7

*Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*,
   823 F. App'x. 815 (11th Cir. 2020) ....................................................................7

*Ohio Northern Univ. v. Charles Constr. Serv., Inc.*,
   155 Ohio St. 3d 197 (Ohio 2018) ...................................................................13

*Reed v. Auto-Owners Inc. Co.*,
   284 Ga. 286 (2008) .........................................................................................10

*Ricchio v. Bijal, Inc.*,
   424 F. Supp. 3d 182 (D. Mass. 2019)................................................................5

*Safeco Ins. Co. of Am. v. White*,
   122 Ohio St. 3d 562 (Ohio 2009) ...................................................................10

*Safeco Ins. Co. v. Federal Ins. Co.*,
   2007-Ohio-7068 (Ohio Ct. App. 2007) ...........................................................10

*Thacker v. Bd. of Trustees*,
   35 Ohio St. 2d 49 (Ohio 1972) .........................................................................7

*The Burt Co. v. Clarendon Am. Ins. Co.*,
   2010 U.S. Dist. LEXIS 157271 (M.D. Ga. Jan. 26, 2010)................................14

*Travelers Indem. Co. v. Hood*,
    110 Ga. App. 855 (1964) ...................................................................................11

*Travelers Prop. Cas. Co. of America v. Moore*,
    763 F.3d 1265 (11th Cir. 2014) ..........................................................................6

**Statutes**

O.C.G.A. § 16-5-46(c) (Georgia's Trafficking Statute) ...........................................3

## PRELIMINARY STATEMENT

The Underlying Plaintiffs allege that they were trafficked for sex at Red Roof Inn hotels.  The Underlying Plaintiffs further allege that the corporate entities—the Red Roof Entities—that collectively own, franchise, and operate Red Roof-affiliated hotels, not only ***knew*** about the sex trafficking that was occurring at the hotels where the Underlying Plaintiffs were sold for sex, but also that the Red Roof Entities ***participated*** in, and profited from, the sex trafficking.  The Red Roof Entities and LMFIC dispute whether the Red Roof Entities are entitled to insurance coverage for their liability arising from the Underlying Plaintiffs' allegations.  The Red Roof Entities downplay the significance of the underlying allegations, referring to this matter as a "common" coverage dispute.  There is nothing "common" about it.  LMFIC specifically, and insurance generally, does not afford coverage to perpetrators—whether individuals or large corporations—for liability for participating in sex trafficking.  Further, even if there was (or could be) coverage for such conduct, the Underlying Plaintiffs' claims fall outside of the insuring agreement because they do not allege an unforeseeable, fortuitous event.

To avoid a finding of no coverage, the Red Roof Entities[1] rely on a superficial treatment of legal authority, an incorrect application of Georgia's

---

[1] LMFIC submits this reply brief in response to the joinder of certain of the Underlying Plaintiffs as well.  [ECF 47, 48.]

conflicts of law rule, and a flawed argument that their alleged conduct equates to negligence.  Regardless of the legal theory or choice of law, the Red Roof Entities are seeking coverage for their alleged participation in a sex trafficking venture.  As discussed below, the Red Roof Entities cannot be held liable for a violation of the TVPRA unless they shared in the risk and reward of the alleged sex trafficking venture, which they knew or should have known was in violation of the TVPRA (meaning, it involved force, fraud or coercion of the Underlying Plaintiffs).

The Red Roof Entities argue that they did not know the alleged venture violated the TVPRA; thus, their conduct may amount to negligence.  This position has a glaring defect—whether or not the Red Roof Entities knew or should have known the human sex trafficking venture violated the TVPRA, the liability for which the Red Roof Entities seek coverage derives from their participation in an illegal venture profiting from commercial sex.  In short, it appears that the Red Roof Entities are arguing that if they profited from prostitution, their liability should be insured because they did not know that the women being prostituted were subject to force, fraud, or coercion sufficient to run afoul of the TVPRA.  The public policy of Georgia, or any state, cannot permit insurance to provide coverage for illegal practices (profiting from prostitution) simply because the insured person or entity was ignorant as to the severity of the criminal enterprises (profiting from the Underlying Plaintiffs being forced, defrauded, or coerced into prostitution).

2

There is nothing "common" about this dispute, and there is no theory of law or equity that should permit insurance coverage for such behavior.

**A.    The Underlying Plaintiffs Allege the Red Roof Entities Knowingly Participated in a Sex Trafficking Venture.**

The Red Roof Entities do not dispute that the TVPRA criminalizes sex trafficking and provides for civil remedies for persons or entities that knowingly benefit from participating in a venture that they knew or should have known violated the TVPRA. *See Jane Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021) (holding the TVPRA "prohibits the sex trafficking of children or adults by force, fraud, or coercion"). The TVPRA provides a mechanism for victims of sex trafficking to sue the Red Roof Entities that allegedly participated in, and benefited from, their sex trafficking. *Id.* The penalties imposed by the TVPRA are intended to deter the exact conduct alleged against the Red Roof Entities. *Id.* Further, Georgia law criminalizes sex trafficking. O.C.G.A. § 16-5-46(c) ("Georgia's Trafficking Statute").

Not surprisingly, the Underlying Plaintiffs assert every possible legal theory against the Red Roof Entities for the Red Roof Entities' alleged direct role in their sex trafficking. For coverage purposes, the Red Roof Entities focus on the potential for "mere" acts of negligence, which the Red Roof Entities allege creates a duty to defend. But, the law is clear, coverage turns on the cause of the injuries and not the theories of liability. *Chiquita Brands Int'l, Inc. v. Nat'l Union Fire Ins.*

3

*Co. of Pittsburg, P.A.*, 2013-Ohio-759, at *P17 (Ohio Ct. App. 2013) ("'The mere

insinuation of negligence in a civil suit complaint cannot transform what are

essentially intentional torts into something 'accidental' that might be covered by

insurance.'" (citation omitted)).[2]  Similarly, here, although certain claims are

labeled as "negligence," the Red Roof Entities' liability stems from their alleged

participation in commercial sex operations at their hotels.

The Red Roof Entities argue that there is "no public policy that would bar

coverage" for the Red Roof Entities' violations of the TVPRA because, to prevail

on the Underlying Plaintiffs' claims, there is no requirement that the Red Roof

Entities "intended to cause harm."  [ECF 46 at 9.]  In other words, the Red Roof

Entities argue that they did not know the alleged venture violated the TVPRA;

thus, their conduct may amount to negligence.  This argument is flawed for two

separate and independent reasons.

First, the Red Roof Entities' argument is undermined by the elements of the

TVPRA.  To allege a claim under the TVPRA, the Underlying Plaintiffs must

prove that the Red Roof Entities: "(1) knowingly benefited; (2) from participating

in a venture; (3) that venture violated the TVPRA as to the [Underlying Plaintiffs];

---

[2] Georgia law is in accord.  *See Dynamic Cleaning Serv. v. First Fin. Ins. Co.*, 208
Ga. App. 37, 38 (1993) ("Appellant's argument that the [assault and battery]
exclusion does not apply because the complaint alleges negligence and not assault
and battery is unpersuasive.").

and (4) [the Red Roof Entities] knew or should have known that the venture violated the TVPRA as to [the Underlying Plaintiffs]." *Jane Doe #1,* 21 F.4th at 723.  The Red Roof Entities focus on the fourth element (which requires force, fraud, or coercion), ignoring the second element that the Underlying Plaintiffs must prove that the Red Roof Entities "participated" in a sex trafficking venture.  The Eleventh Circuit has established the meaning of participation in this Circuit: "[i]n short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit. . . ." *Id.* at 727.  Thus, negligence is not sufficient to prove a TVPRA violation.  The Red Roof Entities can be held liable for violating the TVPRA only if they knowingly benefited by taking part in a common undertaking involving risk or profit with the Underlying Plaintiffs' traffickers.[3]  *Id.* at 725 ("[W]e conclude that the phrase 'participation in a venture' requires that the Does allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit.").

Second, the Underlying Plaintiffs have not alleged an accident, mistake, or fortuitous event.  They have alleged, as they must, that the Red Roof Entities benefited from the risk and profit the Red Roof Entities derived from partnering with their traffickers.  [ECF 1-1 at ¶ 31; ECF 1-2 at ¶ 31; *see also* ECF 1-5 at ¶ 43

---

[3] For this reason, *Ricchio v. Bijal, Inc.,* 424 F. Supp. 3d 182 (D. Mass. 2019), which is neither precedential nor binding on this court, is of no consequence.

(Smyrna Red Roof hotel employees "acted as lookouts for traffickers"); ECF 1-6, at ¶¶ 33-35 (Norcross Red Roof employees "served as lookouts for sex traffickers").]  The Red Roof Entities argue that, if they did not know that the Underlying Plaintiffs were subjected to force, fraud, or coercion when being sold for sex at the Red Roof hotels, then the Red Roof Entities' conduct is merely an accident for which insurance coverage should be available.  This argument ignores the fact that, regardless of whether the Red Roof Entities knew (or should have known) that the Underlying Plaintiffs were subjected to force, fraud, or coercion, the Red Roof Entities can be held liable for a violation of the TVPRA only if they were intentionally profiting from commercial sex between "johns" and the Underlying Plaintiffs at Red Roof hotels.

## B.  Georgia's Conflicts of Laws Requires Application of Ohio Law.

In Georgia, choice of law analysis follows the doctrine of *lex loci contractus*, which states that a contract is governed by the law of the state in which the contract was made and a contract is "made" where it is delivered.  *See Travelers Prop. Cas. Co. of America v. Moore,* 763 F.3d 1265, 1271 (11th Cir. 2014).  As previously stated, the LMFIC policies at issue here were delivered to Red Roof Inns, Inc. in Columbus, Ohio.  [ECF 1-8 at 2, 12, 22, 33, 44, 55, 66, and 82.]  In addition to *lex loci contractus*, Georgia also applies the "presumption of identity" rule.  *Coon v. Medical Center, Inc.*, 300 Ga. 722 (2017).  As explained by

6

Georgia's Supreme Court in *Coon*, "[a]s a matter of comity, a Georgia court will defer to another state's statutes … in determining the law of that state" but that "[i]n the absence of a statute, however, at least with respect to a state where the common law is in force . . . a Georgia court will apply the common law as expounded by the courts of Georgia." *Id.* at 729.  However, the Georgia Supreme Court limited the presumption of identity rule's application, holding that "this approach will be followed if the other state was one of, or formed from, the territory of one of, the original 13 colonies that inherited the common law of England." *Id.* at 731, n.5.  Ohio is not such a state; English common law in Ohio was "repealed in 1806." *Thacker v. Bd. of Trustees*, 35 Ohio St. 2d 49, 67-68 (Ohio 1972) *contra Mt. Hawley Ins. Co. v. East Perimeter Pointe Apts., LP*, 409 F. Supp. 3d 1319, 1329–30 (N.D. Ga. 2019) (analyzing choice of law between Georgia and California and applying Georgia common law where California "adopted English common law by statute").[4]  Because the Policies were "made" in

---

[4] The Red Roof Entities also rely upon *Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC,* 823 F. App'x. 815 (11th Cir. 2020) and *Citizens Ins. Co. v. Am. v. Banyan Tree Mgmt., LLC,* 631 F. Supp. 3d 1256 (N.D. Ga. 2022). But, in those cases, the competing jurisdictions, California and Florida, respectively, adopted English common law. https://supremecourt.flcourts.gov/About-the-Court/History-of-Florida-Law (last accessed October 24, 2023).

Ohio and because Ohio is neither one of the original thirteen colonies nor a state that applies English common law, Ohio law governs the Policies.[5]

## C.    Ohio Public Policy Bars Coverage for the Underlying Plaintiffs' Claims.

Contrary to the Red Roof Entities' assertions, which it relegates to footnotes, under Ohio law, criminal conduct and intentional torts are uninsurable in Ohio on public policy grounds. *Grange Mut. Cas. Co. v. Gore*, 1997 Ohio App. LEXIS 1985, at *8 (Ohio Ct. App. May 12, 1997) (citing *Gearing v. Nationwide Ins. Co.*, 76 Ohio St. 3d 34, 38 (Ohio 1996)). More specifically, long-standing Ohio public policy "prohibits wrongdoers from utilizing insurance to avoid liability for intentional criminal conduct and intentional infliction of bodily injury to another." *Id.*; *see also Chiquita Brands Int'l*, 2013-Ohio-759, at * P11 ("Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts."). Although the insurability of participation in a sex trafficking venture would be an issue of first impression in Ohio, Ohio courts would find such claims are uninsurable on public policy grounds.

---

[5] The Red Roof Entities assert that the legal authority upon which LMFIC relies does not apply because the decisions fail to acknowledge the presumption of identity rule and also pre-date *Coon.* Neither assertion is correct. First, the decisions involve jurisdictions (Michigan and Tennessee) that were not one of the original thirteen states. Second, as the Red Roof Entities state, *Coon* reaffirmed the existing law, which both federal and state courts presumably followed.

LMFIC discussed the *Gearing* decision in detail in its opening brief. [ECF 45-1 at 17.] In *Gearing,* the court held that the "public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries produced by criminal acts of sexual misconduct against a minor." *Gearing*, 76 Ohio St. 3d at 40. In an attempt to avoid *Gearing*, in a footnote, the Red Roof Entities assert that, under *Doe v. Shaffer,* 90 Ohio St. 3d 388 (Ohio 2000), sex trafficking claims are insurable. [ECF 46 at 7, n.4.] But, the claims in *Shaffer* were materially different. In *Shaffer*, an insured sought insurance coverage for negligence claims, such as negligent hiring, supervision and retention, related to sexual abuse committed by others. *Id.* at 389. Thus, in *Shaffer*, the insured was seeking coverage for negligence claims solely arising out of a third-party's conduct. *Id.* at 389─90. Here, the Underlying Plaintiffs do ***not*** allege that the Red Roof Entities' "negligently enabled" the sex trafficking; rather, the Underlying Plaintiffs allege that the Red Roof Entities participated in, and benefited from, the sex trafficking venture. Therefore, *Shaffer* does not apply. *See Chiquita Brands Int'l*, 2013-Ohio-759, at *P16 (adopting similar reasoning for negligence claims brought against Chiquita brands for its intentional conduct).

As for the Red Roof Entities' reliance upon the purported "progeny" of *Shaffer,* none of those cases is applicable. For example, in *Safeco Ins. Co. of Am.*

*v. White*, 122 Ohio St. 3d 562 (Ohio 2009),[6] the court held that negligence claims

against parents arising out of the intentional criminal conduct of their son were

insurable.  Stated differently, the negligence claims arose completely and entirely

from the independent conduct of a third party.  Next, in *Lehrner v. Safeco Ins. Co.*,

171 Ohio App. 3d 570 (Ohio 2007), the court held that a business was not afforded

coverage for claims arising from a car crash because the policy excluded coverage

for bodily injury arising out of the operation or supervision of a car.  There, the

Ohio Supreme Court rejected the business' argument that, under *Shaffer,* coverage

turns on the theory of liability as opposed to the cause of the injury.  *Id.* at 584.

## D.    Georgia Public Policy Bars Coverage for the Underlying Plaintiffs' Claims.

Even if this Court were to find that Georgia law applies, which it should not,

the outcome would be the same.  Like Ohio, under Georgia law, an insurance

contract should only be enforced where it does "not violate the law or judicially

cognizable public policy."  *Reed v. Auto-Owners Inc. Co.*, 284 Ga. 286, 287

(2008).[7]  As support for their position that sex trafficking claims are insurable, the

---

[6] The Red Roof Entities also rely on *Safeco Ins. Co. v. Federal Ins. Co.*, 2007-Ohio-7068 (Ohio Ct. App. 2007); this is the lower court decision from *White*.

[7] In a footnote, the Red Roof Entities request a surreply to reply to arguments raised under Georgia law.  [ECF 46 at 6, n.3.]  This request should be denied.  As the Red Roof Entities' own case law makes clear, a surreply is not appropriate where the new arguments raised in a reply brief are in response to arguments raised in the opposition.  *Chemence Med. Prods. v. Medline Indus.*, 119 F. Supp. 3d 1376,

Red Roof Entities rely upon legal authority holding that, under Georgia law,

claims for intentionally removing a grave stone and illegally racing an automobile

are insurable.[8]  To be clear: neither situation is even remotely analogous to the

Underlying Plaintiffs' allegations.  As for the Red Roof Entities' reliance upon

*Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC*, 2022 U.S. Dist.

LEXIS 70936, at *7 (N.D. Ga. Apr. 18, 2022), unlike here, in that case, the

underlying minor plaintiffs did not allege that the hotel violated the TVPRA.

Moreover, in *Mesa*, the underlying plaintiffs expressly alleged that their traffickers

"did not use force, attempt to use force, or threaten to use force on [them] during

their sex trafficking."[9]  Further, at issue in *Mesa* was the applicability (or not) of

assault and battery exclusion, not public policy.  *Id.*  at **7-11.  Even though the

---

1383 (N.D. Ga. 2015) (denying leave to file a surreply because the newly raised
arguments responded to arguments raised in the response in opposition).

[8] *See Greenwood Cemetery, Inc. v. Travelers Indem. Co.,* 238 Ga. 313 (1977)
(grave stone); *Travelers Indem. Co. v. Hood,* 110 Ga. App. 855 (1964) (unlawfully
racing automobiles).

[9] *Mesa Underwriters Spec. Ins. Co. v. Khamlai Lodging, LLC, et al*, No. 1:21-cv-
2474, Defendants' Response to Motion for Judgment on the Pleadings at Exhibit 1,
¶18 [ECF 32-1] (filed 10/13/21) (N.D. Ga.).

underlying lawsuit at issue in *Mesa* concerns sex trafficking, the basis for the motion for judgment on the pleading in *Mesa* is not relevant here.

**E.    The Underlying Plaintiffs Do Not Allege An Accident.**

The Red Roof Entities focus on legal theories of "mere" negligence, ignoring the Underlying Plaintiffs' allegations that the Red Roof Entities "had every reason to know about the prevalence of sex trafficking at their hotels" and "actively assisted [the] trafficker[s]." [ECF 1-1 at ¶¶ 4, 31; ECF 1-2 at ¶¶ 4, 31; ECF 1-3 at ¶¶ 4, 128; ECF 1-4 at ¶¶ 4, 29; ECF 1-5 at ¶¶ 2, 43; ECF 1-6 at ¶¶ 4, 33-35; ECF 1-7 at ¶ 4.]  Furthermore, the Underlying Plaintiffs allege not just that the Red Roof Entities had actual knowledge of their sex trafficking but that the Red Roof Entities actively participated in their sex trafficking. [ECF 1-1 at ¶ 31; ECF 1-2 at ¶ 31; *see also* ECF 1-5 at ¶ 43 (alleging Red Roof hotel employees "acted as lookouts for traffickers"); ECF 1-6 at ¶¶ 33-35 (alleging Red Roof employees "served as lookouts for sex traffickers").]  Regardless of the legal theories, the Underlying Plaintiffs allege that the Red Roof Entities participated— providing culpable assistance and sharing in the risk and reward—in their commercial sex venture.  *See Cincinnati Ins. Co. v. Oblates of St. Francis de Sales, Inc.,* 2010-Ohio-4382 (Ohio Ct. App. 2010) (holding the insureds' conduct was "substantially certain to result in incidents of sexual molestation").

The Red Roof Entities assert that LMFIC "misapplies the word 'accident,' as it is used in the insurance context," because "one set of facts exist" where the Red Roof Entities did not intend to cause harm but were "merely alleged to have been negligent." [ECF 46 at 13.] This assertion is flawed. In describing a "fortuitous" event, Ohio courts require an accidental event or happening with an element of fortuity. *See Ohio Northern Univ. v. Charles Constr. Serv., Inc.,* 155 Ohio St. 3d 197, 200 (Ohio 2018).[10] The fact that certain of the Underlying Plaintiffs assert a negligence claim does not mean that they have alleged an accident. Stated differently, the Red Roof Entities conflate negligence principles with the analysis required to determine whether the Underlying Plaintiffs allege an "occurrence." *See Ellis v. Skinner,* 2023-Ohio-2032, at *P26 (Ohio Ct. App. 2023) (finding that the "complaint alleges facts and arguments that relate specifically to intentional, wrongful acts"); *Allstate Vehicle & Prop. Ins. Co. v. Inabnitt,* 2022-Ohio-2098, at *P45 (Ohio Ct. App. 2022) (holding despite "characterization of [these] acts as 'negligent' … which would typically be covered by the Policy, the crux of [the] claim concerns the conduct" that led to an assault conviction).

---

[10] Georgia is in accord. *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 308 n.5 (2003) (Georgia courts have looked to the definition provided by Black's Law Dictionary, providing that a fortuitous event includes "an event which happens by chance, unexpectedly, or without known cause; one which is undersigned or unplanned …").

**F.     Absent a Duty to Defend, There is No Duty to Indemnify.**

Coverage determinations— both the duty to defend and indemnify—can be made before resolving the underlying action.  *See Albany Lime & Cement Co. v. Scottsdale Ins. Co.,* 2008 U.S. Dist. LEXIS 128218, at *17 (M.D. Ga. Mar. 31, 2008).  "The defense duty focuses on the allegations of the complainant and the language of the insurance policy and the duty to indemnify exists only if the true facts of the case actually trigger coverage.  Therefore, it follows that where a duty to defend does not exist as a matter of law, a duty to indemnify is also precluded."  *The Burt Co. v. Clarendon Am. Ins. Co.,* 2010 U.S. Dist. LEXIS 157271, at *24 (M.D. Ga. Jan. 26, 2010).

As for the Red Roof Entities' reliance upon *Landmark Am. Ins. Co. v. Khan,* 307 Ga. App. 609 (2011) to establish a duty to defend, there, the Georgia Court of Appeals held that, based upon the underlying plaintiff's allegations, an exception to the policy's assault and battery exclusion could be applicable.  Contrary to the Red Roof Entities' suggestion, the *Khan* decision did not turn on whether the underlying plaintiff alleged negligence claims; the decision turned on the applicability (or inapplicability) of an assault and battery exclusion.

Finally, LMFIC is not seeking, as the Red Roof Entities suggest, that the Court "shut its eyes to the negligence allegations."  [ECF 46 at 17.]  As explained above, the fact that the Underlying Plaintiffs allege negligence is not determinative

14

and it does not create coverage that does not otherwise exist.  There can be no dispute that the Underlying Plaintiffs allege numerous "open and obvious" signs of sex trafficking.  There can likewise be no dispute that the Underlying Plaintiffs allege the Red Roof Entities knowingly benefitted from their participation in the sex trafficking venture.  Shielding the Red Roof Entities from the consequences of these allegations is against public policy.  Moreover, because the Underlying Plaintiffs' allegations fail to allege unforeseen, fortuitous events involving the Red Roof Entities, the allegations fall outside the insuring agreement for the Policies.

## <u>CONCLUSION</u>

Because the Red Roof Entities' liability for sex trafficking is uninsurable on public policy grounds and because the Underlying Plaintiffs allegations against the Red Roof Entities do not allege an accident, LMFIC asks the Court to grant LMFIC's motion for partial judgment on the pleadings.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

Date:  October 24, 2023         /s/ *Erika C. Birg*
Erika C. Birg
Georgia Bar No.:  058140
Erika.Birg@nelsonmullins.com
201 17th Street NW, Suite 1700
Atlanta, Georgia  30363
Tel:  (404) 332-6110

*Attorney for Plaintiff,*
*Liberty Mutual Fire Insurance Company*

15

*Of Counsel:*

Nancy D. Adams *(admitted pro hac vice)*
NDAdams@mintz.com
Alec J. Zadek *(admitted pro hac vice)*
AZadek@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000

Ellen M. Farrell *(admitted pro hac vice)*
EMFarrell@mintz.com
MINTZ LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
555 12th Street NW, Suite 1100
Washington, D.C. 20004
Tel: (202) 434-7300

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief has been prepared with one of the font

and point selections approved by the Court in LR 5.1(B), Times New Roman 14 pt.

type.

October 24, 2023                                    /s/ *Erika C. Birg*
                                                          Erika C. Birg, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record in the CM/ECF system.

October 24, 2023                              /s/ *Erika C. Birg*
                                             Erika C. Birg, Esq.