# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSUR-ANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:23-cv-02047-LMM |
| RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, FMW RRI NC, LLC, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., T.H., H.B., and K.M. | ) ) ) ) ) | |
| Nominal Defendants. | ) | |

---

## DEFENDANTS RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, AND FMW RRI NC, LLC'S
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Shattuck Ely
Jonathan Spratling
FELLOWS LaBRIOLA LLP
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303

*Attorneys for Defendants Red Roof Inns, Inc.,*
*Red Roof Franchising, LLC, RRI West*
*Management, LLC, and FMW RRI, LLC*
*(collectively, "Red Roof")*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... iii

I.      INTRODUCTION ..................................................................1

II.     STATEMENT OF FACTS ........................................................2

    A.      The Underlying Lawsuits. ...................................................2

    B.      The Liberty Policies. ............................................................4

III.    ARGUMENT AND CITATION TO AUTHORITY ............................7

    A.      Standard of review for motion for summary judgment............7

    B.      Georgia law governs this insurance dispute............................7

    C.      Red Roof is entitled to summary judgment on the five dismissed
        Underlying Lawsuits because any claim for declaratory relief is now
        moot.................................................................................8

    D.      Red Roof is entitled to summary judgment on the two pending
        Underlying Lawsuits because Liberty owes a duty to defend................10

        1.      For the two pending Underlying Lawsuits, the duty to indemnify is
            not yet ripe and the Court's determination is thus limited to Liberty's
            duty to defend. ................................................................10

        2.      Georgia public policy does not bar coverage for the claims asserted in
            the two remaining Underlying Lawsuits...........................................12

        3.      The claims asserted in the two remaining Underlying Lawsuits are
            covered under the terms of the Liberty policies. ...............................17

            a.      The Underlying Plaintiffs have alleged bodily injury under
                Coverage A that occurred during the Liberty policy periods..........17

            b.      The Underlying Plaintiffs have alleged bodily injury caused by an
                occurrence under Coverage A. .......................................................18

            c.      The Expected and Intended Injury exclusion applicable to Coverage
                A does not apply..............................................................19

d.    The Underlying Lawsuits allege personal and advertising injuries under Coverage B. ........................................................................20

e.    The personal and advertising injuries alleged arose out of Red Roof's business. ..............................................................................21

f.    No exclusions to Coverage B apply. .................................................22

**IV.    CONCLUSION ...........................................................................................24**

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
   300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937)...................................9

*Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   304 Ga. App. 314 (2010) ...................................................................22

*Barrs v. Auto-Owners Insurance Company*,
   564 F. Supp. 3d 1362 (M.D. Ga. 2021) ..............................................19

*Bituminous Cas. Corp. v. N. Ins. Co. of New York*,
   249 Ga.App. 532, 548 S.E.2d 495 (2001)............................................12

*Boardman Petroleum v. Federated Mut. Ins.*,
   135 F.3d 750 (11th Cir. 1998) ...............................................................7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................7

*Christian Coal. of Ala. v. Cole*,
   355 F.3d 1288 (11th Cir. 2004) .............................................................9

*Cincinnati Ins. Co. v. Magnolia Ests., Inc.*,
   286 Ga. App. 183, 648 S.E.2d 498 (2007)...........................................16

*Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC,*
   2023 WL 6319224 (11th Cir. Sept. 28, 2023) .......................................8

*Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC,*
   631 F. Supp. 3d 1256 (N.D. Ga. 2022)............................................8, 22

*Cont'l Cas. Co. v. Winder Lab'ys, LLC*,
   73 F.4th 934 (11th Cir. 2023) ..............................................................11

*Continental Cas. Co. v. Synalloy Corp.*,
   667 F. Supp. 1523 (S.D. Ga. 1983).......................................................11

*Coon v. Medical Ctr., Inc.*,
   300 Ga. 722 (2017) .............................................................................7, 8

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ..............................................................14

*Doe S.W. v. Lorain-Elyria Motel, Inc.*,
   2020 WL 1244192 (S.D. Ohio Mar. 16, 2020).....................................14

*Fireman's Fund Ins. Co. v. University of Ga. Athletic Ass'n*,
288 Ga. App. 355 (2007) ...................................................................11

*Great Am. All. Ins. Co. v. Anderson*,
847 F.3d 1327 (11th Cir. 2017) .........................................................20

*Greenwood Cemetery, Inc. v. Travelers Indem. Co.*,
238 Ga. 313, 232 S.E.2d 910 (1977) .................................................13

*HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*,
701 F.3d 662 (11th Cir. 2012) ...........................................................12

*Hoover v. Maxum Indem. Co.*,
291 Ga. 402 (2012) ...........................................................................11

*JNJ Foundation Specialists, Inc. v. D.R. Horton, Inc.*,
311 Ga. App. 269 (2011) ...................................................................21

*K.M. v. CPA Hotels of Atlanta, LLC*,
2023 WL 5747490 (N.D. Ga. Aug. 30, 2023) .....................................3

*Key v. Georgia Dep't of Admin. Servs.*,
798 S.E.2d 37 (Ga. App. 2017)..........................................................13

*Kinsale Ins. Co. v. Venetian Hills Apartments, LLC*,
2022 WL 18777473 (N.D. Ga. Apr. 29, 2022) ...................................11

*Landmark Am. Ins. Co. v. Khan*,
307 Ga. App. 609, 705 S.E.2d 707 (2011)..........................................11

*Liberty Corp. Cap. Ltd. v. First Metro. Baptist Church*,
2021 WL 4166332 (S.D. Ga. Sept. 13, 2021).....................................19

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
425 F. Supp. 3d 959 (S.D. Ohio 2019) ..............................................14

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270 (1941)............................................................................9

*Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC.*
2022 WL 1135013 (N.D. Ga. Apr. 18, 2022)................................16, 17

*Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*,
766 F. App'x 768 (11th Cir. 2019) .....................................................10

*Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments*,
861 F. App'x 270 (11th Cir. 2021) ...................................................7, 8

*Nationwide Prop. & Cas. Ins. v. Renaissance Bliss, LLC*,
823 F. App'x 815 (11th Cir. 2020)........................................................8

iv

*Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*,
    268 Ga. 564 (1997) ........................................................................................11, 12

*Presidential Hotel v. Canal Ins.,*
    188 Ga. App. 609, 373 S.E.2d 671 (1988)..........................................................18

*Ricchio v. Bijal, Inc.,*
    424 F. Supp. 3d 182 (D. Mass. 2019) ....................................................14, 21, 22

*Roe v. State Farm Fire & Cas Co.*,
    373 S.E.2d 23 (Ga. App. 1988)...........................................................................16

*S. Guar. Ins. Co. of Georgia v. Saxon,*
    190 Ga. App. 652, 379 S.E.2d 577 (1989)..........................................................15

*Texas v. United States*,
    523 U.S. 296 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) ........................................9

*Travelers Indem. Co. v. Hood*,
    110 Ga. App. 855, 140 S.E.2d 68 (1964)......................................................13, 15

*Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*,
    609 F. App'x 972 (11th Cir. 2015)........................................................................9

*Union Camp Corp. v. Cont'l Cas. Co.*,
    452 F. Supp. 565 (S.D. Ga. 1978).......................................................................13

**Statutes**

28 U.S.C. § 2201 .........................................................................................................8

Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ........3, 14

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................7

**Treatises**

7 COUCH ON INSURANCE, § 101:25 ........................................................................16

RESTATEMENT OF THE LAW OF LIABILITY INSURANCE, § 45 (2019) ......................15

# I.    <u>INTRODUCTION</u>

This insurance coverage dispute involves seven underlying lawsuits ("Underlying Lawsuits") filed against Red Roof by seventeen individuals ("Underlying Plaintiffs") who allege they were trafficked for sex at various hotels in the Atlanta area, including several Red Roof properties. *See* Doc. 1, ¶ 2.

From 2011 to 2019, Liberty Mutual Fire Insurance Company ("Liberty") was Red Roof's primary commercial general liability insurer. *See* Doc. 1, ¶ 95. After defending the Underlying Lawsuits for several years, Liberty filed this declaratory judgment action asking to be relieved of its coverage obligations. Since this action was filed, four of the Underlying Lawsuits have settled and one has been dismissed on the merits. Because there is no pending request for coverage for those five suits, there is no longer a need or basis for declaratory relief, and Liberty's Complaint is thus moot as to those lawsuits. Red Roof is therefore entitled to summary judgment on the Liberty's claims for declaratory relief related to the five settled or dismissed lawsuits.

As for the remaining two Underlying Lawsuits, the only ripe determination for this Court is Liberty's duty to defend. Because the public policy and other coverage defenses raised by Liberty are misplaced, the Court should enter summary judgment that Liberty must continue to defend those lawsuits.

## II.    <u>STATEMENT OF FACTS</u>

### A.    **The Underlying Lawsuits.**

Liberty's Complaint for Declaratory Judgment relates to seven Underlying Lawsuits which allege that the Underlying Plaintiffs were trafficked for commercial sex in various hotels, including several Red Roof Inns:

- *Jane Doe #1 v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03840;

- *Jane Doe #2 v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03841;

- *Jane Doe #3 v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03843;

- *Jane Doe #4 v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03845;

- *W.K., et al. v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:20-cv-05263;

- *H.B. v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:22-cv-01181; and

- *K.M. v. CPA Hotels of Atlanta, LLC et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:23-cv-00190.

The first four of the Underlying Lawsuits (*Jane Does 1-4*) were later consolidated into a single action in the United States District Court for the Northern District of Georgia, Case No. 1:21-cv-04278-WMR.[1] The *Jane Does 1-4* Lawsuits were recently settled, and the parties have jointly moved to dismiss that action with

---

[1] *See Jane Does #1-4 v. Red Roof Inns, Inc., et al.*, 1:21-cv-04278-WMR, Dkt. 1 (N.D. Ga. Oct. 12, 2021).

prejudice. Declaration of Nicholas Kolitsos, ¶ 14. The *K.M.* suit has also been dismissed, after the District Court granted Red Roof's motion to dismiss on substantive grounds. *See K.M. v. CPA Hotels of Atlanta, LLC*, 2023 WL 5747490 (N.D. Ga. Aug. 30, 2023). As a result, only two of the Underlying Lawsuits (*W.K.* and *H.B.*) are pending.

The *W.K.* suit involves eleven Underlying Plaintiffs that allege they were trafficked at the Smyrna and/or Atlanta Red Roofs between 2011 and 2018. Dkt. 1-5, ¶ 11. The *H.B.* suit, on the other hand, involves a single Underlying Plaintiff who alleges that she was trafficked at the Norcross Red Roof in January 2012. Dkt. 1-6, ¶ 1. The hotels involved in the pending Underlying Lawsuits include both corporate-owned hotels (the Atlanta and Norcross Red Roofs) and a franchise location (the Smyrna Red Roof after December 2012). Dkt. 1-5, ¶¶ 36-38; Dkt. 1-6, ¶ 3.

Both pending Underlying Lawsuits assert claims for beneficiary liability under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA"), alleging that Red Roof benefitted from participation in a venture that it knew or should have known involved sex trafficking. Dkt. 1-5, ¶ 447; Dkt. 1-6, ¶ 60. The Underlying Plaintiffs in the *W.K.* suit also contend that Defendants were negligent by failing to take appropriate steps to ensure their safety and protection while at the Red Roof properties. Dkt. 1-5, ¶ 490. And both the *W.K.* and *H.B.* suits include claims of violations of the Georgia Racketeer Influenced and Corrupt Organizations

Act ("RICO"). Dkt. 1-5 at ¶ 428; Dkt. 1-6 at ¶ 96. Red Roof has denied that it was negligent or violated either the TVPRA or RICO. *See W.K. v. Red Roof Inns, Inc., et al.*, 1:20-cv-05263-VMC, Dkts. 59-63 (N.D. Ga. Apr. 15, 2021); *H.B.. v. Red Roof Inns, Inc., et al.*, 1:22-cv-01181-JPB, Dkts. 56-57 (N.D. Ga. Mar. 20, 2023).

## B. The Liberty Policies.

Liberty issued eight primary commercial general liability policies to Red Roof between 2011 and 2019 ("Liberty policies"). *See* Kolitsos Decl., Exs. A-H. With a few minor exceptions, the eight Liberty policies provided identical coverage, including Coverage A (bodily injury and property damage) and Coverage B (personal and advertising injury). *Id.*

The insuring agreement for Coverage A under the Liberty policies provides as follows:

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result….

b. This insurance applies to "bodily injury" or "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence"….

(2) The "bodily injury" or "property damage" occurs during the policy period.

*See* Kolitsos Decl., Ex. A at 18, Ex. B at 19, Ex. C at 23, Ex. D at 23, Ex. E at 24, Ex. F at 23, Ex. G at 21, and Ex. H at 24. The Liberty policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Kolitsos Decl., Ex. A at 31, Ex. B at 32, Ex. C at 36, Ex. D at 36, Ex. E at 38, Ex. F at 37, Ex. G at 35, and Ex. H at 37.

Coverage A of the Liberty policies contains an Expected or Intended Injury Exclusion, which bars coverage for:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

*See* Kolitsos Decl., Ex. A at 19, Ex. B at 20, Ex. C at 24, Ex. D at 24, Ex. E at 25, Ex. F at 24, Ex. G at 22, and Ex. H at 25.

The insuring agreement for Coverage B under the Liberty policies provides as follows:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result….

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed … during the policy period.

*See* Kolitsos Decl., Ex. A at 23, Ex. B at 24, Ex. C at 28, Ex. D at 28, Ex. E at 29, Ex. F at 28, Ex. G at 26, and Ex. H at 29. The Liberty policies define "personal and advertising injury" to mean injury, including consequential "bodily injury," arising out of various offenses, including "[f]alse arrest, detention or imprisonment…." *See* Kolitsos Decl., Ex. A at 31, Ex. B at 32, Ex. C at 36, Ex. D at 36, Ex. E at 38, Ex. F at 37, Ex. G at 35, and Ex. H at 37.

Exclusions to Coverage B include a Knowing Violation of Rights of Another Exclusion, which bars coverage for:

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

*See* Kolitsos Decl., Ex. A at 23, Ex. B at 24, Ex. C at 28, Ex. D at 28, Ex. E at 29, Ex. F at 28, Ex. G at 26, and Ex. H at 29. In addition, Coverage B includes a Criminal Acts Exclusion, which bars coverage for:

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

*Id.*

### III.   ARGUMENT AND CITATION TO AUTHORITY

**A.   Standard of review for motion for summary judgment.**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.   Georgia law governs this insurance dispute.**

As previously briefed by the parties, Georgia's choice-of-law rules control the Court's choice-of-law analysis. *See* Dkt. 45-1, at p. 15; Dkt. 46, at p. 4; and Dkt. 52-1; *Boardman Petroleum v. Federated Mut. Ins.,* 135 F.3d 750, 753 (11th Cir. 1998). Under Georgia's choice-of-law rules, Georgia law applies to this dispute. Although the Liberty policies were delivered to Red Roof in Ohio, Georgia's "presumption of identity" rule provides that Georgia law will apply.

Georgia generally follows the doctrine of *lex loci contractus* (requiring the application of the law of the state in which the contract was made), but under the presumption of identity rule, the foreign state's law will be applied only when it "comes from a statute or judicial decisions interpreting that statute." *Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments*, 861 F. App'x 270, 277 (11th Cir. 2021) (citing *Coon v. Medical Ctr., Inc.*, 300 Ga. 722, 729 (2017)). Thus, if "the law to be

applied to a contract dispute by a Georgia court or a federal court in Georgia is judicially-created, then 'the common law as expounded by the courts of Georgia' must govern." *Id.*, at 276.

Because no applicable Ohio statute applies here, Georgia common law thus applies. *See, e.g., Mt. Hawley,* 861 F. App'x at 277; *Nationwide Prop. & Cas. Ins. v. Renaissance Bliss, LLC*, 823 F. App'x 815, 823 (11th Cir. 2020); *Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*, 631 F. Supp. 3d 1256, 1278 (N.D. Ga. 2022), *aff'd*, 2023 WL 6319224 (11th Cir. Sept. 28, 2023).

## C. Red Roof is entitled to summary judgment on the five dismissed Underlying Lawsuits because any claim for declaratory relief is now moot.

For the five Underlying Lawsuits which have been dismissed or settled, Liberty's request for declaratory relief has been rendered moot. Those actions have either been resolved through a voluntary settlement or dismissed on the merits and there is no pending request for insurance coverage from Liberty for those suits. As such, Liberty is not in a position of uncertainty and a declaration here would provide no purpose. The Court should thus grant summary judgment to Red Roof on the five declaratory judgment counts in Liberty's Complaint (Counts I through IV and VII) that relate to the dismissed or settled suits.

The Declaratory Judgment Act grants to the federal district courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

An essential element for every declaratory judgment action is the existence of an "actual controversy" between the parties. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937). An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's resolution of the matter would be purely academic. *See Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). A federal court lacks jurisdiction to determine such a case because to do so would result in an impermissible advisory opinion. *Christian Coal. of Ala. v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004).

Because the *Jane Does 1-4* suits have been settled and the *K.M.* suit has been dismissed, Liberty's declaratory judgment claims related to those suits have become moot. There is no declaration that this Court could provide that would have any bearing on the parties' future conduct. *See Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 979 (11th Cir. 2015) (concluding that declaratory judgment claim became moot upon plaintiff insurer's payment of settlement funds because "[a] declaration could not have had any bearing on the parties' future

conduct…."). Red Roof is thus entitled to summary judgment on Counts I through IV and VII of Liberty's Complaint.

**D.  Red Roof is entitled to summary judgment on the two pending Underlying Lawsuits because Liberty owes a duty to defend.**

As for the two Underlying Lawsuits that remain pending, Red Roof is also entitled to summary judgment. The only ripe dispute for these two suits is Liberty's duty to defend and the allegations of the Underlying Lawsuits fall squarely within the coverage granted by the Liberty policies. While Liberty's Complaint for Declaratory Judgment cites a laundry list of coverage defenses to avoid its duty to defend, as discussed below, none of these defenses are well-founded and none bar coverage for the Underlying Lawsuits.

    1.   <u>For the two pending Underlying Lawsuits, the duty to indemnify is not yet ripe and the Court's determination is thus limited to Liberty's duty to defend.</u>

Because Red Roof's liability in the two pending Underlying Lawsuits has not been established, Liberty's duty to indemnify is not yet ripe. *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770–71 (11th Cir. 2019) (unpublished) ("an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established."). "Unless and until a judgment or settlement is entered against Defendant, this Court has no jurisdiction over Plaintiff's declaratory judgment claim on duty to indemnify." *Kinsale Ins. Co. v. Venetian Hills Apartments, LLC*, 2022 WL 18777473, at *4 (N.D. Ga. Apr. 29,

2022). As a result, the only ripe dispute over the two pending Underlying Lawsuits is Liberty's duty to defend.

"The duty to defend is extremely broad under Georgia law." *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 948 (11th Cir. 2023). "If the facts as alleged in the complaint even *arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Landmark Am. Ins. Co. v. Khan*, 307 Ga. App. 609, 612, 705 S.E.2d 707, 710 (2011) (citations omitted) (emphasis in the original).

The duty to defend is determined by comparing the language of the policy to the allegations of the complaint. *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407–08 (2012); *see also Continental Cas. Co. v. Synalloy Corp.*, 667 F. Supp. 1523, 1541 (S.D. Ga. 1983) (insurer must provide a defense "as long as there is a *possibility* of coverage, liberally construing the allegations" of the complaint) (emphasis added). "Thus, an insurer is obligated to defend even where the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage." *Fireman's Fund Ins. Co. v. University of Ga. Athletic Ass'n*, 288 Ga. App. 355, 356 (2007) (citing *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997)). Where the claim asserted is one that might be covered under the policy, "doubt as to liability and insurer's duty to defend should be resolved in favor of the insured." *Id.* (citation omitted).

Because the existence of a duty to defend is determined based on the allegations in the complaint, "the issue is not whether the insured is *actually liable* to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend." *Bituminous Cas. Corp. v. N. Ins. Co. of New Yor*k, 249 Ga.App. 532, 548 S.E.2d 495, 497 (2001) (quoting *Penn–Am. Ins.,* 481 S.E.2d at 852) (emphasis in original).

Finally, "where an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted." *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012) (applying Georgia law). Thus, Liberty is required to defend the Underlying Lawsuits if *any* of the claims asserted in the Underlying Lawsuits might be covered.

2. <u>Georgia public policy does not bar coverage for the claims asserted in the two remaining Underlying Lawsuits.</u>

Liberty's main argument to avoid coverage is based not on the terms of the insurance policies it sold to Red Roof but on public policy. Liberty asks the Court to strip Red Roof of its insurance coverage based on a purported public policy that has never been identified by Georgia's legislature or courts. In fact, Liberty's argument contravenes decades of Georgia insurance law and should be rejected.

To begin, Georgia law strongly supports parties' freedom of contract and courts "must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt." *Key v. Georgia Dep't of*

*Admin. Servs.*, 798 S.E.2d 37, 41–42 (Ga. App. 2017). Georgia courts have been particularly resistant to insurers' efforts to avoid coverage under an insurance policy based on public policy and such efforts have been routinely rejected. For instance, unlike many states, it is not against public policy to insure for punitive damages in Georgia. *Greenwood Cemetery, Inc. v. Travelers Indem. Co.*, 238 Ga. 313, 316, 232 S.E.2d 910, 913 (1977). Nor is it against public policy in Georgia to insure against damages for willful and wanton misconduct. *Travelers Indem. Co. v. Hood*, 110 Ga. App. 855, 140 S.E.2d 68 (1964). Likewise, it is not against public policy in Georgia to insure for claims of racial discrimination. *Union Camp Corp. v. Cont'l Cas. Co.*, 452 F. Supp. 565, 568 (S.D. Ga. 1978).

Indeed, the only public policy identified by Georgia courts as a potential bar to insurance coverage is for "injuries intentionally inflicted." *Hood*, 140 S.E.2d at 70 (noting, however, that the unforeseen results of intentional *acts*—unlike intentional *injury*—are still insurable). But the public policy identified in *Hood* is plainly inapplicable here: while Red Roof need only establish that a single cause of action asserted in each Underlying Lawsuit could be covered, *none* of the claims asserted in the Underlying Actions require an intent to injure. Each of the claims asserted in the Underlying Lawsuits thus gives rise to a duty to defend.

The simplest of the claims asserted in the remaining Underlying Lawsuits are the negligence claims, which are not predicated on any allegations that Red Roof

was aware of the trafficking of the Underlying Plaintiffs. Instead, the negligence allegations are typical of garden-variety premises liability cases: failing to use ordinary care to keep the premises safe; failing to properly inspect and maintain the premises; failing to inspect, patrol, or appropriately monitor the property; etc. Dkt. 1-5, ¶ 660.

Similar to the negligence claims are the civil beneficiary claims under the TVPRA, which contain no scienter element. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021) (holding that knowledge of acts of force, fraud, coercion is not required under 18 U.S.C. § 1595). Instead, the Underlying Plaintiffs need only allege, as they have, that Red Roof "should have known" or had constructive knowledge of force, fraud, coercion being used to cause underlying plaintiffs' involvement in commercial sex acts. *See* Dkt. 1-5, ¶ 467, Dkt. 1-6, ¶ 64. Because the Underlying Plaintiffs need not establish that Red Roof acted intentionally (much less intended to injure), these claims also give rise to a duty to defend. *Ricchio v. Bijal, Inc.,* 424 F. Supp. 3d 182, 194 (D. Mass. 2019) (insurer required to defend civil TVPRA claims against insured hotel operator because the statute invokes a negligence standard); *see also M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019) (Section 1595(a) "invokes a negligence standard, not knowledge through willful blindness."); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) ("[T]he plain text of § 1595(a) makes

clear that the standard under this section is a negligence standard of constructive knowledge").

Finally, even the RICO claims do not require an intent to injure. While some of the predicate acts alleged in the Underlying Lawsuits are crimes, others—such as civil liability under the TVPRA—are not. And even with respect to the alleged criminal predicate acts, there is no public policy which would bar coverage absent a specific intent to injure:

> There is no blanket, public-policy-based objection in insurance law to insuring a civil liability that arises out of a criminal act, even in jurisdictions with public-policy-based restrictions on the insurability of certain kinds of liabilities. In such jurisdictions, the insurability of civil liability arising out of a criminal act generally depends on whether the insured intended to injure the victim or whether punitive damages are assessed. To the extent that public-policy-based limits on insurance coverage are based on a concern about moral hazard, the fact that a wrong is also a crime should reduce that concern, because the presence of criminal penalties will increase whatever deterrence is provided by liability.

RESTATEMENT OF THE LAW OF LIABILITY INSURANCE, § 45 (2019).[2] Criminal predicate acts such as keeping a place of prostitution, even if proven, do not establish an intent to injure the Underlying Plaintiffs.

---

[2] The Restatement is in accord with Georgia law and Georgia courts have affirmed coverage for injuries caused by an insured's criminal acts so long as there was no specific intent to harm. *See S. Guar. Ins. Co. of Georgia v. Saxon,* 190 Ga. App. 652, 654, 379 S.E.2d 577, 579 (1989) (injuries caused during insured's attempted evasion of the police); *Hood*, 140 S.E.2d at 7 (injuries caused during insured's illegal racing).

While none of the claims asserted in the Underlying Lawsuits allege—much less require—an intent to injure, Liberty has argued that an intent to injure can be inferred for sexual abuse. This argument, however, ignores that Red Roof is not accused of sexually abusing the Underlying Plaintiffs but rather to have benefited from a venture in which the Underlying Plaintiffs were trafficked or negligently failed to prevent their trafficking at the Red Roof hotels. Judge Thrash dismissed this exact argument on similar grounds in *Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC*. 2022 WL 1135013, at *3 (N.D. Ga. Apr. 18, 2022) (distinguishing *Roe v. State Farm Fire & Cas Co.*, 373 S.E.2d 23 (Ga. App. 1988)). The distinction between an active abuser and a passive beneficiary or negligent enabler is self-evident and well recognized:

> The public policy against insurance for one's own intentional sexual misconduct does not bar liability coverage for others whose mere negligence contributed in some way to the acts of abuse. In these cases, there is, at least, no overriding policy reason why a person injured by sexual abuse should be denied compensation for the harm from insurance coverage purchased by the negligent facilitator.

7 COUCH ON INSURANCE, § 101:25; *see also Cincinnati Ins. Co. v. Magnolia Ests., Inc.*, 286 Ga. App. 183, 185, 648 S.E.2d 498, 500 (2007) (insurer owed coverage to personal care home for alleged failure to prevent repeated attacks on plaintiff by a fellow resident).

In short, there is nothing unique about claims against the hospitality industry involving sex trafficking and insurers have been required to defend such suits in this

District. *See, e.g., Khamlai Lodging*, 2022 WL 1135013, at *3 (denying insurer's motion for judgment on the pleadings and requiring insurer to defend hotel even where the insurance policy contains an abuse and molestation exclusion). There is no Georgia public policy that prevents insurance coverage for the allegations asserted in the Underlying Lawsuits and there is no basis for the Court to create new public policy here.

3. <u>The claims asserted in the two remaining Underlying Lawsuits are covered under the terms of the Liberty policies.</u>

Liberty's arguments based on the specific terms of its policies fare no better. For many of the same reasons that its public policy argument fails, Liberty's policy-related defenses likewise fail. As discussed below, the claims asserted in the two pending Underlying Lawsuits are potentially covered under both Coverages A and B of the Liberty policies and none of the policy defenses Liberty raises in its Complaint for Declaratory Judgment allow it to avoid its duty to defend.

a. *The Underlying Plaintiffs have alleged bodily injury under Coverage A that occurred during the Liberty policy periods.*

The first policy-related defense raised by Liberty is that it owes no coverage for bodily injury that did not occur during its policy periods. Dkt. 1, ¶ 175. Because each of the Underlying Lawsuits alleges bodily injury that occurred during Liberty's policy periods, this argument fails. *See* Dkt. 1-6, ¶ 17 (alleging that H.B. was trafficked in January 2012); Dkt. 1-5, ¶¶ 149, 158, 171, 180, 183, 187, and 193 (alleging

that the eleven Underlying Plaintiffs in the *W.K.* suit were trafficked at various times between 2011 and 2018).

And to the extent that Liberty challenges whether the Underlying Plaintiffs have alleged "bodily injury" in the first instance, this contention is also baseless. The Underlying Plaintiffs expressly claim physical injuries from their alleged trafficking. Dkt. 1-5, ¶ 431; Dkt. 1-6, ¶ 51. Such allegations qualify as bodily injury under the Liberty policies. *Presidential Hotel v. Canal Ins.,* 188 Ga. App. 609, 611, 373 S.E.2d 671, 672 (1988) ("Used in an insurance policy, the term 'bodily injury' means just that—'bodily injury.' It pertains to physical injury to the body.").

> b.     *The Underlying Plaintiffs have alleged bodily injury caused by an occurrence under Coverage A.*

Liberty next challenges whether the Underlying Plaintiffs have alleged bodily injury caused by an "occurrence." Dkt. 1, ¶¶ 176, 178. For the same reason that Liberty's public policy argument fails, its contention that there has been no occurrence likewise fails.

The Liberty policies define occurrence to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the term accident is not defined, Georgia courts construe the word broadly:

> [I]njuries "caused by accident" as used in an insurance contract [] include injuries caused without the actor's intent or design to injure and would not include injuries intentionally inflicted. "Accident" is a more comprehensive term than negligence, although negligence is included in it.

*Hood*, 110 Ga. App. at 857.

Whether an event constitutes an accident is determined from the viewpoint of Red Roof. *See Barrs v. Auto-Owners Insurance Company*, 564 F. Supp. 3d 1362, 1377 (M.D. Ga. 2021) ("It cannot possibly be said that from the standpoint of [the insured], it could have foreseen or expected its agent to steal building materials from the job site. Obviously, [the insured] did not hire Hood with the intent that he commit a crime. Therefore, from [the insured]'s perspective, the theft, albeit an intentional act, was an accident.").

As discussed above, Red Roof is not alleged to have "design[ed] to injure" the Underlying Plaintiffs and such a finding is not a required element of any claim. As a result, the Underlying Lawsuits allege an occurrence. *See Liberty Corp. Cap. Ltd. v. First Metro. Baptist Church*, 2021 WL 4166332, at *5–6 (S.D. Ga. Sept. 13, 2021) (holding that because the church had no knowledge that its pastor would sexually assault a member of its parish, it could not be said that the church "intended or expected" the sexual assault to occur, meaning it was an "accident" from the perspective of the church for purposes of insurance coverage).

      c.    *The Expected and Intended Injury exclusion applicable to Coverage A does not apply.*

Similarly, the expected and intended injury exclusion applicable to Coverage A does not apply. Like the public policy and occurrence defenses raised by Liberty,

this exclusion applies only if Red Roof subjectively intended to cause bodily injury to the Underlying Plaintiffs. Red Roof is not alleged to have intentionally injured the plaintiffs and such a finding is not an element of any of the claims asserted.

The standard expected or intended exclusion included in the Liberty policies provides that the insurance does not apply to:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

By its terms, the analysis of the expected or intended exclusion is similar to the existence of an occurrence. But because it is an exclusion, the rules of construction apply even more stringently against Liberty. *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1332 (11th Cir. 2017) ("exclusions from coverage sought to be invoked must be strictly construed…."). As addressed above, the Underlying Lawsuits do not allege or require that Red Roof expected or intended injury to the Underlying Plaintiffs. As a result, the exclusion does not apply.

### d. *The Underlying Lawsuits allege personal and advertising injuries under Coverage B.*

Along with the coverage for bodily injury provided by Coverage A of the Liberty policies, Coverage B covers Red Roof's liability for "personal and advertising injury." Because the claims asserted in the Underlying Lawsuits arise in part from the Underlying Plaintiffs' alleged false imprisonment, Liberty's contention that

no personal and advertising injury is alleged is incorrect. As a result, Liberty also owes a duty to defend under Coverage B.

The Liberty policies define "personal and advertising injury" as an injury "arising out of," among other things, "false arrest, detention or imprisonment[.]" Because the Underlying Plaintiffs' alleged injuries arise in part out of their alleged false imprisonment, Coverage B is triggered. *See* Dkt. 1-5, ¶ 390 (alleging that the Underlying Plaintiffs were "confined and detained against their will…."); Dkt. 1-6, ¶ 25 (contending that "Plaintiff was rescued from the hotel…."); *see also Ricchio*, 424 F. Supp.3d at 190 (plaintiff's TVPRA claims arose out of her false imprisonment and thus triggered Coverage B: "it is unclear how the trafficking could have occurred if she had not been imprisoned."). As a result, the allegations in the Underlying Lawsuits sufficiently allege a personal and advertising injury.

> e.     *The personal and advertising injuries alleged arose out of Red Roof's business.*

Liberty next claims that the personal and advertising injuries alleged by the Underlying Plaintiffs were not caused by an offense "arising out of" Red Roof's business, as required by the Liberty policies. Once again, this argument lacks merit.

Under Georgia law, "arising out of" means "had its origins in, grew out of, or flowed from." *JNJ Foundation Specialists, Inc. v. D.R. Horton, Inc.*, 311 Ga. App. 269, 270 (2011) (citation and punctuation omitted). Where "arising out of" is used in a policy's coverage provision, "Georgia courts have construed that phrase

broadly, holding that where [an insurance] contract provides that a loss must 'arise out of' a specified act, it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship." *Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 304 Ga. App. 314, 321 (2010).

This broad causal connection requirement means that the alleged offense need not be an authorized or sanctioned part of the insured's business to satisfy the policy's condition. So long as the offense took place at a Red Roof hotel in connection with a transaction in which lodging was provided, the condition is met. *See Banyan Tree Mgmt.*, 631 F. Supp.3d at 1278 (claims alleging that an employee's unauthorized video recording of plaintiff in the nude "arose out of" the insured hotel's business); *Ricchio*, 424 F. Supp.3d at 192 (sex trafficking claims "arose out of" the insured hotel's business even though the hotel was not in the business of human trafficking).

### f.    *No exclusions to Coverage B apply.*

Finally, Liberty contends that two exclusions to Coverage B apply, thus barring coverage for the personal and advertising injuries claimed in the Underlying Lawsuits. As discussed below, neither exclusion applies.

The first exclusion cited by Liberty is the Knowing Violation of the Rights of Another exclusion which bars coverage for injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and

would inflict 'personal and advertising injury.'" *See* Kolitsos Decl., Ex. A at 23, Ex. B at 24, Ex. C at 28, Ex. D at 28, Ex. E at 29, Ex. F at 28, Ex. G at 26, and Ex. H at 29. As established above, Red Roof is not alleged to have knowingly violated the rights of the Underlying Plaintiffs. Nor is Red Roof alleged to have taken actions that would knowingly inflict injury on the Underlying Plaintiffs. The exclusion thus does not apply.

The next exclusion cited by Liberty is the Criminal Acts exclusion which bars coverage for personal and advertising injury "arising out of a criminal act ***committed by or at the direction of the insured***." *Id.* (emphasis added). While the Underlying Plaintiffs' traffickers may have acted criminally, the Underlying Lawsuits do not require a finding that Red Roof acted criminally. Along with the negligence claim, the TVPRA beneficiary claims brought against Red Roof allege violations of the civil statute, not criminal. As a result, it is possible that Red Roof could be found liable in the Underlying Lawsuits without any finding of criminal conduct. The criminal acts exclusion thus does not affect Liberty's duty to defend the Underlying Lawsuits.

In short, none of the policy-related defenses raised by Liberty eliminate its duty to defend the Underlying Lawsuits.[3] Red Roof is thus entitled to summary

---

[3] Liberty's Complaint for Declaratory Judgment also seeks a declaration that the Errors and Omissions coverage provided in the 2017 and 2018 Liberty policies does not apply to the Underlying Lawsuits. Red Roof disagrees and contends that the

judgment on the two pending Underlying Lawsuits, with Liberty required to continue to defend those actions.

## IV. CONCLUSION

Red Roof is entitled to summary judgment on all of Liberty's claims for declaratory relief. The five dismissed or settled Underlying Lawsuits no longer present a case or controversy, rendering Liberty's request for declaratory relief as to those lawsuits moot. And for the two remaining Underlying Lawsuits, Liberty is required to defend under Georgia law.

Respectfully submitted, this 10th day of January, 2024.

FELLOWS LABRIOLA LLP

*/s/ Shattuck Ely*
Shattuck Ely
Georgia Bar No. 246944
tely@fellab.com
Jonathan Spratling
Georgia Bar No. 358001
jspratling@fellab.com

Peachtree Center
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200

*Attorneys for Defendants Red Roof Inns,*
*Inc., Red Roof Franchising, LLC, RRI West*
*Management, LLC, and FMW RRI, LLC*

---

Errors and Omissions coverage provides yet another independent basis for Liberty's duty to defend. But in light of the clear coverage under Coverages A and B of the Liberty policies, it is not necessary for the Court to address this additional coverage.

## CERTIFICATE OF FONT AND POINT SELECTION

Undersigned counsel hereby certifies, under LR 7.1(D), NDGa, that the fore-going was prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved in LR 5.1, NDGa.

/s/ Shattuck Ely
Shattuck Ely

## CERTIFICATE OF SERVICE

I certify that this day, I electronically filed the foregoing using the Court's CM/ECF system, which will send email notification to all counsel of record.

Respectfully submitted, this 10th day of January, 2024.

*/s/ Shattuck Ely*
Shattuck Ely