# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:23-cv-02047-LMM |
| RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, FMW RRI NC, LLC, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., T.H., H.B., and K.M. | ) ) ) ) ) | |
| Nominal Defendants. | ) | |

**DEFENDANTS RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, AND FMW RRI NC, LLC'S RESPONSE TO MOTION FOR LEAVE TO FILE <u>AN AMENDED COMPLAINT</u>**

Defendants, Red Roof Inns, Inc.; Red Roof Franchising, LLC; RRI West Management, LLC; and FMW RRI NC, LLC (collectively, "Defendants" or "Red Roof"), by their attorneys, respond to Liberty Mutual Fire Insurance Company's ("Liberty") Motion for Leave to File an Amended Complaint ("Motion"), showing the court as follows.

1

**INTRODUCTION**

Liberty has no cognizable claim for reimbursement regardless of whether the dismissed Underlying Lawsuits were covered, making its proposed amendment futile.

Liberty seeks to add claims for reimbursement of defense costs and settlement payments it incurred in the underlying lawsuits against Red Roof ("Underlying Lawsuits").[1] But its Motion to Amend ignores recent controlling case law that establishes that the proposed claims are futile.

The Eleventh Circuit has made clear that there is no claim for reimbursement of defense costs under Georgia law where the policy does not expressly provide such a right. Relatedly, recent decisions in this Court apply the same logic to hold there is no claim for reimbursement of settlement payments absent a policy provision that allows it. Finally, Georgia voluntary payment doctrine prevents reimbursement of settlement payments.

Liberty's policies are silent on reimbursement for defense costs or settlement payments and the absence of an express policy provision prevents any right to reimbursement. Further, its settlement payments were made voluntarily and not capable of being clawed back. The Motion to Amend should thus be denied as futile.

---

[1] *See* ECF Nos. 1-1 through 1-7. Copies of the operative complaints in the Underlying Lawsuits are attached to Liberty's Complaint for Declaratory Judgment. *See id*.

## BACKGROUND

Liberty's proposed Amended Complaint, Doc. 69-2, varies only slightly from the original Complaint. *See* Doc. 69-3 (redlined copy of Amended Complaint). Relevantly, Liberty added three counts for breach of contract: one count for the four settled Underlying lawsuits, seeking both reimbursement of defense costs and settlement payments; one count for the dismissed Underlying Lawsuit, seeking only reimbursement of defense costs; and one generic count against all Underlying Lawsuits together, seeking both reimbursement of defense costs and settlement payments. Doc. 69-2, ¶¶ 273-298. Liberty then adds three claims for unjust enrichment much like the breach of contract claims and is claiming the same damages. *Id.* at ¶¶ 299-317. Liberty kept all other claims from its original Complaint, including the claims for declaratory relief in the five settled or dismissed Underlying Lawsuits. *Id.* at ¶¶ 151-272.

There are no relevant changes to Liberty's factual allegations for the purpose of this Response other than the addition of those facts about the settlement or dismissal of five of the Underlying Lawsuits. There is no policy provision granting the right to seek reimbursement of defense costs or settlement payments with the Liberty policies. *See generally* ECF nos. 53-3; 53-4; 53-5; 53-5; 53-6; 53-7; 53-8; 53-9; 53-10; 53-11; 69-2.

# ARGUMENT AND CITATION TO LEGAL AUTHORITIES

## A. Standard on Motion for Leave to Amend Complaint

Federal Rule of Civil Procedure 15(a)(2) instructs courts to freely grant leave to amend when the party may not amend as a matter of course. Even so, leave should not be granted "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022)). A proposed amended complaint is futile if "the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). "The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." *Boyland v. Beauregard*, No. 1:20-CV-00972-ELR, 2020 WL 13891983, at *3 (N.D. Ga. Nov. 24, 2020) (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)).

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *U.S. v. Zak*, 550 F. Supp. 3d 1349, 1351 (N.D. Ga. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For the purposes of a motion to

dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Here, while Defendants do not agree with Liberty's assertions, Defendants do not contend there is no prejudice to themselves or undue delay in filing the motion. Instead, Defendants' argument below addresses the futility of Liberty's proposed amendment. Put simply, Liberty has no cognizable claims for reimbursement regardless of whether the dismissed Underlying Lawsuits were covered.

**B.      Georgia Law Applies.**

Liberty prefaces its lack of futility argument on the basis that Ohio law applies. The choice of law issue has been addressed in prior briefs before the Court on both Liberty's Motion for Judgment on the Pleadings and Defendants' Motion for Summary Judgment. Rather than restate those arguments here, Defendants refer to its prior briefing for why Georgia law applies to the parties' dispute. Docs. 45, 52-1, 53-1; *see also* Defs.' Reply in Support of Mot. for Summ. J. (filed contemporaneously).

**C.      No Right of Reimbursement Exists.**

    **1.      Reimbursement of Defense Costs.**

Liberty misses the mark entirely on whether Georgia law allows for reimbursement of defense costs. While Liberty contends that the issue is "unsettled", the

Eleventh Circuit issued a binding opinion just last year on this precise issue. In *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, the Eleventh Circuit held that Georgia law does not recognize a claim for reimbursement of defense costs absent an express policy provision allowing it. 73 F.4th 934, 939 (11th Cir. 2023). Because the Liberty policies contain no provision allowing a claim for reimbursement, *Winder* bars Liberty's proposed claims.

In *Winder,* the insured bought a primary general liability policy and umbrella policy from two insurers. *Id.* at 938. As here, neither policy contained a reimbursement provision. *Id.* The insured was sued for falsely or misleadingly advertising their product, which potentially implicated an exclusion under the policies. *Id.* The insurers issued a reservation of rights that included a request for reimbursement of defense costs, which the insured accepted in writing. *Id.* at 939. After three years of litigation in the underlying action, the insurers filed a declaratory judgment action and ultimately obtained a judgment declaring that there was no coverage for the underlying lawsuit, leaving only the question of reimbursement of defense costs. *Id.* at 939-40.

In evaluating the insurers' rights to reimbursement of defense costs, the Eleventh Circuit split the issue into two questions: (1) "did the insurers' reservation of rights letters create a new contract?"; and (2) if not, then "[w]ould the Supreme Court

of Georgia recognize a right to reimbursement absent a contractual right to such reimbursement?" *Id.* at 945-46. It decided both in the negative. *Id.* at 945.

As to whether a reservation of rights creates a new contract, the Eleventh Circuit held there was no consideration to create a right to reimbursement. The Court held "that because the parties' contracts already required the insurers to defend the insureds against certain third-party lawsuits, there is no new consideration for the reimbursement provision in the reservations of rights letters and thus no new contract under Georgia law." *Id.* at 946-47. Like Liberty here, the insurers also presented an unjust enrichment claim which was rejected outright because there was nothing unjust about making the insurers fulfill their contractual obligation in providing a defense. *Id.* (hinting there can also be no unjust enrichment claim due to the existence of a contract).

Turning to whether Georgia law would hold that there is a right to reimbursement absent express policy provisions, the Eleventh Circuit reiterated that under Georgia law an insurer's duty to defend is broad and that the current majority of states hold there is no right to reimbursement without an express policy provision. *Id.* at 948. The Eleventh Circuit concluded: "[w]e think it clear based on Georgia's substantive law as well as its general insurance framework that the Supreme Court of Georgia would not allow an insurer to recoup its expenses based on a reservation

of rights letter without any contractual provision allowing for reimbursement." *Id.* at 949-950.

*Winder* is binding here. Liberty requests reimbursement of defense costs based on its reservation of rights letters, not any policy provision. Liberty seeks to amend its Complaint to add claims for breach of contract and unjust enrichment, but the Eleventh Circuit has specifically stated there is no consideration for reservation of rights letters to create contractual benefits of reimbursement, and there is nothing unjust about requiring an insurer like Liberty to provide a defense it is already contractually obligated to provide. With no cognizable claim for reimbursement of defense costs, Liberty's motion should be denied.

### ii. Reimbursement of Settlement Payments.

While *Winder* expressly deals with reimbursement of defense costs, reimbursement of settlement payments absent an express policy provision is likewise not permitted. Even before *Winder*, this Court has held that an insurer has no right for reimbursement of a settlement payment absent an express policy provision. *Am. Fam. Ins. Co. v. Almassud*, 522 F. Supp. 3d 1263 (N.D. Ga. 2021). This holding is among the majority of states that have addressed the issue. *Id.* at 1270 (citing RESTATEMENT OF THE LAW OF LIABILITY INSURANCE, § 25, reporter's note to cmt. c (2019); U*.S. Fid. & Guar. Co. v. U.S. Sports Specialty Ass'n*, 270 P.3d 464, 468 (Utah 2012)).

For the same reasons later confirmed in *Winder*, Judge Story rejected the insurer's theories of reimbursement:

> The rationale is essentially the same as [for defense costs]: an insurer cannot unilaterally create a new right that does not exist in the policy. If the insurer wishes to retain the right to recoup, it could include that right in the policy, or, if that right was in doubt, it could enter into a separate, express agreement that granted it the right to recoup. *See Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*, 396 F. Supp. 3d 1287, 1298 (N.D. Ga. 2019) (insurer sought "reimbursement based on the separate written agreement into which the parties entered"), aff'd, 823 F. App'x 815 (11th Cir. 2020). A unilateral reservation of rights is insufficient.

*Id.* at 1270-71.[2]

As predicted in *Almassud,* the *Winder* decision's reasoning applies equally to settlement payments. A reservation of rights letter is not supported by any consideration that did not exist in the original insurance contract. *Winder*, 73 F.4th at 946-47 ("The underlying contract required the insurers to defend [or indemnify] the insureds against certain third-party lawsuits. The reservation of rights letters also provided

---

[2] The Georgia Court of Appeals has answered related questions to that which exits here, finding an estoppel. In *Facility Invs., LP v. Homeland Ins. Co. of New York*, 321 Ga. App. 103, 107-110 (2013), the Court held an insurer was estopped from seeking reimbursement of a settlement payment for both covered and uncovered claims because the reservation of rights did not expressly inform the insured that it would settle the underlying action and then sue for reimbursement of uncovered claims, failing to unambiguously reserve its rights. Further, when the insurer learned there were claims that were not covered and the insured refused to contribute to the settlement, the Georgia Court of Appeals held there were only two choices: (1) deny coverage; or (2) seek immediate declaratory relief. *Id.* The insurer waived its right to recover when it took a third route, settle all claims. *Id.*

for such defense [or indemnity]. That is, the letters were the quintessential "promise to perform a preexisting contractual obligation" that "does not constitute consideration for a new agreement."). Without new consideration, an insurer cannot grant itself the benefit of reimbursement unilaterally via a reservation of rights that is based on providing consideration already provided for in the initial insurance contract. *See id.; Almassud*, 522 F. Supp. 3d at 1270-71.

Rather, the parties would have to enter into a new, mutual agreement with consideration to create a binding contract that creates rights outside the original insurance contract. *Almassud*, 522 F. Supp. 3d at 1270-71; *see also Winder*, 73 F.4th at 947, n.18 (noting *Almassud* is one of the majority decisions in this district). But that is not what occurred in *Winder* or *Almassud,* and it did not occur here. Liberty's proposed claim for reimbursement of its settlement payments does not allege any new binding contract—or any agreement at all—between Liberty and Red Roof. Instead, Liberty alleges only its own unilateral reservation of rights.[3] For the same reasons stated in *Winder* and *Almassud*, Liberty cannot state a cognizable claim for reimbursement of settlement payments.

---

[3] *See* proposed First Amended Complaint of Liberty Mutual Fire Insurance Company, at ¶ 150 ("LMFIC paid the settlement amounts on December 14, 2023, while continuing to maintain its reservation of rights to seek recoupment of that payment.").

In addition to the rationale laid out in *Winder*, Georgia's voluntary payment doctrine (codified at O.C.G.A. § 13-1-13) precludes any claim for reimbursement of settlement payments. Georgia contract law prevents a party from seeking reimbursement for amounts paid through ignorance of law or where all facts are known and there is "no misplaced confidence and no artifice, deception, or fraudulent practice." O.C.G.A. § 13-1-13. The only exception to this rule is if the payment was made "under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property." *Id.*

The voluntary payment doctrine has been applied to payments made by insurance companies, including settlement payments. *Almassud*, 522 F. Supp. 3d at 1272-76; *see also Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 2017 WL 11497779, at *7 (N.D. Ga. Feb. 28, 2017) (holding insurer could not recover settlement amount for alleged misrepresentations made in the insurance application that were known at the time of payment sought to be clawed back).

Relevant here, payments made as part of settlement agreements are not made involuntarily because of the risk that the policy does not provide coverage or is void:

> First, while AmFam might be in breach of the settlement agreement if it failed to pay, it voluntarily entered into the settlement agreement. If the insurance policy was void, AmFam was not obligated to settle the case. But it opted to do so anyway, long after it knew of Mr. Almassud's alleged wrongdoing. *See Twin City Fire*, 2017 WL 11497779, at *7 (insurer aware of all facts when it made the settlement payment). It cannot now refashion a voluntarily-undertaken legal duty to pay into an involuntary payment.

11

> Second, Mr. Almassud is not estopped from arguing the payment is voluntary. Mr. Almassud's demand that AmFam settle came because of his position and belief that AmFam was obligated to do so under the policy. Implicit in that demand is an assertion that the policy was valid. Here, by contrast, AmFam argues that the policy was void, which Mr. Almassud obviously disputes. That dispute precludes any estoppel.

*Id.* at 1275-76. If an insurer makes a payment that is not covered by the policy, they cannot later seek recovery of that amount from a third party under this statute. *See S. Mut. Church Ins. Co. v. ARS Mech., LLC*, 306 Ga. App. 748, 703 S.E.2d 363 (2010) (refusing to allow insurer to recover property damage payment paid to insured where insured assigned right to prosecute allegedly negligent contractor but damage paid was not covered under the policy).

Liberty alleges it paid Defendants' settlement and does not allege lack of knowledge of any fact, let alone meeting the exception to O.C.G.A. § 13-1-13. Doc. 69-2, ¶¶ 42, 52, 62, 70. No allegations suggest Liberty involuntarily paid the settlements. Rather, O.C.G.A. § 13-1-13 applies to prevent Liberty from seeking reimbursement because it, in fact, paid the settlements voluntarily. *Id.* For these reasons, the Court should find Liberty is not entitled to a right of reimbursement for settlement payments as a matter of law.

## CONCLUSION

*Winder*, *Almassud*, and O.C.G.A. §13-1-13 are clear and controlling. Georgia law does not allow for a right of reimbursement to an insurer absent an express policy

provision. Liberty's policies do not have the required provisions, causing any claim for reimbursement Liberty now seeks to be futile and subject to dismissal. Liberty's Motion should be denied.

Respectfully submitted, this 3rd day of April, 2024.

**FELLOWS LABRIOLA LLP**

*/s/ Shattuck Ely*
Shattuck Ely
Georgia Bar No. 246944
tely@fellab.com
Jonathan Spratling
Georgia Bar No. 358001
jspratling@fellab.com

Peachtree Center
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200

*Attorneys for Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC, and FMW RRI, LLC*

## **CERTIFICATE OF FONT AND POINT SELECTION**

Undersigned counsel hereby certifies, under LR 7.1(D), NDGa, that the foregoing was prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved in LR 5.1, NDGa.

*/s/Shattuck Ely*
Shattuck Ely

# **CERTIFICATE OF SERVICE**

I certify that this day, I electronically filed the foregoing using the Court's CM/ECF system, which will send email notification to all counsel of record.

Respectfully submitted, this 3rd day of April, 2024.

*/s/ Shattuck Ely*
Shattuck Ely
