**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

LIBERTY MUTUAL FIRE INSUR-
ANCE COMPANY

        Plaintiff,

v.

RED ROOF INNS, INC., RED ROOF
FRANCHISING, LLC, RRI WEST
MANAGEMENT, LLC, FMW RRI
NC, LLC,

        Defendants,

JANE DOE #1, JANE DOE #2, JANE
DOE #3, JANE DOE #4, W.K., E.H.,
M.M., R.P., M.B., D.P., A.F., C.A.,
R.K., K.P., T.H., H.B., and K.M.

        Nominal Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.
1:23-cv-02047-LMM

---

**DEFENDANTS RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC,
RRI WEST MANAGEMENT, LLC, AND FMW RRI NC, LLC'S
<u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

Shattuck Ely
Jonathan Spratling
FELLOWS LaBRIOLA LLP
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303

*Attorneys for Defendants Red Roof Inns, Inc.,
Red Roof Franchising, LLC, RRI West
Management, LLC, and FMW RRI, LLC*

1

## I.    <u>INTRODUCTION</u>

On August 22, 2024, the Court allowed Liberty Mutual Fire Insurance Company ("Liberty") to amend its complaint to add claims for reimbursement of defense costs and settlement amounts for resolved cases while maintaining its claims for declaratory judgment on its duty to defend and indemnify. *See* Docs. 73, 74. The Court found that Red Roof's challenges to Liberty's new claims were better addressed by dispositive motion rather than on a motion to amend. Now that Liberty's First Amended Complaint has been filed, dismissal is proper, and Red Roof seeks dismissal of all Liberty's claims.

Liberty's new claims for breach of contract and unjust enrichment (Counts X through XV) are not cognizable claims under Georgia law and should be dismissed with prejudice. The Eleventh Circuit has held that Georgia law does not allow a claim for reimbursement of defense costs where, as here, the policy does not expressly provide such a right. The same logic applies to claims for reimbursement of settlement payments and Georgia's voluntary payment doctrine also bars Liberty's claims.

As to Counts I through IX that seek declaratory relief, dismissal is also warranted. For all the Underlying Lawsuits except one, there are no pending requests for coverage because the suits have been settled or dismissed on the merits. Because

there is no longer a need or basis for declaratory relief, Liberty's claims are moot and should be dismissed.

As for the one remaining Underlying Lawsuit—*H.B.*—any declaration on the duty to indemnify is premature and such claims should be dismissed without prejudice. And with respect to the duty to defend, the allegations of the underlying complaint do not unambiguously exclude coverage and Liberty's claims for declaratory relief on the duty to defend should thus be dismissed with prejudice.

## II.  BACKGROUND

### A.  The Underlying Lawsuits.

Liberty's First Amended Complaint relates to seven Underlying Lawsuits which allege that the Underlying Plaintiffs were trafficked for commercial sex in various hotels, including several Red Roof Inns:

- *Jane Doe #1 v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03840;

- *Jane Doe #2 v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03841;

- *Jane Doe #3 v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03843;

- *Jane Doe #4 v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03845;

- *W.K., et al. v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:20-cv-05263;

- *H.B. v. Red Roof Inns, Inc., et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:22-cv-01181; and

- *K.M. v. CPA Hotels of Atlanta, LLC et al.,* in the United States District Court for the Northern District of Georgia, Case No. 1:23-cv-00190.

Doc. 74, ¶¶ 33-108.

The *Jane Does 1-4* suits settled and were dismissed. *Id.* at ¶¶ 42, 52, 62, 70. The *K.M.* suit was also dismissed, after Red Roof's motion to dismiss was granted on substantive grounds. *Id.* at 108. Finally, the *W.K.* suit settled in August 2024,[1] leaving the *H.B.* suit as the only pending Underlying Lawsuit.

The *H.B.* suit involves a single Underlying Plaintiff who alleges that she was trafficked at the Norcross Red Roof over several days in January 2012. Doc. 1-6, ¶ 17.[2] The *H.B.* suit assert claims for beneficiary liability under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA"), alleging that Red Roof benefitted from participation in a venture that it knew or should have known involved sex trafficking. Doc. 1-6, ¶ 60; Doc. 74, ¶¶ 88-100. Also included

---

[1] While not identified in Plaintiff's First Amended Complaint, Red Roof requests the Court take judicial notice of the dismissal of the *W.K.* suit. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805 (11th Cir. 2015) (allowing courts to take judicial notice of facts in publicly filed documents on a Rule 12(b)(6) motion if they are not subject to reasonable dispute). Red Roof files a Motion for the Court to take judicial notice of this fact contemporaneously with this motion. This fact is also capable of being considered by the Court under the incorporation by reference doctrine. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

[2] Red Roof includes citations to the attachments to the original complaint because the exhibits relied on in Plaintiff's original Complaint have not changed with the filing of the Amended Complaint, but Liberty did not re-attach the exhibits to its Amended Complaint.

is a claim for violating the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"). Doc. 1-6 at ¶ 96; Doc. 74, ¶¶ 88-100.

**B.    Amended Complaint**

Liberty's Amended Complaint, Doc. 74, varies only slightly from the original Complaint. *See* Doc. 69-3 (redlined copy of Amended Complaint). Relevantly, Liberty added three counts for breach of contract: one count for reimbursement of defense costs and settlement payments on *Jane Does #1-4* suits; one count for reimbursement of defense costs for the *K.M. suit*; and one generic count for reimbursement of defense costs for all Underlying Lawsuits. Doc. 74, ¶¶ 273-298. Liberty also adds three claims for unjust enrichment that mirror its breach of contract claims and seek the same damages. *Id.* at ¶¶ 299-317. Liberty kept all other claims from its original Complaint, including the claims for declaratory relief for the six settled or dismissed Underlying Lawsuits. *Id.* at ¶¶ 151-272.

There are no relevant changes to Liberty's factual allegations other than the addition of certain facts about the settlement or dismissal of five of the Underlying Lawsuits. *Compare* Doc. 1 *with* Doc. 74. Importantly, Liberty does not allege any policy provision granting the right to seek reimbursement of defense costs or settlement payments within the Liberty policies. *See generally* Doc. 74.

### III.    <u>ARGUMENT AND CITATION TO AUTHORITY</u>

**A.    Standard of review for motion to dismiss.**

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *U.S. v. Zak*, 550 F. Supp. 3d 1349, 1351 (N.D. Ga.2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009)). "For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*[3]

When presented with a motion to dismiss in a declaratory judgment action relating to an insurer's duty to defend, the district court must determine whether the allegations in the underlying complaint trigger a duty to defend. *Houston Specialty Ins. Co. v. Five Paces Inn Co.*, 2019 WL 9633224, at *8 (N.D. Ga. Dec. 19, 2019), *aff'd,* 823 F. App'x 897 (11th Cir. 2020) (dismissing insurer's declaratory judgment action where, "the allegations on the face of the underlying lawsuit set forth a claim of *potential* coverage….") (emphasis added).

---

[3] Liberty did not attach its insurance policies to its Amended Complaint, but the authenticity of the policies is undisputed, and the insurance policies are central to Plaintiff's claims. *See* doc. 68.1, p. 8; *see also* doc. 53-3; 53-4; 53-5; 53-5; 53-6; 53-7; 53-8; 53-9; 53-10; 53-11. The Court may thus rely on them in ruling on this Motion to Dismiss. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

**B**.   **Counts X through XV should be dismissed with prejudice because Liberty has no right of reimbursement.**

1.   <u>Georgia law does not recognize an insurer's claim for reimbursement of defense costs in the absence of a policy provision granting such a right</u>.

Liberty's claims for reimbursement of defense costs cannot survive. As the Court recognized in its August 22nd order, the Eleventh Circuit has held that Georgia law[4] does not recognize an insurer's claim for reimbursement of defense costs absent an express policy provision allowing it. *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 939 (11th Cir. 2023).

Liberty does not allege the existence of any policy provision that allows it to pursue reimbursement of defense costs. Instead, Liberty alleges only that it reserved its "right" to seek reimbursement. *See* Doc. 74, at ¶¶ 131-150. The Eleventh Circuit expressly rejected this exact argument, finding that a reservation of rights letter is not a contract that creates a right of reimbursement because there is no consideration. *Winder, 73 F.4th* at 946-47 ("because the parties' contracts already required the insurers to defend the insureds against certain third-party lawsuits, there is no new consideration for the reimbursement provision in the reservations of rights letters and thus no new contract under Georgia law."). Relatedly, unjust enrichment claims like that brought by Liberty here in Counts XII through XV fail because there is

---

[4] The Court's August 22, 2024 Order confirmed that Georgia law applies to this dispute. Doc. 73, pp. 3-7.

nothing unjust about requiring an insurer to fulfill their contractual obligations in providing a defense. *Id.*

The Eleventh Circuit succinctly held: "[w]e think it clear based on Georgia's substantive law as well as its general insurance framework that the Supreme Court of Georgia would not allow an insurer to recoup its expenses based on a reservation of rights letter without any contractual provision allowing for reimbursement." *Id.* at 949-950. *Winder* is binding here. Accepting all facts alleged in Liberty's Amended Complaint as true, Liberty cannot recover the defense costs it paid while providing a defense to Red Roof. With no cognizable claim for reimbursement of defense costs, these claims should be dismissed with prejudice.

2. <u>Georgia law does not recognize an insurer's claim for reimbursement of voluntary settlements.</u>

Liberty's claims for reimbursement of settlement payment should likewise be dismissed. As recognized by courts in this district even before *Winder*, an insurer has no right to reimbursement of a settlement payment absent an express policy provision. In short, the rationale laid out by the Eleventh Circuit in *Winder* applies equally to settlement payments. In addition, Georgia's voluntary payment doctrine bars Liberty's efforts to recoup settlements it voluntarily paid.

Courts in this district have previously rejected insurers' claims to claw back settlement payments from their insureds. *See, e.g., Am. Fam. Ins. Co. v. Almassud*, 522 F. Supp. 3d 1263 (N.D. Ga. 2021); *Twin City Fire Ins. Co. v. Hartman, Simons*

*& Wood, LLP*, 2017 WL 11497779, at *7 (N.D. Ga. Feb. 28, 2017). The reasoning behind these decisions mirrors the analysis in *Winder*. In *Almassud,* Judge Story identified the rationale that the Eleventh Circuit would adopt two years later:

> The rationale is essentially the same as [for defense costs]: an insurer cannot unilaterally create a new right that does not exist in the policy. If the insurer wishes to retain the right to recoup, it could include that right in the policy, or, if that right was in doubt, it could enter into a separate, express agreement that granted it the right to recoup. *See Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*, 396 F. Supp. 3d 1287, 1298 (N.D. Ga. 2019) (insurer sought "reimbursement based on the separate written agreement into which the parties entered"), *aff'd*, 823 F. App'x 815 (11th Cir. 2020). A unilateral reservation of rights is insufficient.

522 F. Supp. 3d at 1270-71.

There is no reason why the Eleventh Circuit's ruling in *Winder* should not also apply to Liberty's claims for reimbursement of settlement payments. Liberty's reservations of the right to seek reimbursement are unsupported by any consideration not already present in the original insurance contracts. *Winder*, 73 F.4th at 946-47. Absent new consideration, Liberty cannot grant itself the benefit of reimbursement unilaterally via a reservation of rights. *Id.; Almassud*, 522 F. Supp. 3d at 1270-71. For the same reasons stated in *Winder* and *Almassud*, Liberty has failed to state a cognizable claim for reimbursement of settlement payments.[5]

---

[5]   The Restatement of the Law of Liability Insurance—cited with approval in *Winder*—identifies a default rule of no recoupment for both defense costs and settlement payments. *See* RESTATEMENT OF THE LAW OF LIABILITY INSURANCE, §§ 21 and 25. And while the anti-recoupment rule for defense costs adopted in *Winder* is

Even if the anti-recoupment rule set forth in *Winder* did not apply, Liberty has failed to state a claim for reimbursement. Liberty's breach of contract claims (Counts X through XII) do not allege any right to reimbursement under its policies.[6] And Liberty's unjust enrichment claims (Counts XIII through XV) fail as a matter of law because the parties' obligations are controlled by a written contract. *Winder*, 73 F.4th at 947; *see also Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir. 1998) ("Recovery on a theory of unjust enrichment, however, is only available 'when as a matter of fact there is no legal contract.'"). Having failed to include a right of recoupment in its policies, Liberty cannot now use an unjust enrichment claim to rewrite the parties' agreement.

Finally, even if Liberty's Amended Complaint stated a claim for reimbursement and the Court were not inclined to follow *Winder*, Georgia's voluntary

---

arguably the minority rule, anti-recoupment is the majority rule for settlement payments. *Id.*, § 25, reporter's note to cmt. c (2019) ("the majority of state courts that have addressed the issue have not permitted recoupment in the absence of a provision in the insurance policy granting the insurer this right or an express agreement by the insured.").

[6] To the extent that Liberty contends that its unilateral reservations of rights created new contracts, it has not alleged any of the required elements of a valid contract under Georgia law. *See Ruthrauff v. Luminess Direct, LLC*, 2018 WL 11447828, at *5 (N.D. Ga. Dec. 6, 2018) (under Georgia law, a binding contract requires a definite offer, complete acceptance, consideration, and a meeting of the minds). At bottom, the Amended Complaint alleges only a unilateral reservation of rights. *See* Doc. 74, ¶ 150 ("LMFIC paid the settlement amounts on December 14, 2023, while continuing to maintain its reservation of rights to seek recoupment of that payment.").

payment doctrine (codified at O.C.G.A. § 13-1-13) mandates dismissal. The voluntary payment doctrine bars recovery of amounts paid through ignorance of law or where all facts are known and there is "no misplaced confidence and no artifice, deception, or fraudulent practice." O.C.G.A. § 13-1-13. The only exception is for payments made "under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property." *Id.*

The voluntary payment doctrine applies to payments made by insurance companies, including settlement payments. *See, e.g., Almassud*, 522 F. Supp. 3d at 1272–76; *Hartman, Simons & Wood, LLP*, 2017 WL 11497779, at *7. If an insurer makes a payment that is not covered by its policy (as alleged by Liberty here), it cannot later seek recovery of that amount. *See Ins. Co. of N. Am. v. Kyla, Inc*., 193 Ga. App. 555, 555, 388 S.E.2d 530, 530–31 (1989) (insurer who paid $600,000 settlement, even though it claimed that the policy limits were $500,000, could not recover the overpayment because it was a voluntary payment); *Transp. Ins. Co. v. Maryland Cas. Co*., 187 Ga. App. 361, 364, 370 S.E.2d 188, 191 (1988) (insurer was volunteer when it paid to settle claim that it contended was not owed under its policy).

Liberty does not allege that it lacked knowledge of any fact or otherwise meets the exceptions to O.C.G.A. § 13-1-13. Doc. 74, ¶¶ 42, 52, 62, 70. No allegations can be reasonably understood to allege that Liberty involuntarily paid the settlements.

Rather, Liberty voluntarily settled the Underlying Lawsuits and its claims for reimbursement of those settlement payments should be dismissed with prejudice. *See Kuchenmeister v. HealthPort Techs., LLC*, 309 F. Supp. 3d 1342, 1348 (N.D. Ga.), *aff'd*, 753 F. App'x 794 (11th Cir. 2018) (granting motion to dismiss on voluntary payment doctrine).

**C.    Counts I through V and VII should be dismissed with prejudice because the Underlying Lawsuits are no longer pending and any claim for declaratory relief is now moot.**

In Counts I through V and VII, Liberty seeks declaratory judgment on its duty to defend and indemnify for the *Jane Does #1-4, W.K.*, and *K.M.* lawsuits. Because each of these Underlying Lawsuits has been resolved and are no longer pending, there is no need for declaratory relief.

The Declaratory Judgment Act grants to the federal district courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. An essential element for every declaratory judgment action is the existence of an "actual controversy" between the parties. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937). An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273

(1941). A controversy is not sufficiently immediate or real where the parties' dispute has been rendered moot. *See Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). A federal court lacks jurisdiction to determine such a case because to do so would result in an impermissible advisory opinion. *Christian Coal. of Ala. v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004).

Liberty's declaratory judgment claims have become moot for all the Underlying Lawsuits except the *H.B.* suit. There is no declaration that this Court could provide that would have any bearing on the parties' future conduct. *See Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 979 (11th Cir. 2015) (affirming dismissal of declaratory judgment claim which became moot upon plaintiff insurer's payment of settlement funds because "[a] declaration could not have had any bearing on the parties' future conduct…."). Red Roof is thus entitled to dismissal of Counts I through V and VII of Liberty's Amended Complaint.[7]

**D.    Counts VI, VIII, and IX should be dismissed because Liberty owes a duty to defend the *H.B.* Suit and its duty to indemnify is not yet ripe.**

Finally, Liberty's remaining claims for declaratory relief should be dismissed because the only ripe dispute for the one pending Underlying Lawsuit is Liberty's duty to defend, and the allegations of the *H.B.* suit do not unambiguously exclude

---

[7] For the same reason, dismissal is appropriate for Counts VIII and IX (Liberty's "general" declaratory judgment counts) to the extent that Liberty seeks declaratory relief regarding the *Jane Does #1-4, W.K.*, and *K.M.* lawsuits in those counts.

coverage. While Liberty's Amended Complaint cites a laundry list of coverage defenses, as discussed below, none of these defenses are well-founded and none affect its duty to defend the *H.B.* suit.

      1.    <u>The duty to indemnify for the *H.B.* suit is not yet ripe.</u>

Liberty's duty to indemnify for the *H.B.* suit is not ripe because liability against Red Roof has not been established. *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770–71 (11th Cir. 2019) (unpublished) ("an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established."). "Unless and until a judgment or settlement is entered against Defendant, this Court has no jurisdiction over Plaintiff's declaratory judgment claim on duty to indemnify." *Kinsale Ins. Co. v. Venetian Hills Apartments, LLC*, 2022 WL 18777473, at \*4 (N.D. Ga. Apr. 29, 2022). As a result, the only ripe dispute over the *H.B.* suit is Liberty's duty to defend, and its declaratory judgment claim on the duty to indemnify should be dismissed without prejudice.

      2.    <u>Liberty owes a defense of the *H.B.* suit and its request for declaratory judgment on the duty to defend should be dismissed.</u>

"The duty to defend is extremely broad under Georgia law." *Winder*, 73 F.4th at 948; *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407–08 (2012); *see also Continental Cas. Co. v. Synalloy Corp.*, 667 F. Supp. 1523, 1541 (S.D. Ga. 1983) (insurer must provide a defense "as long as there is a *possibility* of coverage, liberally

construing the allegations" of the complaint) (emphasis added). "Thus, an insurer is obligated to defend even where the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage." *Fireman's Fund Ins. Co. v. University of Ga. Athletic Ass'n*, 288 Ga. App. 355, 356 (2007) (citing *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997)).

If the claim asserted is one that might be covered under the policy, "doubt as to liability and insurer's duty to defend should be resolved in favor of the insured." *Id.* (citation omitted); *see also Landmark Am. Ins. Co. v. Khan*, 307 Ga. App. 609, 612, 705 S.E.2d 707, 710 (2011) ("If the facts as alleged in the complaint even *arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action."). "[W]here an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted." *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012) (applying Georgia law). Liberty is thus required to defend the Underlying Lawsuits if *any* of the claims asserted in the Underlying Lawsuits are *possibly* covered.

>   a.   *Georgia public policy does not bar coverage for the claims asserted in the H.B. suit.*

In Count VIII, Liberty contends that public policy allows it to escape its duty to defend. *See* Doc. 74, ¶¶ 247-259. But no such public policy has ever been

identified by Georgia's legislature or courts. To the contrary, Liberty's contention contravenes decades of Georgia insurance law and should be rejected.

Georgia law strongly supports parties' freedom of contract and courts "must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt." *Key v. Georgia Dep't of Admin. Servs.*, 798 S.E.2d 37, 41–42 (Ga. App. 2017). Insurers' efforts to avoid coverage under an insurance policy for public policy reasons have been routinely rejected. A good example is that Georgia—unlike some states—allows coverage for punitive damages. *See Greenwood Cemetery, Inc. v. Travelers Indem. Co.*, 238 Ga. 313, 316, 232 S.E.2d 910, 913 (1977). It also not against public policy in Georgia to insure damages for willful and wanton misconduct or for claims of racial discrimination. *See Travelers Indem. Co. v. Hood*, 110 Ga. App. 855, 140 S.E.2d 68 (1964) (allowing coverage of willful and wanton misconduct); *Union Camp Corp. v. Cont'l Cas. Co.*, 452 F. Supp. 565, 568 (S.D. Ga. 1978) (allowing coverage for racial discrimination).

In fact, the only public policy identified by Georgia courts as a potential bar to insurance coverage is for "injuries intentionally inflicted." *Hood*, 140 S.E.2d at 70 (noting, however, that the unforeseen results of intentional *acts*—unlike intentional *injury*—are still insurable). The public policy identified in *Hood* is plainly inapplicable here: while Red Roof need only establish that a single cause of action

16

could be covered, *none* of the claims asserted in the *H.B.* suit require an intent to injure.

First, H.B.'s civil beneficiary claim under the TVPRA contains no scienter element, much less a requirement of injurious intent. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021) (holding that knowledge of acts of force, fraud, coercion is not required under 18 U.S.C. § 1595). *H.B.* need only allege Red Roof "should have known" or had constructive knowledge of force, fraud, coercion being used to cause her involvement in commercial sex acts. This is precisely what she has pled, alleging no fewer than seventeen times that Red Roof "should have known" that its operation of the Norcross Red Roof violated the TVPRA (Doc. 1-6, *passim*), and that Red Roof had "constructive knowledge" of criminal activity (Doc. 1-6, at ¶¶ 47 and 49). Because H.B.'s TVPRA civil beneficiary claim does not require an intentional violation, let alone an intentional injury, Liberty is required to defend. *See, e.g., Ricchio v. Bijal, Inc.,* 424 F. Supp. 3d 182, 194 (D. Mass. 2019) (insurer required to defend civil TVPRA claims against insured hotel operator because the statute invokes a negligence standard); *Starr Indem. & Liab. Co. v. Choice Hotels Int'l, Inc.*, 2021 WL 2457107, at *7 (S.D.N.Y. June 16, 2021) (insurer required to defend civil TVPRA claim against insured hotel because "allegations that [the insured] 'should have known' about the trafficking venture are consistent with the text of the TVPRA, which does not require that a defendant have actual

knowledge of a trafficking venture in order to be civilly liable….”); *see also M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp.3d 959, 965 (S.D. Ohio 2019) (Section 1595(a) “invokes a negligence standard….”); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) (“[T]he plain text of § 1595(a) makes clear that the standard under this section is a negligence standard of constructive knowledge”).

Likewise, H.B.’s RICO claim does not require an intent to injure. While some of the alleged predicate acts are crimes, others—such as civil liability under the TVPRA—are not. And even with respect to the alleged criminal predicate acts, there is no public policy which would bar coverage absent a specific intent to injure:

> There is no blanket, public-policy-based objection in insurance law to insuring a civil liability that arises out of a criminal act, even in jurisdictions with public-policy-based restrictions on the insurability of certain kinds of liabilities. In such jurisdictions, the insurability of civil liability arising out of a criminal act generally depends on whether the insured intended to injure the victim or whether punitive damages are assessed. To the extent that public-policy-based limits on insurance coverage are based on a concern about moral hazard, the fact that a wrong is also a crime should reduce that concern, because the presence of criminal penalties will increase whatever deterrence is provided by liability.

RESTATEMENT OF THE LAW OF LIABILITY INSURANCE, § 45 (2019).[8] Criminal predicate acts such as keeping a place of prostitution, even if proven, do not establish an intent to injure H.B.

Liberty has previously argued that an intent to injure can be inferred for sexual abuse. But this ignores that Red Roof is not accused of sexually abusing H.B. but having benefited from a venture in which H.B. was trafficked or negligently failed to prevent her trafficking at the Norcross Red Roof. Judge Thrash dismissed this precise argument on similar grounds in *Mesa Underwriters Specialty Ins. Co. v. Khamlai Lodging, LLC*. 2022 WL 1135013, at *3 (N.D. Ga. Apr. 18, 2022) (distinguishing *Roe v. State Farm Fire & Cas Co.*, 373 S.E.2d 23 (Ga. App. 1988)). The distinction between an active abuser and a passive beneficiary or negligent enabler is self-evident and well recognized:

> The public policy against insurance for one's own intentional sexual misconduct does not bar liability coverage for others whose mere negligence contributed in some way to the acts of abuse. In these cases, there is, at least, no overriding policy reason why a person injured by sexual abuse should be denied compensation for the harm from insurance coverage purchased by the negligent facilitator.

---

[8]  The Restatement is in accord with Georgia law and Georgia courts have affirmed coverage for injuries caused by an insured's criminal acts so long as there was no specific intent to harm. *See S. Guar. Ins. Co. of Georgia v. Saxon,* 190 Ga. App. 652, 654, 379 S.E.2d 577, 579 (1989) (injuries caused during insured's attempted evasion of the police); *Hood*, 140 S.E.2d at 7 (injuries caused during insured's illegal racing).

7 COUCH ON INSURANCE, § 101:25; *see also Cincinnati Ins. Co. v. Magnolia Ests., Inc.*, 286 Ga. App. 183, 185, 648 S.E.2d 498, 500 (2007) (insurer required to defend personal care home for alleged failure to prevent repeated attacks on plaintiff by a fellow resident).

In short, there is nothing unique about claims against the hospitality industry involving sex trafficking and insurers have been required to defend such suits in this district. *See, e.g., Khamlai Lodging*, 2022 WL 1135013, at *3 (requiring insurer to defend hotel even where the insurance policy contains an abuse and molestation exclusion). There is no Georgia public policy that prevents insurance coverage for the allegations asserted in the *H.B.* suit and there is no basis for the Court to create new public policy here.

> b. *The claims asserted in the H.B. suit are at least potentially covered under the Liberty policies.*

Liberty's arguments based on the specific terms of its policies fare no better. For many of the same reasons that its public policy argument fails, Liberty's policy-related defenses likewise fail.

> i. The *H.B.* suit alleges bodily injury under Coverage A.

Coverage A of the Liberty Policies covers Red Roof's liability for bodily injury. Doc. 74, ¶ 113. The first policy-related defense raised by Liberty is that it owes no coverage for bodily injury that did not occur during its policy periods. Doc. 74, ¶ 222. But the *H.B.* suit specifically alleges bodily injury—physical injuries from

alleged trafficking—occurring during Liberty's 2011 Policy. *See* Doc. 1-6, ¶ 17 (alleging that H.B. was trafficked in January 2012), ¶ 51 ("Plaintiff suffered *substantial physical*, emotional, and psychological harm and other damages." (emphasis added)); *see also Presidential Hotel v. Canal Ins.,* 188 Ga. App. 609, 611, 373 S.E.2d 671, 672 (1988) ("Used in an insurance policy, the term 'bodily injury' means just that—'bodily injury.' It pertains to physical injury to the body.").

Liberty next challenges whether the alleged bodily injury was caused by an "occurrence." Doc. 74, ¶¶ 223, 224. The Liberty policies define occurrence to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.,* ¶ 116. While the term accident is not defined, Georgia courts construe the word broadly:

> [I]njuries "caused by accident" as used in an insurance contract [] include injuries caused without the actor's intent or design to injure and would not include injuries intentionally inflicted. "Accident" is a more comprehensive term than negligence, although negligence is included in it.

*Hood*, 110 Ga. App. at 857.

Whether an event constitutes an accident is determined from the viewpoint of Red Roof. *See Barrs v. Auto-Owners Insurance Company*, 564 F. Supp. 3d 1362, 1377 (M.D. Ga. 2021) ("It cannot possibly be said that from the standpoint of [the insured], it could have foreseen or expected its agent to steal building materials from the job site. Obviously, [the insured] did not hire Hood with the intent that he commit

a crime. Therefore, from [the insured]'s perspective, the theft, albeit an intentional act, was an accident."). Red Roof is not alleged to have "design[ed] to injure" H.B. and such a finding is not a required element of any claim. As a result, the *H.B.* suit alleges an occurrence. *See Liberty Corp. Cap. Ltd. v. First Metro. Baptist Church*, 2021 WL 4166332, at *5–6 (S.D. Ga. Sept. 13, 2021) (because the church had no knowledge that its pastor would sexually assault a member of its parish, it could not be said that the church "intended or expected" the sexual assault to occur, meaning it was an "accident" from the perspective of the church for purposes of insurance coverage).

Like its public policy and occurrence defenses, the expected and intended injury exclusion raised by Liberty applies *only* if Red Roof subjectively intended to cause bodily injury. Doc. 74, ¶ 225. Red Roof is not alleged to have done so, and it is not an element of the claims asserted in the *H.B.* suit.

The standard expected or intended exclusion included in the Liberty policies provides that the insurance does not apply to:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Doc. 74, ¶ 117. The analysis of the expected or intended exclusion is similar to the existence of an occurrence. But because it is an exclusion, the rules of construction apply even more stringently against Liberty. *Great Am. All. Ins. Co. v. Anderson*,

847 F.3d 1327, 1332 (11th Cir. 2017) ("exclusions from coverage sought to be invoked must be strictly construed…."). The *H.B.* suit does not allege or require that Red Roof expected or intended to injure her. As a result, the exclusion does not apply.

        ii.     The Underlying Lawsuits allege personal and advertising injuries under Coverage B.

Coverage B covers Red Roof's liability for "personal and advertising injury" and provides an independent basis for Liberty's duty to defend. Doc. 74, ¶ 118. Because the claims asserted in the *H.B.* suit potentially state a claim arising from her false imprisonment, Liberty also owes a duty to defend under Coverage B.

"[P]ersonal and advertising injury" is an injury "arising out of," among other things, "false arrest, detention or imprisonment[.]" Doc. 74, ¶ 119. Because *H.B.* has alleged injuries that arise in part out of her alleged false imprisonment, Coverage B is triggered. *See* Doc. 1-6, ¶¶ 25 ("Plaintiff was rescued from the hotel…."), 55 (alleging that Plaintiff was "confined and sold."); *see also Ricchio*, 424 F. Supp.3d at 190 (plaintiff's TVPRA claims arose out of her false imprisonment and thus triggered Coverage B: "it is unclear how the trafficking could have occurred if she had not been imprisoned.").

Liberty's Amended Complaint contends that the alleged personal and advertising injuries do not "aris[e] out of" Red Roof's business. Doc. 74, ¶ 227. Under Georgia law, "arising out of" means "had its origins in, grew out of, or flowed from."

*JNJ Foundation Specialists, Inc. v. D.R. Horton, Inc.*, 311 Ga. App. 269, 270 (2011) (citation and punctuation omitted). Where "arising out of" is used in a policy's coverage provision, "Georgia courts have construed that phrase broadly, holding that where [an insurance] contract provides that a loss must 'arise out of' a specified act, it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship." *Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 304 Ga. App. 314, 321 (2010).

This broad causal connection requirement means that the alleged offense need not be an authorized or sanctioned part of the insured's business. So long as the offense took place at a Red Roof hotel in connection with a transaction in which lodging was provided, the condition is met. *See Banyan Tree Mgmt.*, 631 F. Supp.3d at 1278 (claims alleging that an employee's unauthorized video recording of plaintiff in the nude "arose out of" the insured hotel's business); *Ricchio*, 424 F. Supp.3d at 192 (sex trafficking claims "arose out of" the insured hotel's business even though the hotel was not in the business of human trafficking).

Nor do the two Coverage B exclusions cited in Liberty's Amended Complaint apply. The first exclusion cited by Liberty is the Knowing Violation of the Rights of Another exclusion which bars coverage for injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" *See* Doc. 74, ¶¶ 122 and 228. Yet

Red Roof is not alleged to have knowingly violated the rights of H.B. Nor is Red Roof alleged to have taken actions that would knowingly inflict injury on H.B. The exclusion thus does not apply.

The second exclusion cited by Liberty is the Criminal Acts exclusion which bars coverage for personal and advertising injury "arising out of a criminal act ***committed by or at the direction of the insured***." *See* Doc. 74, ¶¶ 123 (emphasis added) and 229. While *H.B.*'s traffickers may have acted criminally, the Underlying Lawsuits do not require a finding that Red Roof acted criminally. As discussed above, the TVPRA beneficiary claim brought against Red Roof alleges violations of the civil statute, not criminal. As a result, Red Roof could be found liable without any criminal conduct. The criminal acts exclusion thus does not affect Liberty's duty to defend the Underlying Lawsuits.

In short, taking the allegations in the Amended Complaint as true, Liberty has failed to plausibly allege facts that would avoid its duty to defend the *H.B.* suit. The allegations in the *H.B.* suit at least raise the possibility that the claims against Red Roof could come within coverage and thus Liberty owes a duty to defend. Red Roof is therefore entitled to dismissal with prejudice of Liberty's declaratory judgment claim on the duty to defend the *H.B.* suit.

## IV.   <u>CONCLUSION</u>

Liberty has no cognizable claims for reimbursement and therefore Counts X through XV of its Amended Complaint should be dismissed with prejudice. Its claims for declaratory relief for the six dismissed Underlying Cases are moot and should likewise be dismissed with prejudice. Liberty's duty to indemnify Red Roof for the *H.B.* suit is not yet ripe and therefore its claims for declaratory relief on the duty to indemnify the *H.B.* suit should be dismissed without prejudice. Finally, Liberty owes a defense of the *H.B.* suit and its claims for declaratory relief on the duty to defend that lawsuit should be dismissed with prejudice.

Respectfully submitted, this 5th day of September, 2024.

FELLOWS LABRIOLA LLP

/s/ Shattuck Ely
Shattuck Ely
Georgia Bar No. 246944
tely@fellab.com
Jonathan Spratling
Georgia Bar No. 358001
jspratling@fellab.com

Peachtree Center
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200

*Attorneys for Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC, and FMW RRI, LLC*

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

Undersigned counsel hereby certifies, under LR 7.1(D), NDGa, that the fore-going was prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved in LR 5.1, NDGa.

*/s/ Shattuck Ely*
Shattuck Ely

## **CERTIFICATE OF SERVICE**

I certify that this day, I electronically filed the foregoing using the Court's

CM/ECF system, which will send email notification to all counsel of record.

Respectfully submitted, this 5th day of September, 2024.

*/s/ Shattuck Ely*
Shattuck Ely