# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>RED ROOF INNS, INC.; RED ROOF FRANCHISING, LLC; RRI WEST MANAGEMENT, LLC; FMW RRI NC, LLC,<br><br>*Defendants*,<br><br>JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., T.H., H.B., AND K.M.,<br><br>*Nominal Defendants*. | Civil Action No.:  1:23-cv-02047-LMM |

# OPPOSITION OF
# LIBERTY MUTUAL FIRE INSURANCE COMPANY
# TO DEFENDANTS RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, AND FMW RRI NC, LLC'S
# <u>MOTION TO DISMISS</u>

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS .......................................................................4

    A.    The Relevant Policies .............................................................4

    B.    The Underlying Lawsuits .......................................................5

    C.    Relevant Procedural Background............................................5

LEGAL STANDARD ..............................................................................6

ARGUMENT ...........................................................................................7

I.    Georgia Choice-Of-Law Rules Require the Application of Ohio Law to Interpreting the Policies..................................................................7

II.    Because the Policies Do Not Afford Coverage for the *HB* Lawsuit, the Motion Should be Denied...........................................................10

    A.    Coverage A is Not Applicable to the *HB* Lawsuit...............11

    B.    Because the Underlying *H.B.* Plaintiff Does Not Allege a Personal and Advertising Injury, Coverage B is Not Applicable........17

    C.    Public Policy Bars Insurance Coverage for Sex Trafficking ..............20

II.    Resolution of Certain of the Underlying Lawsuits Has Not Rendered this Action Moot. ...................................................................21

    A.    There is a Live Dispute Between the Parties .....................21

    B.    LMFIC Has a Right to Seek Reimbursement or Restitution .............23

CONCLUSION .....................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Associated Indem. Corp. v. Hughes*,
No. 4:18-CV-00201-HLM, 2019 U.S. Dist. LEXIS 111883 (N.D.
Ga. Apr. 25, 2019) ...............................................................................11

*Barrs v. Auto-Owners Insurance Co.*,
564 F. Supp. 3d 1362 (M.D. Ga. 2021) .........................................14, 15

*Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*,
631 F. Supp. 3d 1256 (N.D. Ga. 2022), *aff'd*, No. 22-13581, 2023
WL 6319224 (11th Cir. Sept. 28, 2023) ........................................18, 19

*Com. Union Ins. Cos. v. Sky, Inc.*,
810 F. Supp. 249 (W.D. Ark. 1992) ...................................................17

*Cont'l Cas. Co. v. Synalloy Corp.*,
667 F. Supp. 1523 (S.D. Ga. 1983) .............................................10, 11

*Cont'l Cas. Co. v. Winder Labs., LLC*,
73 F.4th 934 (11th Cir. 2023) ...............................................10, 23, 24

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) ...............................................................13

*Harris v. FBCS, Inc.*,
No. 1:24-cv-970-MLB-JKL, 2024 U.S. Dist. LEXIS 105547 (N.D.
Ga. June 13, 2024) ...............................................................................16

*Hous. Enter. Ins. Co. v. AmTrust Ins. Co.*,
212 F. Supp. 3d 1330 (N.D. Ga. 2016) ...............................................25

*Hous. Specialty Ins. Co. v. Five Paces Inn Co.*,
823 F. App'x 897 (11th Cir. 2020) .....................................................21

*Jane Doe 1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) .......................................12, 13, 17, 21

*K.H. v. Riti, Inc.*,
   No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024)...............................14

*Kinsale Ins. Co. v. Venetian Hills Apartments, LLC*,
   No. 1:21-cv-03214-LMM, 2022 U.S. Dist. LEXIS 238750 (N.D.
   Ga. Apr. 29, 2022) ........................................................................................22

*Liberty Corporate Capital, Ltd. v. First Metropolitan Baptist Church*,
   No. CV420-179, 2021 U.S. Dist. LEXIS 173411 (S.D. Ga. Sept.
   13, 2021) ........................................................................................................15

*Nationwide Prop. & Cas. Ins. Co. v. Hampton Ct., L.P.*,
   No. 1:23-CV-4726-TWT, 2024 U.S. Dist. LEXIS 87228 (N.D. Ga.
   May 15, 2024)...............................................................................................6, 7

*Northfield Ins. v. Northbrook Indus., Inc.*,
   2024 WL 4224628 (N.D. Ga. Sept. 16, 2024)...................................................11

*Ricchio v. Bijal, Inc.*,
   424 F. Supp. 3d 182 (D. Mass. 2019) ...............................................................18

*Samsung Fire & Marine Ins. Co. v. UFVS Mgmt. Co.*,
   No. 18-04365, 2023 U.S. Dist. LEXIS 46508 (E.D. Pa. Mar. 20,
   2023), *appeal pending*, No. 23-1988 (3d Cir. June 1, 2023)...........................20

*United Brass Works, Inc. v. Am. Guarantee & Liab. Ins. Co.*,
   819 F. Supp. 465 (W.D. Pa. 1992), *aff'd*, 989 F.2d 489
   (3d Cir. 1993).....................................................................................................9

**State Cases**

*Allstate Vehicle & Prop. Ins. Co. v. Inabnitt*,
   Nos. 2021-10-094, 2021-10-098, 2022 Ohio App. LEXIS 1964
   (Ohio Ct. App. June 21, 2022)...................................................................15, 16

*Avellone v. St. John's Hosp.*,
   135 N.E.2d 410 (Ohio 1956) ..............................................................................8

*BBL-McCarthy, LLC v. Baldwin Paving Co.*,
   285 Ga. App. 494 (Ga. Ct. App. 2007)..............................................................18

*Chiquita Brands Int'l, Inc. v. Nat'l Union Fire Ins. Co.*,
   57 N.E.3d 97 (Ohio Ct. App. 2015)...............................................................8, 23

*Colonial Penn Ins. Co. v. Hart*,
  162 Ga. App. 333 (1982) ...............................................................15, 16

*Gearing v. Nationwide Ins. Co.*,
  665 N.E.2d 1115 (Ohio 1996) ..............................................................11

*Grange Mut. Cas. Co. v. Gore*,
  No. CA96-08-076, 1997 Ohio App. LEXIS 1985 (Ohio Ct. App.
  May 12, 1997) .......................................................................................20

*Granger v. Auto-Owners Ins.*,
  40 N.E.3d 1110 (Ohio 2015) ................................................................21

*Hoover v. Maxum Indemnity Co.*,
  291 Ga. 402 (2012) ...............................................................................24

*Lo Guidice v. Harris*,
  128 N.E.2d 842 (Ohio Ct. App. 1954) ..................................................8

*Travelers Indem. Co. v. Hood*,
  110 Ga. App. 855 (Ga. Ct. App. 1964) ................................................20

**State Statutes**

Ohio Rev. Code Ann. § 3937.182(B) .......................................................10

## INTRODUCTION

This action relates to seven underlying lawsuits[1] filed against Defendants by multiple sex trafficking victims (the "Underlying Plaintiffs")[2] who allege that they were brutalized, raped, and sold for sex at certain Red Roof Inn hotels. The Underlying Plaintiffs further allege that the Red Roof Entities[3] that collectively own, franchise, and operate Red Roof-affiliated hotels knew about the sex trafficking occurring at the hotels where they were sold for sex, and participated in and profited from the trafficking in violation of state and federal criminal law.

LMFIC's original Complaint filed in May of 2023 sought a declaratory judgment establishing that no duty to defend or indemnify exists with respect to the then–pending Underlying Lawsuits because, among other reasons, (i) public policy bars insurance coverage for sex trafficking allegations; and (ii) the Underlying Plaintiffs' alleged sex trafficking claims for injuries are non-accidental and non-fortuitous and, therefore, do not fall within the policies' grant of coverage.

---

[1] *Jane Doe #1 v. Red Roof Inns, Inc., et al.*, Case No. 1:19-cv-3840; *Jane Doe #2 v. Red Roof Inns, Inc., et al.*, Case No. 1:19-cv-3841; *Jane Doe #3 v. Red Roof Inns, Inc., et al.*, Case No. 1:19-cv-3843; *Jane Doe #4 v. Red Roof Inns, Inc. et al.*, Case No. 1:19-cv-3845; *W.K. et al. v. Red Roof Inns, Inc., et al.*, Case No. 1:20-cv-5263; *H.B. v. Red Roof Inns, Inc., et al.*, Case No. 1:22-cv-01181; and *K.M. v. CPA Hotels of Atlanta, LLC, et al.*, Case No. 1:23-cv-00190 (the "Underlying Lawsuits").

[2] "Jane Doe #1, Jane Doe #2, Jane Doe #3, Jane Doe #4, W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., T.H., H.B., and K.M. ("Underlying Plaintiffs").

[3] Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC, and FMW RRI NC, LLC (the "Red Roof Entities").

After six of the Underlying Lawsuits were resolved, this Court granted LMFIC's motion to amend its Complaint to specifically add a cause of action for recoupment of defense expenses and settlement amounts that were expressly paid pursuant to a reservation of rights. LMFIC then filed the Second Amended Complaint ("SAC"). The Red Roof Entities now move to dismiss the SAC, arguing that, under Georgia law, this action should be dismissed before it proceeds into discovery on two grounds: (1) LMFIC has a duty to defend the sole remaining Underlying Lawsuit, filed by *H.B.* (the "*HB* Lawsuit"); and (2) there are no pending coverage disputes relating to the settled Underlying Lawsuits because those lawsuits are fully resolved. Both of these grounds fail, and the Red Roof Entities' motion should be denied.

As an initial matter, while failing under Georgia or Ohio law, LMFIC contends that Ohio (and not Georgia) law is applicable to the interpretation of the insurance policies and this Court should exercise its discretion to find that Ohio law is applicable for three reasons. First, unique Ohio common law exists that controls whether an insurer may seek reimbursement of amounts it has paid to defend and indemnify an insured. Second, the Red Roof Entities themselves have argued that a single jurisdiction's law should apply to the interpretation of the insurance policies. Third, certain of the Red Roof Entities' arguments are premised upon Georgia law permitting the insurability of punitive damages, contrary to Ohio statutory law.

With respect to the first asserted ground for dismissal, contrary to the Red Roof Entities' arguments, LMFIC's policies do not afford coverage for the *HB* Lawsuit, which alleges that the Red Roof Entities violated the Trafficking Victim Protection Reauthorization Act, 18 U.S. Code § 1595 (the "TVPRA")[4] because, among other reasons, (i) the Red Roof Entities failed to sustain their burden to prove that HB has alleged "bodily injury" caused by an "occurrence"; and (ii) HB does not allege a "personal and advertising injury." Even if she did, as set forth below, public policy considerations and certain applicable exclusions would bar. Because LMFIC is not obligated to defend the Red Roof Entities against the *HB* Lawsuit, LMFIC is likewise not obligated to indemnify the Red Roof Entities against the *HB* Lawsuit.

With respect to the second asserted ground for dismissal, contrary to the Red Roof Entities' assertions, there are live and ripe controversies between the parties relating to LMFIC's claims for reimbursement and restitution of payments of defense costs and settlement contributions that it made in the now resolved Underlying Lawsuits. Significantly, in the Motion, the Red Roof Entities *do not* challenge LMFIC's position that there is no coverage for the Underlying Lawsuits; rather, the Red Roof Entities challenge LMFIC's ability to contest coverage *at any*

---

[4] Initially, HB also asserted claims for violation of the Georgia RICO statute. As explained *infra,* HB has relinquished her Georgia RICO claims and thus, those claims are not relevant for purposes of determining LMFIC's coverage obligations.

*time.* According to the Red Roof Entities, it is premature to litigate the duty to indemnify while the underlying lawsuit is pending; but upon that lawsuit's resolution, any coverage dispute is moot — *even if the policies never afforded coverage in the first place*. As explained below, the Red Roof Entities are wrong.

## STATEMENT OF FACTS

### A.    <u>The Relevant Policies</u>

LMFIC issued a series of Commercial General Liability insurance policies to Red Roof Inns, Inc., which span from July 1, 2011 through July 1, 2019 (the "Policies"). Dkt. No. [79-8]. The Policies contain two potentially relevant coverage parts: (i) Coverage A, Bodily Injury and Property Damage Liability; and (ii) Coverage B, Personal and Advertising Injury Liability. To be afforded coverage under Coverage A, at a minimum, the Underlying Plaintiffs' alleged "bodily injury" must be caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 3, 8. Coverage A contains an Expected or Intended Injury exclusion barring coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured" and a Personal and Advertising Injury exclusion barring coverage for "bodily injury" arising out of "personal and advertising injury." *Id.* at 6.

To be afforded coverage under Coverage B, at a minimum, there must be a "[p]ersonal and advertising injury," defined as an injury, including consequential

"bodily injury," "arising out of," among other things, "one or more of the following offenses: a. False arrest, detention, or imprisonment."  *See id* at 4-5.  Coverage B contains exclusions barring coverage for injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another" and criminal acts committed by the insured.  *Id.*

### B.   The Underlying Lawsuits

The Underlying Plaintiffs allege that they were sex trafficked at hotels owned or operated by the Red Roof Entities, and that the Red Roof Entities knew about, participated in, and profited from their exploitation.  *See, e.g.*, Dkt. No. [79-1] ¶¶ 29, 31, 76, 103, 109-110, 120.  The Underlying Plaintiffs seek to hold the Red Roof Entities accountable for, among other things, their violations of the TVPRA, which provides a civil remedy to victims of sex trafficking against those who knowingly benefit from their participation in ventures that violate the TVPRA.  *Id.* ¶ 24.

Five of the Underlying Lawsuits were settled in January 2024.  Dkt. No. [53-2] ¶¶ 2-4, 8.  The Underlying *W.K.* Lawsuit was also resolved earlier this year, Dkt. No. [75] ¶ 5, leaving only the *HB* Lawsuit pending.  With respect to H.B. specifically, she asserts a cause of action for violation of the TVPRA.

### C.   Relevant Procedural Background

On March 5, 2023, LMFIC filed this action, seeking a declaration that it is not obligated to defend or indemnify the Red Roof Entities in the Underlying Lawsuits.

On September 26, 2023, LMFIC filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Dkt. No. [45].  All parties agreed that an "[e]xtended discovery period is needed" if the motion were denied because this case involves "[g]reater than normal volume of evidence."  Dkt. No. [43] § 2.

In January 2024, four of the Underlying Lawsuits were settled. Thereafter, in August 2024, a sixth Underlying Lawsuit was settled.[5]  Significantly, during settlement negotiations, the Red Roof Entities demanded that LMFIC settle the Underlying Lawsuits or face claims of bad faith and negligent failure to settle.  Dkt. No. [79] ¶¶ 145-48, 153-55. Against this explicit threat of bad faith, LMFIC agreed to contribute towards the settlements, pursuant to an express reservation of its right to seek recovery of the settlement payments.  *Id.*  Following resolution of the Underlying Lawsuits, this Court granted LMFIC's motion for leave to amend its complaint to add claims for reimbursement and restitution based on the settlements.

## LEGAL STANDARD

In deciding a motion to dismiss, "the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff." *Nationwide Prop. & Cas. Ins. Co. v. Hampton Ct., L.P.*, No. 1:23-CV-4726-TWT, 2024 U.S. Dist. LEXIS 87228, at *4 (N.D. Ga. May 15, 2024).  A complaint may

---

[5]  The fifth Underlying Lawsuit was dismissed.

6

survive a motion to dismiss for failure to state a claim "even if it is 'improbable' that a plaintiff would be able to prove" the facts alleged and "even if the possibility of recovery is extremely 'remote and unlikely.'" *Id.* at *3 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## ARGUMENT

### I.   Georgia Choice-Of-Law Rules Require the Application of Ohio Law to Interpreting the Policies[6]

A federal court sitting in diversity applies the choice-of-law rules of the forum state, in this case Georgia.  In this Court's decision dated August 28, 2024, this Court found that Georgia substantive law controls this dispute and rejected LMFIC's argument that Ohio law applies.  LMFIC had argued that the presumption of identity rule does not apply here because Ohio repealed the English common law in 1806. This Court found that "the Ohio legislature simply repealed a statutory provision that had explicitly adopted the common law; it did not repudiate the English common law as a whole."  Dkt. No. [73] at 5.  This Court then found that "English common law remains in force in Ohio, subject to a judge's discretion to deviate from it when necessary" and concluded that "Plaintiff has not argued that any unique Ohio

---

[6] LMFIC acknowledges that this Court previously rejected its choice-of-law argument and held that Georgia law applies. Dkt. No. [73] at 3-7.  LMFIC renews its argument to address certain findings set forth in the Court's decision and to avoid any doubt as to whether the choice-of-law argument is preserved for appeal.  The Red Roof Entities' motion must be dismissed, however, under Georgia or Ohio law.

common law would control the issues disputed in this case. Thus, Ohio is an English common law state for purposes of Georgia's choice of law analysis." *Id*. at 6.

Here, there are three reasons why this Court should deviate from Georgia law. First, Ohio law is clear that an insurer who has paid defense costs and settlement proceeds pursuant to a reservation of rights can seek to recoup those payments. *See, e.g.*, *Chiquita Brands Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 57 N.E.3d 97, 101 (Ohio Ct. App. 2015). The Red Roof Entities make no showing that this is English common law (and LMFIC is not aware that it is); by definition, therefore, it is unique Ohio common law. And consequently, Ohio law applies to this dispute under Georgia choice of law rules because there exists "unique Ohio Common law" that "would control the issues disputed in this case" regardless of whether it departed from English common law.

In this regard, Ohio courts have repeatedly emphasized that the English common law will be disregarded when it does not suit the circumstances of a particular case. *See, e.g.*, *Avellone v. St. John's Hosp.*, 135 N.E.2d 410, 418 (Ohio 1956) ("Whether the immunity doctrine from a historical standpoint is not based solidly on the common law of England should not concern this court too much. Ohio has never slavishly followed the common law as do some states."); *Lo Guidice v. Harris*, 128 N.E.2d 842, 845 (Ohio Ct. App. 1954) (citing a case in Ohio where the

English common law was not followed and explaining that "[e]ach case as it presents itself may be safely left for disposition on its own peculiar facts").

Second, applying different states' laws to a nationwide insurance policy will have untenable and inconsistent results. *United Brass Works, Inc. v. Am. Guarantee & Liab. Ins. Co*., 819 F. Supp. 465, 469 (W.D. Pa. 1992) (acknowledging the "preference that only one set of laws govern a given insurance contract, and a disapproval of the possibility that the laws of different jurisdictions might apply to different risks under the policy"), *aff'd*, 989 F.2d 489 (3d Cir. 1993). Previously, this Court found that it "is bound to apply Georgia's choice of law rules—not an outcome-based choice of law test." Dkt. No. [73] at 7. But what is unique here is that the ***Red Roof Entities have themselves argued that Ohio law applies*** because the Policies insure "risks nationwide" and it is preferable that "only one set of laws govern a given insurance contract." *See* Dkt. No. [68-26] at 10.

Third, in the Motion, the Red Roof Entities rely on Georgia law, which has been statutorily rejected in Ohio. More specifically, LMFIC has repeatedly argued that public policy considerations should bar coverage for claims based upon the Red Roof Entities' participation in sex trafficking. To avoid this result, the Red Roof Entities assert that Georgia courts "strongly support parties' freedom of contract" and, as such, public policy considerations are routinely rejected. Mot. at 9. As support for their "freedom of contract" argument, the Red Roof Entities assert that

"Georgia – unlike many states – allows coverage for punitive damages." *Id.* at 10. However, by statute, punitive damages are not insurable in Ohio. *See* Ohio Rev. Code Ann. § 3937.182(B) (prohibiting insurance coverage for punitive damages). Because Ohio statutory law is contrary to Georgia law on this point, the Policies should be interpreted under Ohio law or, alternatively, this Court should use its discretion to find that Ohio law should apply.[7]

## II. Because the Policies Do Not Afford Coverage for the *HB* Lawsuit, the Motion Should be Denied.

Although broad, the duty to defend is not without limits. Indeed, as the legal authority upon which the Red Roof Entities relies explains, "[i]f, however, the complaint 'does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit.'" *Cont'l Cas. Co. v. Winder Labs., LLC*, 73 F.4th 934, 942 (11th Cir. 2023) (citation omitted). Similarly, in *Continental Casualty Co. v. Synalloy Corp.*, 667 F. Supp. 1523 (S.D. Ga. 1983), the court explained that "[o]f course, where the complaint on its face

---

[7] LMFIC understands that this Court previously rejected LMFIC's argument that, because the Underlying Plaintiffs seek punitive damages, Ohio law should apply. At that time, this Court noted that, if the issue of insurability of punitive damages is properly before the Court at a later date, LMFIC could renew its argument. Dkt. No. [73] at 5 n.2. Here, to avoid LMFIC's public policy arguments, the Red Roof Entities argue that there is no public policy concern because Georgia permits the insurability of punitive damages. Mot. at 10. Thus, based on the Red Roof Entities' own argument, the insurability of punitive damages is now properly before this Court.

seeks recovery for injuries not covered by the policy, the insurer has no duty to defend." *Id.* at 1541. Here, the Policies do not afford coverage for the *HB* Lawsuit and, as such, there is no duty to defend.[8]

### A.    Coverage A is Not Applicable to the *HB* Lawsuit

The Insuring Agreement for Coverage A provides, in relevant part, that this insurance only applies to "bodily injury" caused by an "occurrence," which is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See, e.g.*, Dkt. No. [79-8] at 3, 8. Thus, the policy term "occurrence" "does not extend to injuries flowing from intentional acts—even if the injuries themselves were accidental." *Associated Indem. Corp. v. Hughes*, No. 4:18-CV-00201-HLM, 2019 U.S. Dist. LEXIS 111883, at *12-13 (N.D. Ga. Apr. 25, 2019); *see also Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1118 (Ohio 1996).

In the *HB* Lawsuit, HB alleges the Red Roof Entities knew about, facilitated,

---

[8] The Red Roof Entities incorrectly assert that courts routinely require insurers to defend claims of sex trafficking. Mot. at 7. As support, they rely on three decisions, which are easily distinguished. In the first, *Northfield Ins. v. Northbrook Indus., Inc.*, 2024 WL 4224628 (N.D. Ga. Sept. 16, 2024), for Coverage A, the insurer did ***not*** assert (unlike here) that the underlying plaintiff's allegations fell outside the scope of the insuring agreement and, for Coverage B, the insurer admitted (unlike here) that the underlying plaintiff alleged a "personal and advertising injury." As for the other two cases, neither decision implicates, as here, the TVPRA.

and profited from the sex trafficking at their hotels. *See, e.g.*, Dkt. No. [79-6] ¶¶ 4, 19-20, 25, 31, 61. Based upon these allegations, HB initially asserted claims for both violation of (i) § 1595 of the TVPRA; and (ii) the Georgia RICO statute. Since that time, HB has relinquished her claims based on the Georgia RICO statue. *H.B. v. Red Roof Inns, Inc., et al.*, Case No. 22-cv-01181 (N.D. Ga.), Dkt. No. [103] at 2 n.3 (dropping RICO claims). As such, the Georgia RICO claims are not relevant for coverage purposes. To the extent that this Court were to deem the Georgia RICO claims relevant for coverage purposes, which they are not, to prevail on the Georgia RICO claims, HB must allege "racketeering activity" by the Red Roof Entities to "commit any crime which is chargeable by indictment" under Georgia law. *Jane Doe 1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 728 (11th Cir. 2021). Any resulting injuries from such conduct would not be caused by an "occurrence" and, as such, Coverage A would not be applicable to any Georgia RICO claims.

Turning to the remaining TVPRA § 1595 claim, to prevail, HB must prove that the Red Roof Entities "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to [HB]; and (4) the [Red Roof Entities] knew or should have known that the venture violated the TVPRA as to [HB]." *Id.* at 723. Because any "bodily injury" resulting from the Red Roof Entities' participation in a venture with HB's traffickers is not caused by an "occurrence" Coverage A is not applicable to § 1595 claims.

More specifically, the Eleventh Circuit has held that "participation" requires a plaintiff to allege that the defendant "took part in" a "common undertaking or enterprise involving risk and potential profit."[9]  *Id*. at 725-26.  "[O]bserving something," said the Eleventh Circuit, "is not the same as participating in it."  *Id.* at 727; *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023).  More recently, denying the Red Roof Entities' motion for summary judgment in the *HB* Lawsuit, the federal district court explained that:

> The common thread in the Eleventh Circuit's opinions is a requirement that the plaintiff (i) show at least some connection between the hotel operator's and the trafficker's actions (the *common* venture) and (ii) identify what actions the operator took to advance the object of the joint undertaking (*participation* in the common venture).  The district court in *Doe (S.M.A.) v. Salesforce, Inc.* described the Eleventh Circuit's formulation of the test as a 'require[ment] that the alleged participant have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction.'" No. 3:23-CV-0195-B, 2024 WL 1337370, at *13 (N.D. Tex. Mar. 28, 2024).

*H.B. v. Red Roof Inns, Inc., et al.*, Case No. 22-cv-01181 (N.D. Ga.), Dkt. No. [158] at 16 ("*HB* Lawsuit SJ Order").  Here, HB alleges that the Red Roof Entities' actions went beyond what would be expected in the normal course of operating a hotel business; rather, as the court explained in the *HB* Lawsuit SJ Order, HB alleges that

---

[9]     LMFIC disagrees that there is a "consensus among the courts" that § 1595(a) only imposes a negligence standard. LMFIC likewise disagrees that the legal authority relied upon by the Red Roof Entities stands for that proposition.

the Red Roof Entities engaged in a common undertaking with the trafficker.

More specifically, HB alleges more than just renting rooms to sex traffickers and observing signs of trafficking on its premises. For example, HB alleges that the Red Roof Entities "called sex traffickers, including Plaintiff's traffickers, to warn them when law enforcement was present at or coming to the hotel or warning them to slow down or stop buyer traffic to a particular room in order to assist the traffickers in evading detection from other guests and the police." *See, e.g.*, Dkt. No. [79-6] ¶ 34.[10] By way of further example, HB alleges that "she witnessed one of her traffickers pay employees of the Norcross Red Roof cash in exchange for the hotel's facilitation of [her] sex trafficking by permitting the trafficking to occur at the hotel and by acting as lookouts for her traffickers." *Id.* ¶ 19. In another example, HB alleges that "[w]hen the security guards reported the obvious prostitution and drug activity to hotel employees, the security guards were told by the hotel employees to not do anything about it." *Id.* ¶ 35. As such, HB alleges that the Red Roof Entities "participated in a common sex trafficking undertaking or enterprise" with HB's traffickers. *See K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024). Such

_____

[10] The Court may take judicial notice of filings in the Underlying Lawsuits. *See, e.g.*, *Harris v. FBCS, Inc.*, No. 1:24-cv-970-MLB-JKL, 2024 U.S. Dist. LEXIS 105547, at *7-8 (N.D. Ga. June 13, 2024) (the Court could "take judicial notice of the docketed materials" in a related case as a court "may take judicial notice of facts that 'can be accurately and readily determined,' such as public records, regardless of whether those records are attached to the complaint.") (citations omitted).

conduct is fundamentally incompatible with an "occurrence" or accident.

The legal authority upon which the Red Roof Entities relies is not applicable here. For example, in *Barrs v. Auto-Owners Insurance Co.*, 564 F. Supp. 3d 1362 (M.D. Ga. 2021), the court found that the alleged event was an "accident" when "it could [not] have [been] foreseen or expected" by the insured). *Id*. at 1378. In *Liberty Corporate Capital, Ltd. v. First Metropolitan Baptist Church*, No. CV420-179, 2021 U.S. Dist. LEXIS 173411 (S.D. Ga. Sept. 13, 2021), the court found that the underlying lawsuit did not allege that the insured had "contemporaneous knowledge" of the events against the plaintiff. *Id*. at *13. By contrast, HB alleges that the Red Roof Entities *knew* about the sex trafficking, e*xpected it*, and *actively participated and profited from it*. *See* Dkt. No. [79-6] ¶¶ 4, 19-20, 25, 31, 61.

Even if the claims in the *HB* Lawsuit fell within Coverage A (and they do not), LMFIC still would have no duty to defend because the Expected or Intended Injury exclusion applies. That exclusion bars coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." *See, e.g*., Dkt. No. [79-8] at 6. Both Ohio and Georgia courts have consistently held that such an "exclusion is applicable if the insured acts with the intent *or expectation* that bodily injury occur, even if the actual, resulting injury is different either in kind or magnitude from that intended or expected." *Colonial Penn Ins. Co. v. Hart*, 162 Ga. App. 333, 335 (1982) (emphasis added); *see also Allstate Vehicle & Prop. Ins. Co.*

*v. Inabnitt*, Nos. 2021-10-094, 2021-10-098, 2022 Ohio App. LEXIS 1964, at \*32 (Ohio Ct. App. June 21, 2022).  On the face of the *HB* Lawsuit complaint, the exclusion applies to bar coverage for her TVPRA claims.  Even if this were not the case, at minimum, LMFIC is entitled to obtain discovery from the Red Roof Entities to show that the Red Roof-affiliated hotels knew about, participated in, and profited from the trafficking, and had the expectation that "bodily injury" would occur. Indeed, the parties previously agreed that, if LMFIC's motion for judgment on the pleadings (resolved by this Court as moot) were not granted, then an extended discovery period would be needed because this case is complex and involves a "[g]reater than normal volume of evidence."  Dkt. No. [43] at § 2.

In arguing that the exclusion does not apply, the Red Roof Entities make only a conclusory contention that "Red Roof is not alleged to have" "subjectively intended to cause bodily injury."  Mot. at 15.  That is both irrelevant and incorrect. First, it is irrelevant because the Expected or Intended exclusion does not simply bar intentional conduct; rather, the exclusion also applies where an insured, as here, should have expected HB's alleged injuries.  *See, e.g.*, *Colonial Penn*, 162 Ga. App. at 335; *Allstate*, 2022 Ohio App. LEXIS 1964, at \*34.  Second, it is incorrect because the Red Roof Entities *are* alleged to have directly and proximately caused HB to "suffer[] substantial physical, emotional, and psychological harm," and to have "acted with the specific intent to cause" such harm.  *See, e.g.*, Dkt. No. [79-6] ¶¶ 51,

16

99.  Third, to prevail on her TVPRA claim, HB must prove "participation" between the Red Roof Entities and her trafficker, which is more than simply observing sex trafficking.  Rather, as explained above, to satisfy the "participation" element, HB alleges, as she must, that the Red Roof Entities associated with her traffickers, facilitated her sex trafficking, and provided the traffickers the necessary venue. *Jane Doe 1*, 21 F.4th at 724-25. Thus, contrary to the Red Roof Entities' assertion, their involvement in HB's trafficking is alleged to be much more than simply having constructive knowledge of criminal activity.

### B.    Because the Underlying *H.B.* Plaintiff Does Not Allege a Personal and Advertising Injury, Coverage B is Not Applicable

For Coverage B to apply, at a minimum, HB must allege a "[p]ersonal and advertising injury," meaning one "arising out of . . . [f]alse arrest, detention or imprisonment."  *See* Dkt. No. [79-8] at 4-5.  The Red Roof Entities argue, in conclusory fashion, that "the claims asserted in the *H.B.* Suit potentially state a claim arising from her false imprisonment."  Mot. at 16.  This argument is wrong.

First, courts have repeatedly held that, where the false imprisonment is inextricably intertwined with alleged bodily injury, Coverage B is not applicable. *See Com. Union Ins. Cos. v. Sky, Inc.*, 810 F. Supp. 249, 255 (W.D. Ark. 1992) (finding no coverage for false imprisonment claim because allegations of false imprisonment were "related and interdependent" with underlying sexual harassment claim, for which there was no coverage).  Thus, any allegations that HB was detained

or falsely imprisoned are interdependent with her claims for "bodily injury" under Coverage A, which, as explained *supra*, do not implicate LMFIC's duty to defend. Consistent with this conclusion, in *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 192 (D. Mass. 2019) upon which the Red Roof Entities rely, the court found that both coverage parts cannot independently apply.

Second, any alleged "false imprisonment" must "arise out of" the Red Roof Entities' "business." Dkt. No. [79-6] at 4. The phrase "arising out of" requires a "causal connection or relationship." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 498-99 (Ga. Ct. App. 2007). In an attempt to show false imprisonment "arising out" of their business, the Red Roof Entities point to two allegations: that "[HB] was rescued" and that she was "confined and sold." Mot. at 16. But these allegations speak only to the sex traffickers' conduct, not to the Red Roof Entities' conduct. This stands in contrast with *Citizens Insurance Co. of America v. Banyan Tree Management, LLC*, 631 F. Supp. 3d 1256 (N.D. Ga. 2022), *aff'd*, No. 22-13581, 2023 WL 6319224 (11th Cir. Sept. 28, 2023), which the Red Roof Entities contend stands for the proposition that, "[s]o long as the offense took place at a Red Roof hotel in connection with a transaction in which lodging was provided," the causal connection is satisfied. Mot. at 17. There, the alleged incident "arising out of" the hotel's business was "alleged to have been committed by an alleged employee of the business who was given access to the room and [the

victim's] personal information while acting within the course and scope of employment." *Citizens Ins. Co.*, 631 F. Supp. 3d at 1278.  That cannot be said for the alleged trafficker's conduct here.

Even if Coverage B was implicated, at least two exclusions preclude LMFIC's duty to defend: the Knowing Violation of the Rights of Another exclusion and the Criminal Acts exclusion, which preclude coverage for "personal and advertising injury" that is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another" or that "aris[es] out of a criminal act committed by or at the direction of the insured," respectively.  Dkt. No. [79-8] at 4.

The Red Roof Entities contend that the Knowing Violation exclusion is not applicable because "Red Roof is not alleged to have knowingly violated the rights of H.B." nor "to have taken actions that would knowingly inflict injury on H.B." Mot. at 17-18.  This is false.  As explained above, HB alleges that, during the period she was trafficked, the Red Roof Entities engaged in a sex trafficking undertaking or enterprise with her trafficker.  According to HB, among other things, the Red Roof Entities directly facilitated her sex trafficking by serving as look-outs for HB's traffickers, alerting them to the presence of law enforcement at the hotel.  These actions demonstrate that the Red Roof Entities participated in a common venture with HB's traffickers and, as such, knowingly violated her rights.

### C.    Public Policy Bars Insurance Coverage for Sex Trafficking

Even if the Insuring Agreement covered the Red Roof Entities' conduct on its face (and it does not), LMFIC would still have no duty to defend on public policy grounds because it is "against public policy to insure against injuries intentionally inflicted." *Travelers Indem. Co. v. Hood*, 110 Ga. App. 855, 857 (Ga. Ct. App. 1964); *see also Grange Mut. Cas. Co. v. Gore*, No. CA96-08-076, 1997 Ohio App. LEXIS 1985, at *8 (Ohio Ct. App. May 12, 1997).  Sex trafficking, including the Red Roof Entities' participation in a venture with HB's traffickers, falls within the parameters of intentionally inflicted injury.  *See* Section II.A, *supra*.  As one court explained, insurance cannot provide coverage for allegations of sex trafficking because "shielding [the hotels] from the consequences of their criminal conduct would be against the safety, morals, and welfare of" the public.  *Samsung Fire & Marine Ins. Co. v. UFVS Mgmt. Co.*, No. 18-04365, 2023 U.S. Dist. LEXIS 46508, at *27 (E.D. Pa. Mar. 20, 2023), *appeal pending*, No. 23-1988 (3d Cir. June 1, 2023).

Here, HB alleges in detail that the Red Roof Entities participated in a commercial venture with her traffickers in violation of the TVPRA.  *See, e.g.*, Dkt. No. [79-6] ¶¶ 70-81.  In response, the Red Roof Entities argue that the *HB* Lawsuit's claims do not "require an intent to injure," and that it is not against public policy to provide insurance coverage for those claims.  For example, the Red Roof Entities argue that because the civil beneficiary claims under the TVPRA contain no scienter

element, they also do not require "injurious intent." Mot. at 10-11.  This is incorrect.
In *Jane Doe 1*, the Eleventh Circuit explained that, to prevail on a § 1595 claim, a
defendant must take part in a common undertaking.  21 F.4th at 727.  Thus, contrary
to the Red Roof Entities' assertion, mere negligence is not sufficient to prove a
TVPRA violation, there must be (as here) allegations that a defendant took part in a
common undertaking involving risk or profit.  *Id.*

## II.     Resolution of Certain of the Underlying Lawsuits Has Not Rendered this Action Moot.

### A.     There is a Live Dispute Between the Parties

The Red Roof Entities assert that, for the Underlying Lawsuits that were
settled, this action is moot with respect to those lawsuits.  Mot. at 5-6.  Stated
differently, the Red Roof Entities argue that, because the lawsuits have resolved,
questions regarding LMFIC's duty to indemnify are now moot.  The Red Roof
Entities are wrong: regardless of any settlement, there remains a live dispute between
the parties as to LMFIC's ability to seek reimbursement for defense expenses paid
and settlement contributions made in connection with those lawsuits.

Trying to have it both ways, the Red Roof Entities argue that, until the *HB*
Lawsuit is resolved, LMFIC's duty to indemnify is not ripe.[11]  As support for this

---

[11] As discussed *infra,* for the *HB* Lawsuit, because there is no duty to defend, there
is no duty to indemnify. *Hous. Specialty Ins. Co. v. Five Paces Inn Co.*, 823 F. App'x
897, 898 (11th Cir. 2020) (applying Georgia law); *Granger v. Auto-Owners Ins.*, 40

proposition, the Red Roof Entities rely on legal authority holding that the duty to indemnify is only ripe once the underlying lawsuit is resolved.  *See, e.g.*, *Kinsale Ins. Co. v. Venetian Hills Apartments, LLC*, No. 1:21-cv-03214-LMM, 2022 U.S. Dist. LEXIS 238750, at *10 (N.D. Ga. Apr. 29, 2022) ("Unless and until a judgment or settlement is entered against Defendant, this Court has no jurisdiction over Plaintiff's declaratory judgment claim on duty to indemnify.") (citations omitted). Thus, based on the legal authority cited by the Red Roof Entities, this Court's decision on LMFIC's ability to recoup its costs (which in turn requires a determination that no coverage exists) is ***only*** ripe for consideration now.  This action therefore does not seek "an impermissible advisory opinion" (Mot. at 5).

The Red Roof Entities effectively argue that an insurer can never challenge the insurability of a claim.  According to them, (i) a declaratory judgment action on an insurer's duty to indemnify is not ripe until settlement or resolution of the Underlying Lawsuits but (ii) settlement or resolution then renders the declaratory judgment action moot.  The Red Roof Entities arguments would make it impossible for an insurer to ever challenge coverage and would encourage an insurer to simply deny coverage and then litigate the applicability (or not) of coverage.

---

N.E.3d 1110, 1115 (Ohio 2015).  For this reason, resolution of the duty to indemnify the *HB* Lawsuit is ripe now.

### B.    LMFIC Has a Right to Seek Reimbursement or Restitution

There is no dispute that, under Ohio law, LMFIC has a right to reimbursement for amounts paid to defend and indemnify an insured for uncovered claims. *See, e.g.*, *Chiquita Brands*, 57 N.E.3d at 101.  In the event this Court applies Georgia law, LMFIC still has a right to reimbursement for amounts paid to indemnify an insured against uncovered claims.  To avoid this result, the Red Roof Entities argue that LMFIC cannot seek reimbursement because (i) there is binding legal authority precluding such relief; and (ii) any settlement contributions constitute a voluntary payment.  The Red Roof Entities are incorrect on both fronts.

First, the Red Roof Entities assert that *Winder* is binding upon this Court and assert—under *Winder*—that neither LMFIC's claim for reimbursement of defense costs nor its claim for reimbursement of settlement costs is cognizable.  Mot. at 19-23.  Contrary to their assertion, *Winder* did not address whether an insurer can recover amounts paid for settlement under a reservation of rights if it is determined that coverage does not exist.  In fact, the *Winder* panel's rationale strongly implies that an insurer can recoup settlement payments under Georgia law.  In *Winder*, the court predicted that the Georgia Supreme Court would find that there is no right to recoup defense costs because "if the duty to defend required insurers to mount a defense but the defense was widely reimbursable upon a court's determination that no ongoing duty to defend exists, the duty to defend would simply become the duty

to indemnify." 73 F.4th at 949. The court concluded that "wide-ranging reimbursement is necessarily inappropriate in a system—like Georgia's—that is predicated on a broad duty to defend *and a more limited duty to indemnify*." *Id.* (emphasis added) (citations omitted). Thus, *Winder* reached its conclusion precisely because the duty to defend is broader than and different from the duty to indemnify. The clear implication of the *Winder* court's rationale is that, in contrast to defense costs, there would be the right to recoup a settlement payment that involves the "more limited duty to indemnify."

Second, the Red Roof Entities' assertion that Georgia's voluntary payment doctrine bars LMFIC from recovering its settlement payments is equally unavailing and does not compel dismissal. In contributing toward settlement amounts for certain of the Underlying Lawsuits, LMFIC complied with the path laid out for insurers by the Georgia Supreme Court. Specifically, in *Hoover v. Maxum Indemnity Co.*, 291 Ga. 402 (2012), the Georgia Supreme Court explained that when an insurer is presented with notice of a claim and demand for a defense, the "proper and safe course of action" is to "enter upon a defense under a reservation of rights and then proceed to seek a declaratory judgment in its favor." *Id.* at 405 (citation omitted). This is precisely what LMFIC did here. The Red Roof Entities' contention that, having followed this course of action, LMFIC has no ability to challenge the availability of insurance coverage in a non-illusory way turns the approach endorsed

by *Hoover* on its head.  For the Red Roof Entities to argue that LMFIC cannot state a claim for reimbursement of the settlement costs under these circumstances— having followed the path laid out for insurers by the Georgia courts, as demanded by the Red Roof Entities themselves—would be effectively depriving LMFIC of any ability to challenge the availability of insurance coverage whatsoever.

Moreover, this Court previously has found that an insurer's settlement payment is not considered a voluntary payment.  *See Hous. Enter. Ins. Co. v. AmTrust Ins. Co.*, 212 F. Supp. 3d 1330, 1343-44 (N.D. Ga. 2016) (May, J.).  While *AmTrust* was rendered in the context of a co-insurer arguing that the payment was voluntary, rather than an insured arguing the same, the same principle applies.  LMFIC made its payment pursuant to a reservation of rights after filing a declaratory judgment action to seek a ruling from this Court with respect to those rights.  In this context, the settlement payment made by LMFIC cannot be viewed as "voluntary."

In addition, LMFIC asserts claims for restitution which the Red Roof Entities simply reject as not being cognizable under Georgia law.  However, Ohio law allows insurers to seek repayment of defense and settlement costs under a theory of restitution.  To the extent Ohio law applies, which it does, these claims should be permitted to proceed.

## CONCLUSION

The Red Roof Entities' motion to dismiss should be denied.

Respectfully submitted, this 1st day of November, 2024.

By its attorneys,

*/s/ Andrew Rosenzweig*

Andrew Rosenzweig
Georgia Bar No. 372812
Andrew.Rosenzweig@nelsonmullins.com
Nelson Mullins Riley & Scarborough
LLP
201 17th Street NW
Suite 1700
Atlanta, GA 30363
Tel: (404) 332-6110

*Of Counsel*:
Nancy D. Adams (*pro hac vice*)
NDAdams@mintz.com
Alec J. Zadek (*pro hac vice*)
AZadek@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000

Alexandra Gallo-Cook (*pro hac vice*)
lgallocook@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
919 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 935-3000

*Attorneys for Plaintiff*

26