# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSUR-ANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:23-cv-02047-LMM |
| RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, FMW RRI NC, LLC, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., T.H., H.B., and K.M. | ) ) ) ) ) | |
| Nominal Defendants. | ) | |

**DEFENDANTS RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, AND FMW RRI NC, LLC'S <u>REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

Shattuck Ely
Jonathan Spratling
FELLOWS LABRIOLA LLP
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303

*Attorneys for Defendants Red Roof Inns, Inc.,*
*Red Roof Franchising, LLC, RRI West*
*Management, LLC, and FMW RRI, LLC*

## I.    INTRODUCTION

Liberty's Opposition (Dkt. No. 86) provides no compelling reason for the Court to deny Red Roof's Motion to Dismiss. Liberty's claims are not supported by Georgia law and dismissal is appropriate.

Dismissal of Liberty's claims related to the pending *H.B.* Suit is proper because Liberty owes a duty to defend. The TVPRA claim asserted against Red Roof does not require an intent to cause harm and consistent with the case law interpreting the TVPRA, H.B. alleges that Red Roof had constructive knowledge of her trafficking and "should have known" that its operation of the Norcross Red Roof violated the TVPRA. Because these allegations at least arguably trigger coverage, Liberty is required to defend.

Dismissal of Liberty's claims related to the settled Underlying Lawsuits is also appropriate. Its requests for declaratory judgment are moot. As for its reimbursement claims, Liberty concedes that Georgia law does not recognize its claim for reimbursement of defense costs. And its attempts to limit the holding of *Winder* to reimbursement of defense costs are unpersuasive. An insurer cannot unilaterally create a new right of reimbursement that does not exist in its policy.

## II.    ARGUMENT AND CITATION TO AUTHORITY

**A.    Georgia law applies and Liberty's request for the Court to reconsider its prior choice of law ruling is deficient.**

Although not styled as a motion for reconsideration, Liberty's Opposition asks the Court to reverse its August 22, 2024 decision that Georgia law controls the parties' dispute. *See* Dkt. No. 73, pp. 3-7. Liberty's request for reconsideration violates this Court's local rules and is legally unsupported.

Under Local R. 7.2(E), motions for reconsideration should only be requested when "absolutely necessary" and must be filed within 28 days of the order. *See* LR 7.2(E), NDGa. Liberty's request fails to comply with either requirement. Its request comes more than 60 days after the Court's choice-of-law ruling. And absolute necessity arises only where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003). A request for reconsideration is not proper where, as here, it is used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." *Id.* at 1259.

In any event, the Court's choice of law ruling was correct, and the three reasons offered by Liberty do not justify the application of Ohio law. *First*, as addressed in Red Roof's prior briefs, the presumption of identity doctrine does not require that the foreign state's common law be identical to the English common law. *Second,* as

the Court already noted in its August 22nd Order, Red Roof's arguments in connection with a different state's choice of law rules are not relevant here. *Third,* Red Roof does not rely on any Georgia law that has been statutorily rejected in Ohio. As the Court already explained in its August 22nd Order, it is not being asked to decide the insurability of punitive damages and thus the Ohio statute on punitive damages has no bearing here.[1]

## B.   Liberty owes a duty to defend the *H.B.* Suit under Coverage A.

Liberty's Coverage A arguments hinge on its contention that a violation of 18 U.S.C. § 1595(a) requires an injurious intent.[2] But Liberty fails to provide the Court with any legal support for this position. The only case cited by Liberty, *Jane Doe 1 v. Red Roof Inns, Inc.*, directly contradicts its argument, with the Eleventh Circuit holding that "a scienter requirement [] ***does not appear*** in Section 1595(a)…." 21 F.4th 714, 724 (11th Cir. 2021) (emphasis added). The Eleventh Circuit made clear in *Jane Doe 1* that "the franchisors may be liable under the TVPRA if they have

---

[1]  Liberty's argument in footnote 7 that "the Red Roof Entities argue that there is no public policy concern because Georgia permits the insurability of punitive damages" is incorrect. The insurability of punitive damages is ***not*** currently at issue in this case and *Greenwood Cemetery, Inc. v. Travelers Indem. Co.,* 238 Ga. 313, 316 (1977) was only cited in Red Roof's Brief as one of several examples of Georgia courts' reluctance to rely on public policy to avoid coverage under an insurance policy.

[2]  Liberty's flawed characterization of the TVPRA is fatal to many of its arguments, including: (1) the existence of an "occurrence" under Coverage A; (2) the application of the expected or intended injury exclusion under Coverage A; (3) the application of exclusions under Coverage B; and (4) its public policy argument.

either actual *or constructive knowledge* that the venture in which they participated and from which they benefited violated the TVPRA as to the Does." *Id.*, at 725 (emphasis added).

Liberty devotes much of its Opposition focusing on Section 1595(a)'s requirement that the defendant participate in a common enterprise or venture with H.B.'s traffickers. But the participation in such a venture is not the same as an intent to injure or expectation of injury. *See G.G. v. Salesforce.com, Inc.,* 76 F.4th 544, 554 (7th Cir. 2023) ("as the Eleventh Circuit has acknowledged, the alleged venture can be a '*commercial* venture[ ]' like running or expanding a business.") (emphasis in the original). The defendant is not required to have actual knowledge that the venture violates the TVPRA, much less an intent to injure. *Jane Doe 1*, 21 F.4th at 725.

The cases finding that the TVPRA imposes a negligence standard are legion.[3] Liberty's only response to these decisions and a federal court's characterization of the "consensus among courts" on the issue is that it "disagrees." Opposition, at n. 9.[4] But Liberty's disagreement with the overwhelming weight of authority is not a sufficient basis for the Court to strip Red Roof of its insurance coverage.

---

[3]  *See G.G. v. Salesforce.com, Inc.,* 76 F.4th 544, 555 n. 9 (7th Cir. 2023) (collecting cases that state § 1595(a) imposes a negligence standard).

[4]  *See S.M.A. v. Salesforce, Inc.,* 2024 WL 1337370, at *15 (N.D. Tex. Mar. 28, 2024) ("the consensus among courts [is] that § 1595(a) imposes a negligence standard.").

Liberty also makes little effort to explain why the Court should depart from the many decisions requiring insurers to defend TVPRA claims against hotels. Relegated to a footnote, Liberty asks the Court to ignore *Mt. Hawley Ins. v. Lincoln Hotels, LLC*, 2021 WL 1351858, at *2 (N.D. Ga. Mar. 15, 2021) because it did not implicate the TVPRA. *See* Opposition, at n. 8. But this purported distinction is incorrect: the underlying suits against the insured in *Lincoln Hotels* did allege violations of the TVPRA. *See* 20-cv-04444, Dkt. No. 1-5, ¶¶ 101-111; Dkt. No. 1-6, ¶¶ 102-112. And Liberty can distinguish *Northfield Ins. v. Northbrook Indus., Inc.*, 2024 WL 4224628 (N.D. Ga. Sept. 16, 2024) only on the basis that Liberty has refused to concede the basic coverage principles that the insurer there acknowledged. Other decisions requiring insurers to defend TVPRA claims against hotels are not addressed by Liberty at all. *See Ricchio v. Bijal, Inc.,* 424 F. Supp. 3d 182, 194 (D. Mass. 2019); *Starr Indem. & Liab. Co. v. Choice Hotels Int'l, Inc.*, 2021 WL 2457107, at *7 (S.D.N.Y. June 16, 2021).

To distract from the TVPRA's legal standard, Liberty highlights the most disturbing allegations in the *H.B.* Complaint. But Liberty ignores the far more numerous allegations of negligent conduct. It is common for lawsuits to allege both intentional and negligent conduct and when presented with such a suit, the insurer must defend the entire lawsuit. *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012) (under Georgia law, "where an insurer has a duty to

6

defend a single claim the complaint presents, it has a duty to defend all the claims asserted"). The Restatement includes an example of this very scenario:

> Insured is sued for bodily injury sustained during a fight in a bar. The complaint contains two counts. In the first count, the plaintiff alleges that Insured intentionally assaulted the plaintiff. In the second count, the plaintiff alleges that Insured negligently struck the plaintiff on the head. Insured's homeowner's insurer investigates the claim and determines, based on reliable witnesses, that Insured attacked the plaintiff with a wooden club. Nevertheless, the insurer has a duty to defend because count two in the complaint sets forth a covered legal theory.

RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 13 (2019).

In *Landmark Am. Ins. Co. v. Khan,* the Georgia Court of Appeals confirmed that an insurer must defend when the allegations against the insured included both intentional, criminal conduct and negligence. 705 S.E.2d 707, 711–12 (Ga. App. 2011). The underlying plaintiff in *Khan* sued the insured nightclub for assault and battery, alleging that the insured ordered and directed its employees to assault the underlying plaintiff by shooting him six times. *Id.* at 708–09. The underlying plaintiff also asserted a separate claim that the insured was negligent for failing to provide adequate security from physical attacks at its business location. *Id.* Even with allegations of intentional, criminal conduct—including attempted murder, aggravated assault, and aggravated battery—the Court held the insurer owed a duty to defend. *Id.* at 712. Finding an assault and battery exclusion inapplicable, the Court found there was, arguably, a set of facts where the injury to plaintiff was not excluded. *Id.*

7

at 711–12. Because the underlying plaintiff had a *potential* to recover damages without falling under the exclusion, a duty to defend existed. *Id.*

Like the insurer in *Khan*, Liberty asks the Court to shut its eyes to the negligence allegations against Red Roof. The duty to defend is not based on the most egregious allegations of a complaint, but on whether ***any*** set of facts alleged could be covered. *Khan*, 705 S.E.2d at 709.[5]

## C.    Liberty owes a duty to defend the *H.B.* Suit under Coverage B.

Coverage B provides a separate and independent basis for Liberty's duty to defend. H.B. alleges the same personal injuries claimed by the plaintiff in *Northbrook Indus.*: "substantial...emotional[ ] and psychological harm[,]" and "mental and emotional pain and suffering." 2024 WL 4224628, at *10; Dkt. No. 79-6, ¶¶ 90, 104. As in *Northbrook Indus.*, H.B.'s complaint can thus be "reasonably read as alleging non-physical harms that she suffered independent of abuse and molestation." *Id.*, at *10. Because these alleged harms are separate from the bodily injuries alleged,

---

[5] Contrary to Liberty's contention, no discovery is needed to determine Liberty's duty to defend because the Court's analysis is limited to the underlying complaint and insurance policies. *See Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407–08 (2012). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Id.* Discovery will thus have no impact on Liberty's duty to defend.

Liberty's reliance on *Com. Union Ins. Cos. v. Sky, Inc.*, 810 F. Supp. 249, 255 (W.D. Ark. 1992) is misplaced.

Equally unsupported is Liberty's contention that H.B.'s alleged false imprisonment did not "arise out of" Red Roof's business. H.B. alleges she was confined and held against her will at the Norcross Red Roof. Applying Georgia's broad interpretation of "arising out of", these allegations suffice. Contrary to Liberty's contention, the holding of *Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC* is not limited to situations in which an employee of the insured committed the offense. 631 F. Supp.3d 1256, 1278 (N.D. Ga. 2022). In fact, the first three causal connections identified by the *Banyan Tree* court apply equally here:

> In this case, there are numerous causal connections between the alleged offenses that caused Jane Doe's claimed injuries and Banyan and Albany's business; namely: (1) the alleged offense of surreptitiously filming Jane Doe in her bathroom occurred during, and as a consequence of the transaction where Banyan and Albany provided lodging to Jane Doe for remuneration as part of their business; (2) the Incident occurred at the Hampton Inn run by Banyan and owned by Albany by a paying patron; (3) the victim was a paying patron of the business; and (4) the perpetrator is an alleged employee of the business who was given access to the room and Jane Doe's personal information while acting within the course and scope of employment.

*Id.*, at 1278.

## D. Public policy does not bar coverage here.

Liberty's public policy arguments fail for the same reason as its Coverage A arguments: a civil beneficiary claim under the TVPRA does not involve an injurious

intent. The only Georgia public policy identified by Liberty is the prohibition of insurance coverage for "injuries intentionally inflicted." *See Travelers Indem. Co. v. Hood*, 110 Ga. App. 855 (1964). As discussed above, H.B.'s civil beneficiary claim under the TVPRA contains no scienter element, much less a requirement of injurious intent.

A review of *Hood* confirms that public policy does not bar coverage here and dismissal is appropriate. The Georgia Court of Appeals acknowledged in *Hood* that the insured's racing on a public highway was an "intentional act in reckless disregard of the safety of others, and is prohibited by the criminal as well as the civil law…." 140 S.E.2d 68, 70 (Ga. App. 1964). Yet the Court of Appeals found that public policy did ***not*** bar insurance coverage for the injuries caused by the insured's intentional act. As here, "[t]he fallacy of the [insurer's] argument lies in the distinction between *intentional act* and *intentional injury*." *Id.*, at 70 (emphasis in the original). If injuries caused by an insured's intentional highway racing are insurable, so are alleged injuries caused by a hotel's participation in a venture that it should have known violated the TVPRA.[6]

---

[6] Liberty's reliance on *Samsung Fire & Marine Ins. Co. v. UFVS Mgmt. Co.,* 2023 U.S. Dist. LEXIS 46508 (E.D. Pa. Mar. 20, 2023) to support its public policy argument is also unpersuasive. The *UFVS* decision—currently on appeal to the 3rd Circuit—has no bearing here even if affirmed. The decision is based on Pennsylvania public policy and involves Pennsylvania's Human Trafficking statute that contains a scienter requirement not found in the TVPRA.

**E.     Liberty's claims for declaratory relief on the six resolved Underlying Lawsuits are moot and Liberty has no valid claim for reimbursement.**

Liberty's claims related to the six resolved Underlying Lawsuits should also be dismissed. Its requests for declaratory relief on those lawsuits are now moot and it cannot state a valid claim for reimbursement.

Because there is no declaration that this Court could provide that would have any bearing on the parties' future conduct for the six resolved Underlying Lawsuits, Liberty's claims for declaratory judgment are moot. *See Twin City Fire Ins. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 979 (11th Cir. 2015). Liberty's Opposition misconstrues Red Roof's mootness argument to also apply to its reimbursement claims. To be clear, Red Roof does not seek dismissal of Liberty's claims for reimbursement because they are moot, but because they are not legally cognizable claims under Georgia law.

Liberty concedes that Georgia law does not recognize a claim for reimbursement of defense costs but asks the Court to apply a different rule to its claims for reimbursement of settlements. Such relief has never been granted by a Georgia court and Liberty has offered no reason why this Court should be the first. Nor has Liberty offered a valid reason why Georgia's voluntary payment doctrine does not bar its claims. Its reimbursement claims should therefore be dismissed.

11

To begin, Liberty's Opposition fails to address the decisions from this District that have found that an insurer has no right to reimbursement of a settlement.[7] Instead, Liberty focuses on the Eleventh Circuit's decision in *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934 (11th Cir. 2023). But Liberty's description of *Winder* is incomplete and disregards the bases of the Eleventh Circuit's decision that apply equally to settlements. The ultimate conclusion in *Winder* applies equally here: "While insurers can certainly contract for a right to reimbursement, they cannot do so in a subsequent reservation of rights after a reimbursementless bargain has been struck." *Id.,* at 950. This is precisely what Liberty is seeking to do here: obtain reimbursement through a subsequent reservation of rights when its policy contains no such right. Georgia law does not recognize such a claim and there is no reason for the Court to depart from *Almassud* and *Twin City* (and the majority rule). *See* RESTATEMENT OF THE LAW OF LIABILITY INSURANCE, § 25 (Am. L. Inst. 2019).

Finally, with respect to the voluntary payment doctrine, Liberty fails to identify any exception to O.C.G.A. § 13-1-13 that applies. Nor does Liberty address the decisions from this District that have applied the doctrine as a bar to claims by an insurer against its insured for reimbursement of settlements. Instead, Liberty asks for its voluntary payment to be excused because it followed the "proper and safe

---

[7] *See, e.g., Am. Fam. Ins. v. Almassud*, 522 F. Supp. 3d 1263 (N.D. Ga. 2021); *Twin City Fire Ins. v. Hartman, Simons & Wood, LLP*, 2017 WL 11497779, at *7 (N.D. Ga. Feb. 28, 2017).

course of action" set forth in *Hoover* by "enter[ing] upon a defense under a reserva-

tion of rights and then proceed[ing] to seek a declaratory judgment in its favor."

Opposition, at p. 24. But *Hoover* has nothing to do with an insurer's settlement or

the voluntary payment doctrine and does not sanction an insurer suing its own in-

sured for reimbursement of a settlement it voluntarily paid.[8]

Lacking legal support for its claims, Liberty concludes with an equitable plea,

contending that dismissal here would leave it with "no ability to challenge the avail-

ability of insurance coverage…." Opposition, at p. 24. But this argument lacks merit.

As Liberty's Opposition acknowledges, Georgia law allows an insurer to challenge

coverage for an underlying suit by defending under a reservation of rights and pur-

suing a declaratory judgment on its coverage obligations. Liberty began this course

of action by filing this suit, but then opted to settle the *W.K.* and *Jane Does 1-4* Suits

before it received any ruling.[9] Nothing required Liberty to settle or prevented Liberty

---

[8] The only other case cited by Liberty—*Housing Enterprise Ins. Co. v. AmTrust Ins. Co. of Kansas, Inc.*—does not support Liberty's claim. 212 F. Supp. 3d 1330, 1344 (N.D. Ga. 2016). *Housing Enterprise* involved an equitable contribution claim be-tween two insurers that owed coverage for the same loss. Here, however, Liberty contends that it never owed coverage at all. And because this case involves a claim by an insurer against its own insured (rather than another insurer that *also* owed coverage), it does not implicate the same concern of "permit[ting] a co-insurer which disavowed its liability and refused to perform its obligations to the insured to escape its duties without injury." *Id*., at 1344.

[9] Red Roof notes that Liberty waited more than three years after the filing of the *Jane Does 1-4* Suits (and nearly two years after the filing of the *W.K.* Suit) before it brought this action for declaratory relief.

from waiting on a ruling on its coverage obligations. Liberty chose instead to settle the *W.K.* and *Jane Does 1-4* Suits, thereby protecting itself from potential liability and avoiding its ongoing costs of defense. Liberty's decision to settle was a rational choice considering the exposure it faced, but it does not justify a claim against Red Roof to recover those voluntary payments. This course of action is not sanctioned by *Hoover* or any other Georgia authority.

## III.   CONCLUSION

Because Liberty owes a defense, its claims for declaratory relief on the *H.B.* Suit should be dismissed. Liberty's declaratory judgment claims for the six resolved Underlying Lawsuits are moot and should also be dismissed. Finally, Liberty has no cognizable claims for reimbursement and therefore Counts X through XVII of its Second Amended Complaint should also be dismissed with prejudice.

Respectfully submitted, this 15th day of November 2024.

FELLOWS LABRIOLA LLP

/s/ Shattuck Ely
Shattuck Ely
Georgia Bar No. 246944
tely@fellab.com
Jonathan Spratling
Georgia Bar No. 358001
jspratling@fellab.com

Peachtree Center
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200

14

*Attorneys for Defendants Red Roof Inns,*
*Inc., Red Roof Franchising, LLC, RRI West*
*Management, LLC, and FMW RRI, LLC*

## CERTIFICATE OF FONT AND POINT SELECTION

Undersigned counsel hereby certifies, under LR 7.1(D), NDGa, that the fore-going was prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved in LR 5.1, NDGa.

*/s/ Shattuck Ely*
Shattuck Ely

## **CERTIFICATE OF SERVICE**

I certify that this day, I electronically filed the foregoing using the Court's

CM/ECF system, which will send email notification to all counsel of record.


Respectfully submitted, this 15th day of November 2024.


_/s/ Shattuck Ely_____
Shattuck Ely