IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 1:23-cv-02047-LMM |
| RED ROOF INNS, INC. *et al.*, | : : : | |
| Defendants. | : : | |

# ORDER

This case comes before the Court on Defendants' Motion to Dismiss [81]. After due consideration, the Court enters the following Order.

## I.   BACKGROUND

This case concerns Plaintiff's obligations as the Red Roof Defendants'[1] insurer. The nominal Defendants, seventeen individuals, sued the Red Roof Defendants in seven underlying lawsuits, alleging that the Red Roof Defendants violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). See e.g., Dkt. No. [79-1]. Specifically, the nominal Defendants

---

[1] Defendants Red Roof Inns, Inc.; Red Roof Franchising, LLC; RRI West Management, LLC; and FMW RRI NC, LLC are related entities that have filed this Motion to Dismiss [81]. Additionally, Defendant H.B. joined in the filing of this Motion. For simplicity, the Court's Order will refer to the moving parties together as "the Red Roof Defendants" unless specifically referring to Defendant H.B.

alleged that the Red Roof Defendants profited from sex trafficking at Red Roof hotels and knew or should have known about the trafficking. Id. ¶¶ 312–30. In the current case, Plaintiff filed its original Complaint, seeking a declaratory judgment that it has no duty to defend or indemnify the Red Roof Defendants in the underlying lawsuits. Dkt. No. [1] ¶ 4.

Since this case was originally filed, five of the underlying lawsuits have settled, and another was dismissed, which leaves only Defendant H.B.'s underlying claim remaining against the Red Roof Defendants. Dkt. No. [69-1] at 5–6; Dkt. No. [75] at 2. Because of these developments, Plaintiff filed amended complaints to add claims for reimbursement of its defense costs and settlement payments for the underlying lawsuits that were resolved. Dkt. Nos. [74, 79]. The Red Roof Defendants and Defendant H.B. now move to dismiss Plaintiff's Second Amended Complaint [79], contending that the parties' insurance policy provides coverage for the underlying lawsuits and that the claims for reimbursement are subject to dismissal. See Dkt. No. [81].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

## III.  DISCUSSION

In its Second Amended Complaint, Plaintiff seeks a declaration that it has no duty to defend or indemnify the Red Roof Defendants in the underlying lawsuits. See Dkt. No. [79]. Additionally, Plaintiff seeks reimbursement of the defense and settlement costs for the resolved suits. Id. The Red Roof Defendants move to dismiss Plaintiff's Second Amended Complaint, arguing that: (A) Plaintiff's declaratory relief claims regarding the resolved lawsuits are now moot; (B) Plaintiff's duty-to-indemnify claim for Defendant H.B.'s suit is not yet

3

ripe; (C) the parties' insurance policy requires Plaintiff to defend the Red Roof Defendants in Defendant H.B.'s underlying lawsuit; and (D) Plaintiff has no right to reimbursement under Georgia law. See Dkt. No. [81-1]. Plaintiff opposes each of these arguments, Dkt. No. [86], and the Court addresses the parties' arguments below.[2]

### A. Resolved Underlying Lawsuits

Counts I through VII of Plaintiff's Second Amended Complaint seek a declaration that Plaintiff does not have a duty to defend or indemnify the Red Roof Defendants in the underlying lawsuits. Dkt. No. [79] ¶¶ 157–252. As stated, six of the seven suits have been resolved and are no longer pending. Dkt. No. [75] at 2; Dkt. No. [69-1] at 2. Because they are no longer pending, the Red Roof Defendants argue that Plaintiff's declaratory relief claims regarding these suits are now moot. Dkt. No. [81-1] at 8–9. Plaintiff disagrees, contending that there is a live dispute regarding Plaintiff's ability to seek reimbursement for its defense expenses and settlement contributions. Dkt. No. [86] at 26–27. The Court agrees with the Red Roof Defendants and finds that these claims are subject to dismissal.

---

[2] Plaintiff first argues that Georgia's choice-of-law rules require the application of Ohio law to interpret the insurance policies. Dkt. No. [86] at 12–15. The Court previously rejected this argument and held that Georgia law applies. See Dkt. No. [73] at 3–7. Plaintiff attempts to renew its argument in this motion, but the Court declines to consider it, because Plaintiff's argument only seeks "to present the court with arguments already heard and dismissed . . . to test whether the court will change its mind." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003). Thus, the Court will apply Georgia law when interpreting the policies.

"The federal courts are confined by Article III of the Constitution to adjudicating only actual 'cases' and 'controversies.'" Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999). Consistently, "the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an 'actual controversy.'" Id. at 1347 (citing Emory v. Peeler, 756 F.2d 1547, 1551–52 (11th Cir. 1985)). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Malowney, 193 F.3d at 1346 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). Thus, for the Court to have jurisdiction to issue a declaratory judgment in this case, Plaintiff must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future.

The Court finds that Plaintiff's claims for declaratory relief in Counts I through V and VII are now moot. In Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, 609 F. App'x 972, 979 (11th Cir. 2015), the Eleventh Circuit held that an insurer's "declaratory judgment claim plainly became moot as soon as [the insurer] paid the $10 million settlement." Specifically, the court found that any "declaration could not have had any bearing on the parties' future conduct" and thus, there was no live controversy for the court decide. Id. The same is true here. Plaintiff seeks a declaration that it is entitled to recoup the settlement that

was already paid. See e.g., Dkt. No. [79] ¶ 182. This does not involve adjudication of the parties' future conduct and thus renders these specific declaratory judgment claims moot. See Encompass Home & Auto Ins. Co. v. Luke, No. 4:21-CV-181, 2023 WL 3105090, at *4 (S.D. Ga. Apr. 26, 2023) ("The Eleventh Circuit has recognized that the settlement of a claim moots an earlier declaratory judgment action brought by an insurer to clarify its duties with respect to that claim."); Travelers Prop. Cas. Co. of Am. v. TT Club Mut. Ins. Ltd., No. 4:19-cv-231, 2022 WL 988001, at *5 (S.D. Ga. Mar. 31, 2022) (holding that the "[insurer's] claim was rendered moot as soon as it made payments towards the Settlement"). Thus, the Court agrees with the Red Roof Defendants that Plaintiff's claims regarding the settled suits—Counts I through V and VII—are moot and subject to dismissal.[3] The Court also holds that dismissal is appropriate for Plaintiff's general declaratory judgment claims—Counts VIII and IX—to the extent they seek declaratory relief regarding the underlying suits for Jane Does 1–4, W.K., and K.M.

### B. Duty to Indemnify

Next, the Red Roof Defendants argue that Plaintiff's duty-to-indemnify claim for Defendant H.B.'s suit is not yet ripe, because the underlying lawsuit is still ongoing. Dkt. No. [81-1] at 9–10. Specifically, the Red Roof Defendants contend that, without a judgment or settlement in the underlying action, there is

---

[3] The holding in this section is inapplicable to Count VI, because Defendant H.B.'s underlying claims have not yet been resolved.

no liability for Plaintiff to indemnify. Id. Plaintiff responds by arguing that, because the duty-to-defend claim is ripe, then the duty to indemnify is also ripe. Dkt. No. [86] at 21–22 n.11.

The Court agrees with the Red Rood Defendants. "Disputes related to an insurer's duty to indemnify are typically not ripe until liability is established in the underlying action." Am. Fam. Ins. Co. v. Almassud, 413 F. Supp. 3d 1292, 1300 (N.D. Ga. 2019) (citing J.B.D. Constr., Inc. v. Mid-Continent Cas. Co., 571 F. App'x 918, 927 (11th Cir. 2014)); see also Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc., 766 F. App'x 768, 770 (11th Cir. 2019) (holding that the "duty to indemnify . . . is not ripe for adjudication until the underlying lawsuit is resolved"). Unless and until a judgment or settlement is entered, the Court has no jurisdiction over Plaintiff's declaratory judgment claim insofar as it relates to the duty to indemnify. See Delacruz Drywall Plastering & Stucco, Inc., 766 F. App'x at 770; Almassud, 413 F. Supp. 3d at 1301 ("Ripeness, as an Article III doctrine, ultimately 'goes to whether [a] district court had subject matter jurisdiction to hear the case.'" (quoting Dig. Props., Inc. v. City of Plantation, 121 F.3d 586, 591 (11th Cir. 1997))).

Despite Plaintiff's contention, "the duty to defend an insured is a separate and independent from the obligation to indemnify." Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998) (citing Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc., 490 S.E.2d 374, 376 (Ga. 1997)). Additionally, Eleventh Circuit precedent demonstrates that, unlike the duty to indemnify,

7

"[d]uty to defend claims . . . are ripe prior to the adjudication of the underlying suit." Nautilus Ins. Co. v. Captain Pip's Holdings, LLC, No. 24-12440, 2025 WL 2111805, at *2 (11th Cir. July 29, 2025) (citing James River Ins. v. Rich Bon Corp., 34 F.4th 1054, 1058 (11th Cir. 2022)). Therefore, the Court agrees with the Red Roof Defendants that, because Defendant H.B.'s underlying suit is still pending, Plaintiff's duty-to-indemnify claim is not yet ripe, and Counts VI, VIII, and IX are subject to dismissal to the extent they seek relief regarding Defendant H.B.'s underlying claims.

### C. Duty to Defend

Third, Plaintiff's Second Amended Complaint alleges that the parties' insurance policy does not afford coverage for Defendant H.B.'s lawsuit, and thus, Plaintiff has no duty to defend the Red Roof Defendants. Dkt. No. [79] ¶¶ 227–39. Specifically, Plaintiff contends that Defendant H.B.'s underlying complaint did not allege (1) a bodily injury caused by an occurrence or (2) an offense resulting in a "personal and advertising injury." Id. ¶¶ 230–35. Additionally, Plaintiff claims that public policy bars insurance coverage for the Red Roof Defendants' alleged violations of the TVPRA. Id. ¶¶ 253–65. The Red Roof Defendants disagree and contend that Defendant H.B.'s claims are at least potentially covered under the policies, and thus, Plaintiff is required to defend them in the underlying lawsuit. Dkt. No. [81-1] at 10-21. The Court agrees with the Red Roof Defendants.

To determine whether Plaintiff has a duty to defend, the Court must "compare the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract." Elan Pharm. Rsch. Corp., 144 F.3d at 1375 (citing Great Am. Ins. Co. v. McKemie, 259 S.E.2d 39, 40–41 (Ga. 1979)). "[T]he duty to defend is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy; even if groundless, the allegations of the complaint are looked to to determine whether a liability covered by the policy is asserted." Great Am. Ins. Co., 259 S.E.2d at 40–41. "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." City of Atlanta v. St. Paul Fire & Marine Ins. Co., 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) (citations omitted). Lastly, "where an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted." HDI-Gerling Am. Ins. v. Morrison Homes, Inc., 701 F.3d 662, 666 (11th Cir. 2022) (applying Georgia law).

An insurance policy "should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263, 265 (Ga. 2009) (quoting Cont'l Ins. Co. v. Am. Motorist Ins. Co., 542 S.E.2d 607, 610 (Ga. Ct. App. 2000)). "No construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation." Citicorp Indus. Credit, Inc. v. Rountree, 364 S.E.2d 65, 68–69

9

(Ga. Ct. App. 1987) (quoting R.S. Helms, Inc. v. GST Dev. Co., 219 S.E.2d 458, 460 (Ga. Ct. App. 1975)). Such "unambiguous terms are taken in their plain, ordinary and popular sense as supplied by dictionaries." Rec. Town, Inc. v. Sugarloaf Mills Ltd. P'ship of Ga., 687 S.E.2d 640, 643 (Ga. Ct. App. 2009). Lastly, "[e]xceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and liberally construed in favor of the insured to afford coverage." Meyers, 548 S.E.2d at 69.

The Red Roof Defendants' Motion makes the following arguments in support of coverage for Defendant H.B.'s underlying suit: (1) Coverage A's bodily injury provision is applicable to Defendant H.B.'s lawsuit, (2) because Defendant H.B.'s suit alleges a "personal and advertising injury," Coverage B is also applicable, and (3) public policy does not bar insurance coverage. Dkt. No. [81-1] at 10–21. The Court agrees with the Red Roof Defendants and finds that (1) Coverage A is applicable and (2) public policy does not bar coverage of the underlying lawsuits.

### 1. Coverage A

The Red Roof Defendants first argue that, because Defendant H.B.'s suit alleges physical injuries from the alleged trafficking, then Coverage A of the insurance policy requires Plaintiff to provide insurance coverage. Dkt. No. [81-1] at 17–19. In response, Plaintiff first contends that Coverage A applies to "bodily injury" caused by an "occurrence" which does not include injuries from intentional acts. Dkt. No. [86] at 16–20. Based on the allegations of Defendant

10

H.B.'s complaint and the TVPRA civil cause of action, Plaintiff argues that the Red Roof Defendants' conduct was intentional rather than accidental, and thus, not covered by the policy. Id. In the alternative, Plaintiff contends that the "Expected or Intended Exclusion" applies. Id. at 20–22.

In the "Coverage A" section of the parties' policy, Plaintiff agreed to pay the sums that the Red Roof Defendants became "legally obligated to pay as damages because of 'bodily injury'" and the parties agreed that insurance coverage applied to "bodily injury" only if "caused by an 'occurrence.'" Dkt. No. [79] ¶ 114 (quoting Dkt. No. [79-8] at 3). The policy further defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. No. [79] ¶ 117 (quoting Dkt. No. [79-8] at 5). Applying this definition, Plaintiff alleges that the Red Roof Defendants violated the TVPRA by engaging in a common undertaking with the sex traffickers, and thus, Defendant H.B.'s injuries were not "caused by an occurrence." Dkt. No. [86] at 16–20. In response, the Red Roof Defendants contend that whether an event is an accident is determined from the viewpoint of the Red Roof Defendants and because their conduct was not "designed to injure H.B.," then Defendant H.B.'s bodily injuries were caused by an occurrence. Dkt. No. [81-1] at 17–18.

The Court agrees with the Red Roof Defendants. The term "accident" in this contract is not defined. "Accordingly, we look to the commonly accepted meaning of the term." Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co., Inc., 707 S.E.2d 369, 371 (Ga. 2011) (citing Pomerance v. Berkshire Life Ins. Co.

of Am., 654 S.E.2d 638, 641 (Ga. Ct. App. 2007)). Under Georgia law, "when used in an insurance policy, an 'accident' is deemed to be 'an event happening without any human agency, or, if happening through such agency, an event which, under circumstances is unusual and not expected by the person to whom it happens . . . ." Am. Empire Surplus Lines Ins. Co., 7070 S.E.2d at 371 (citing Black's Law Dictionary, 15 (6th ed. 1990)); see St. Paul Fire & Marine Ins. Co., 498 S.E.2d at 784 ("An accident is an unexpected happening rather than one occurring through intention or design."). Plaintiff points to Defendant H.B.'s underlying complaint where she alleged that the Red Roof Defendants knowingly benefited from the sex trafficking venture by receiving a percentage of the revenue generated, warned sex traffickers of law enforcement presence, and provided the traffickers the necessary venue. Dkt. No. [86] at 19 (citing Dkt. No. [79] ¶¶ 19, 34–35). Mainly, because Defendant H.B.'s complaint includes allegations of active participation in the sex trafficking scheme, Plaintiff argues that the Red Roof Defendants' conduct is fundamentally incompatible with an "occurrence" or "accident." Dkt. No. [86] at 16–20.

  The Court disagrees. In addition to the allegations of intentional participation, Defendant H.B. also alleged that the Red Roof Defendants had constructive knowledge of the sex trafficking and that they "should have known" of other crimes and happenings on the premises. Dkt. No. [79-6] ¶¶ 45, 64–65. For example, in the TVPRA claim, Defendant H.B. alleged that the Red Roof Defendants "should have known the venture violated" the statute since they "had

the opportunity to observe" H.B. Id. ¶ 64. The Court finds that the constructive knowledge language sounds in negligence and implies that the Red Roof Defendants did not have the requisite intent to cause Defendant H.B.'s alleged bodily injuries. Even though Defendant H.B. alleges intentional acts, the duty to defend is broad and Georgia courts have reasoned that "[i]f the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." BBL-McCarthy, LLC v. Baldwin Paving Co., 646 S.E.2d 682, 685 (Ga. Ct. App. 2007) (quoting St. Paul Fire & Marine Ins. Co., 498 S.E.2d at 784). As stated, an accident has been defined as "an unexpected happening rather than one occurring through intention or design." St. Paul Fire & Marine Ins. Co., 498 S.E.2d at 784. Because the Red Roof Defendants were alleged to be negligent in regard to the TVPRA violations, the Court finds that Defendant H.B.'s complaint is arguably covered by the "bodily injury from an occurrence" provision of Coverage A.

In the alternative, even if Defendant H.B.'s suit falls within Coverage A, Plaintiff contends that it still does not have a duty to defend because the "Expected or Intended Injury Exclusion" applies. Dkt. No. [79] ¶ 231. This provision bars coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Dkt. No. [79-8] at 6. Based on the face of Defendant H.B.'s underlying complaint, Plaintiff argues that this exclusion applies to bar coverage of the TVPRA claims. Dkt. No. [86] at 20–22. In response, the Red Roof Defendants argue that, because Defendant H.B. did not

13

allege that they subjectively intended or expected to cause bodily injury, then the policy exclusion does not bar coverage. Dkt. No. [81-1] at 18–19. The Court agrees with the Red Roof Defendants.

Keeping in mind the principles regarding the broadness of the duty to defend, the Court must determine whether the "Expected or Intended Injury Exclusion" unambiguously applies to exclude coverage of Defendant H.B.'s claims. As stated, "[e]xceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and liberally construed in favor of the insured to afford coverage." Meyers, 548 S.E.2d at 69. More specifically, when examining the same "expected or intended" policy language, Georgia courts have found that the exclusion is not applicable "if the insured acts without the intent or expectation of causing any injury, however slight." Colonial Penn. Ins. Co. v. hart, 291 S.E.2d 410, 413 (Ga. Ct. App. 1982). Thus, similar to the analysis for whether Defendant H.B.'s bodily injuries stemmed from an occurrence, the Court finds that some of Defendant H.B.'s allegations, such as those including the "should have known" language, do not allege that the Red Roof Defendants acted with the intent or expectation of causing bodily injury. See James River Ins. Co. v. Dalton-Whitfield Reg'l Solid Waste Mgmt. Auth., No. 4:22-cv-41-AT, 2022 WL 18777374, at *4–5 (N.D. Ga. Nov. 7, 2022) (holding that the "expected or intended" exclusion did not apply where the underlying complaint alleged that the insured "'should have known' that its actions would cause downstream harm"). Therefore, because some of Defendant H.B.'s allegations do not fall within the

14

exclusion, the Court finds that the "Expected or Intended Injury Exclusion" does not unambiguously apply to preclude coverage under the policy.

In conclusion, because (1) Coverage A of the policy arguably brings Defendant H.B.'s claim within coverage of the policy and (2) the "Expected and Intended Injury Exclusion" is not applicable, Georgia law requires a finding that Plaintiff has a duty to defend the Red Roof Defendants in Defendant H.B.'s underlying lawsuit.

### *2. Public Policy*

Plaintiff's Second Amended Complaint alleges that public policy precludes insurance coverage for the Red Roof Defendants' conduct in the sex trafficking scheme. Dkt. No. [79] ¶¶ 253–65. Specifically, Plaintiff points to Georgia law which states that it contravenes public policy "to insure against injuries intentionally inflicted." Dkt. No. [86] at 25–26. Thus, because the Red Roof Defendants took part in the sex trafficking scheme where the injuries are often intentionally inflicted, Plaintiff argues that it would go against public policy to provide insurance coverage. Id. In response, the Red Roof Defendants argue that a violation of the TVPRA does not require injurious intent, and thus, public policy does not bar coverage in this case. Dkt. No. [81-1] at 12–16; Dkt. No. [87] at 9–10. The Court agrees with the Red Roof Defendants.

The Court finds that Georgia's public policy exclusion focuses on whether the injuries were intentionally inflicted, not simply whether the conduct was intentional. In Travelers Indem. Co. v. Hood, 140 S.E.2d 68, 70 (Ga. Ct. App.

15

1964), the Georgia Court of Appeals reasoned that there is a critical distinction between an "*intentional act* and *intentional injury*" with regard to the public policy exclusion. Although the insured in Hood intentionally raced automobiles on a public highway, the court held that it would not contravene public policy to provide coverage, because the injuries arose from "willful and wanton misconduct," rather an intention to injure. Id. Similarly, in this case, Defendant H.B. alleged that the Red Roof Defendants took part in a common undertaking and participated in the venture by associating with the sex traffickers. Dkt. No. [79-6] ¶¶ 59–69. Defendant H.B. did not allege that they intended to injure the victims. Additionally, the TVPRA civil cause of action, which Defendant H.B. sues under, does not have a scienter requirement or require a showing that the defendant had injurious intent. See Jane Doe 1 v. Red Roof Inns, Inc., 21 F.4th 714, 724 (11th Cir. 2021) (noting that "a scienter requirement does not appear in Section 1595(a)"). Thus, like the drivers' conduct in Hood that did not have injurious intent, the Red Roof Defendants participated in the scheme but were not alleged to have the intent to injure the underlying plaintiffs. Therefore, the Court disagrees with Plaintiff and holds that public policy does not bar insurance coverage in this case.

### D. Right of Reimbursement

Lastly, the Red Roof Defendants argue that Counts X through XVII should be dismissed because Plaintiff has no right to reimbursement of defense costs and settlement payments. Dkt. No. [81-1] at 22–27. Plaintiff disagrees, arguing

that Georgia law and Eleventh Circuit precedent demonstrate the contrary. Dkt. No. [87] at 28–30. The Court agrees with the Red Roof Defendants.

After learning of the underlying lawsuits, Plaintiff notified the Red Roof Defendants that it would provide insurance coverage subject to a reservation of rights. Dkt. No. [79] ¶¶ 132–140. Specifically, Plaintiff reserved its rights to seek reimbursement of defense and settlement costs paid in the underlying lawsuits in whole or in part. Id. ¶ 140. Relying on this reservation, Plaintiff's Second Amended Complaint brings several claims seeking reimbursement of defense costs and settlement payments. Dkt. No. [79] ¶¶ 279–316. Regarding the reimbursement of defense costs, the Red Roof Defendants argue that Georgia law does not recognize a claim for reimbursement unless a policy provision grants such right. Dkt. No. [81-1] at 22–23. Mainly, the Red Roof Defendants rely on Cont'l Cas. Co. v. Winder Lab'ys, LLC, 73 F.4th 934, 950 (11th Cir. 2023) where the Eleventh Circuit held that Georgia's substantive law "would not allow an insurer to recoup its expenses based on a reservation of rights letter without any contractual provision allowing for reimbursement." Here, because Plaintiff does not point to a policy provision allowing for reimbursement and instead only relies on the reservation of rights letter, the Red Roof Defendants argue that there is no right to reimbursement of defense costs. Plaintiff does not respond to this binding Eleventh Circuit precedent and its application to this case, so the Court agrees with the Red Roof Defendants and holds that Plaintiff may not be reimbursed for its defense costs.

Turning to settlement payments, the Red Roof Defendants argue that Winder Lab'ys, LLC is also controlling. Dkt. No. [81-1] at 23–27; Dkt. No. [87] at 11–14. Plaintiff disagrees, arguing that the Eleventh Circuit in Winder Lab'ys, LLC did not specifically address settlement costs and that the Eleventh Circuit's reasoning actually supports a holding that settlement costs can be reimbursed. Dkt. No. [86] at 28–30. In response, the Red Roof Defendants note that the court in that opinion did not differentiate between defense and settlement costs, and thus, the holding applies to both. Dkt. No. [87] at 11–14.

The Court disagrees with Plaintiff and finds that the holding of Winder Lab'ys LLC also applies to settlement payments as well. The Eleventh Circuit court stated that "[w]hile insurers can certainly contract for a right to reimbursement, they cannot do so in a subsequent reservation of rights after a reimbursement-less bargain has been struck." Winder Lab'ys, LLC, 73 F.4th at 950. Thus, the Court finds that the Eleventh Circuit was focused on the means by which an insurer reserved its rights to reimbursement, rather than the specific kinds of costs that can be reimbursed. Because the Eleventh Circuit does not differentiate between defense costs and settlement payments, the Court disagrees with Plaintiff and finds that the Eleventh Circuit's interpretation of Georgia's substantive law does not allow for the reimbursement of settlement payments. Therefore, Plaintiff's claims seeking reimbursement—Counts X through XVII—are subject to dismissal.

## IV. CONCLUSION

In accordance with the foregoing, the Red Roof Defendants and Defendant H.B.'s Motion to Dismiss [81] is **GRANTED**, and Plaintiff's Second Amended Complaint [79] is **DISMISSED without prejudice**. The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED** this 15th day of August, 2025.

_____
**Leigh Martin May**
**United States District Judge**